**IN THE UNITED STATES DISTRICT COURT**
**IN THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| REPRESENTATIVE JUSTIN JONES, in his personal capacity, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| STATE OF TENNESSEE, REPRESENTATIVE CAMERON SEXTON, in his official capacity as Speaker of the Tennessee House of Representatives; TAMMY LETZLER, in her official capacity as Chief Clerk for the Tennessee House of Representatives; BOBBY TROTTER, in his official capacity as Chief Sergeant at Arms for the Tennessee House of Representatives; DANIEL HICKS, in his official capacity as Assistant Chief Clerk and Parliamentarian for the Tennessee House of Representatives, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

For his Complaint, Plaintiff Representative Justin Shea Bautista-Jones ("Plaintiff" or "Representative Jones"), appearing through his undersigned counsel, alleges as follows based on present knowledge, information, and belief:

### NATURE OF THE ACTION

1.      Time and again over the past year Defendants have blocked Representative Jones from expressing views on critical issues that he was elected to express, ensuring that viewpoints dissenting from their own are silenced, neither heard nor spoken.  This censorship violates the

constitutions of Tennessee and of the United States and is an anathema to a free, democratic society. By this action, Representative Jones seeks relief for these illegal and unconstitutional actions to silence his and other voices in the Tennessee Legislature, including injunctive relief to stop further violations of his rights to speak and to participate in the legislative process.

2.      On April 6, 2023, the Tennessee House of Representatives (the "House") illegally expelled Representative Jones for exercising his right to free speech. Representative Jones had attempted to speak in the House to protest the refusal of Tennessee lawmakers to address devastating gun violence. Only days before, Nashville had witnessed the horrific murders of six Tennesseans, including three children, at The Covenant School. In the wake of these atrocities, Representative Jones and two other legislators, Representatives Justin Pearson and Gloria Johnson, sought to raise the critical issue of gun violence in the House, only to be cut off and silenced by defendant Cameron Sexton, the Speaker of the House ("Speaker Sexton" or "the Speaker"). When these three lawmakers took to the well of the House in an attempt to be heard on this issue, Speaker Sexton shut down the House proceedings entirely, forced the removal of Representative Jones and his two colleagues from the Legislature, and then led an illegal and unconstitutional effort to expel them—all in an effort to quash legitimate and open discussion about the use of weapons of war in murdering six Nashville citizens.

3.      The proceedings that followed were a pretext for silencing Representative Jones: There was never a real issue about whether Speaker Sexton and the House Republicans that he leads would expel Representative Jones and his colleague Representative Pearson; the proceedings were rigged against them from the start. As Representative Garrett noted in a subsequent closed door meeting among House Republicans, "We had the jury already. This obviously wasn't a trial.

But I knew every single one of your vote counts. I knew that we did not have to convince you all."[1]

4. Representative Jones was quickly re-appointed by a unanimous vote of the Metropolitan Council of Nashville and Davidson County after his expulsion, but the illegal action caused him harm in several different ways. Among others, the expulsion robbed Representative Jones of Committee appointments and seniority, and required him to undergo the expense and burden of running for reelection in a Special Election held on August 3, 2023 (the "August 2023 Special Election"). Representative Jones was re-elected by an overwhelming majority—winning nearly eighty percent of the vote.

5. Even after Representative Jones' reelection, the Speaker and his Republican House majority continued, illegally, to deny Representative Jones his constitutionally protected right to speak in the House and to represent his constituents. During a special legislative session convened on August 21, 2023 to consider measures to address public safety, including gun and school safety (the "August 2023 Special Legislative Session"), Speaker Sexton imposed and abused new draconian and unconstitutional procedural rules, among other reasons, to ensure the silence of Representative Jones and to prevent him from participating in the debate in the Legislature. Although the Rules were found to be unconstitutional as applied to speech by citizens attending the Special Session, they were used to stop Representative Jones from expressing his views in debate on issues germane to the business of the House and significant to his constituents. And he was threatened with actions to silence him for the remainder of the year if he continued to express his views on issues involving gun safety. The Speaker's ongoing

---

[1] D. Patrick Rodgers, *Transcript: Leaked Audio From House Republican Caucus Meeting*, Nashville Scene (Apr. 17, 2023), https://www.nashvillescene.com/news/pithinthewind/transcript-leaked-audio-from-house-republican-caucus-meeting/article_1d214778-dc81-11ed-9aab-071eeaf54531.html.

violation of Representative Jones' constitutional rights continues to disenfranchise the citizens of Tennessee's 52nd House District by denying them representation in the People's House by the person they have now elected twice within a nine-month period to speak for them.

6.      Representative Jones has been, is, and will continue to be a voice for his constituents in the Tennessee House of Representatives.  He brings this action to prevent Defendant Sexton and the State of Tennessee, by injunction or, if appropriate, through declaratory judgment, from continuing to suppress dissent, whether through the updated House rules or otherwise, and to seek full restoration of the benefits, rights, and privileges that they illegally stripped from him in retaliation for his protected speech.

**PARTIES**

7.      Plaintiff was first elected in November 2022 to represent House District 52 as part of the 113th Tennessee General Assembly in January 2023.  Plaintiff, who is a Democrat, is a twenty-eight year old Black man.  District 52, located in east, south, and southeast Nashville and Davidson County, has a total population of over 71,000 people and is comprised of a majority of individuals belonging to racial minorities.

8.      As part of his service on behalf of his constituents, Representative Jones served on three House Committees: the Government Operations Committee, the Education Administration Committee, and the Agriculture & Natural Resources Committee.  He also served on the Agricultural & Natural Resources Subcommittee.  In his role on the Government Operations Committee, Representative Jones consistently fought to defend the civil rights and liberties of his constituents and of all Tennesseans by, among other efforts, challenging administrative enforcement of book bans, questioning the Tennessee Department of Safety on its

surveillance of protesters, and resisting retaliatory efforts by the State government to reduce the number of seats in Nashville's city council and to take over Nashville's airport authority board.

9. Defendant Representative Cameron Sexton ("Defendant" or "Speaker Sexton") is a White Republican and is a member of the Tennessee House of Representatives for District 25. Representative Sexton was elected to the House of Representatives in November 2010 and has served as Speaker of the House since August 2019. Speaker Sexton is named as a Defendant in his official capacity, as further alleged herein.

10. Defendants Tammy Letzler, Bobby Trotter, and Daniel Hicks, respectively the Chief Clerk, the Chief Sergeant at Arms, and the Assistant Chief Clerk and Parliamentarian for the 113th Tennessee House of Representatives, are sued in their respective official capacities as agents of that House, as further alleged herein.

11. The Tennessee State House of Representatives is one chamber of the legislative branch of the State of Tennessee. The House has a total of ninety-nine members, each of whom serve two-year terms. In the 113th House of Representatives, which was elected in 2022 for the years 2023-2024, the House has a Republican "super majority" with seventy-five Republicans and only twenty-four Democrats. Almost all of the Republicans in the Tennessee House of Representatives voted to expel Representative Jones from the Tennessee House on April 6, 2023 and voted to sustain his being silenced by the Speaker from speaking for the rest of the legislative session on August 28, 2023.

## JURISDICTION AND VENUE

12. Representative Jones brings this action under 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

13.     This Court has personal jurisdiction over Defendants because Defendants are Tennessee residents.

14.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside or work in this District and a substantial part of the acts and events giving rise to this Complaint occurred in this District.

## STANDING

15.     Plaintiff has standing to bring the claims asserted in this Complaint because Defendants' actions have infringed his rights under the United States Constitution and state law, and his injuries can be redressed by injunctive and other relief ordered by this Court.

16.     Plaintiff has suffered injury-in-fact because he has been denied his constitutionally protected right to speak and to be heard in the Tennessee Legislature as the duly elected representative of the people of Tennessee's 52nd Congressional District.  Plaintiff also has suffered and continues to suffer retaliation as a result of engaging in protected speech, including his ongoing loss of his seats to represent his constituents on the Government Operations Committee, his ongoing loss of seniority, and other deprivations as described herein.

17.      Judicial determination of this controversy will resolve the rights, status, and legal relationships of the parties, and further is of overriding public concern.

## FACTUAL BACKGROUND

18.     On March 27, 2023, Audrey Hale, a former student, breached the campus at The Covenant School, a private school in Nashville, Tennessee, and shot and killed six people, three children and three adults.  Hale had legally purchased seven firearms from local gun stores and

used three of them during the shooting, including a military-style semiautomatic rifle. Hale's

parents stated they felt that Hale "should not own weapons."[2]

19.     On March 27th, 2023, at approximately 1:34 pm CST, just hours after the

shooting at The Covenant School, the House Government Operations Committee of the

Tennessee House of Representatives met in committee session. Following a moment of silence

for the victims at The Covenant School, Representative William Lamberth began discussion on

HB 0322, a bill centered on officer response and coordination in response to events like the

tragedy at Covenant School. Representative Jones began to speak, drawing attention to the

"proliferation of guns" and the fact that the United States "is the only nation in which this keeps

happening," when Government Operations Committee Chairman John Ragan interrupted and

instructed Representative Jones that he had the "right to ask a question" not "to make a

statement." During the exchange of questions on HB 0322 that followed between Representative

Jones and Representative Lamberth, the bill's sponsor, Representative Jones was again

interrupted multiple times, after which the order went to Representative Johnson, who spoke

uninterrupted during her questioning period.[3]

20.     On March 28, 2023, the day after the tragedy at Covenant School, protests rocked

Nashville as parents, students, and community members marched on the state capital calling for

legislative action on reasonable gun control measures to stop gun violence.[4]

---

[2] Adeel Hassan and Emily Cochrane, *What We Know About the Nashville School Shooting*, N.Y. Times (Mar. 29, 2023), https://www.nytimes.com/article/nashville-school-shooting.html.

[3] March 27, 2023 House Government Operations Committee hearing video, available at https://www.youtube.com/watch?v=FBoql7tLg5A&list=PL9dTuWMF6QugxkurpyEhebewNrfSiaUZK&index=7&pp=iAQB.

[4] Melissa Brown, *Tennessee lawmakers delay gun bills after Nashville shooting as advocates demand action*, The Tennessean (March 29, 2023, 6:52 a.m.), https://www.tennessean.com/story/news/politics/2023/03/29/tennessee-delays-gun-bills-after-nashville-shooting-as-some-demand-action/70056285007/.

Representatives Jones, Pearson and Johnson Are Silenced.

21.     On March 29, 2023—amidst ongoing and widespread condemnation of these murders and protests regarding the largely non-existent regulation of the military-style weapons used to commit them—State Senator Todd Gardenhire, Chairman of the Senate Judiciary Committee, announced a pause on all gun-related bills and moved further consideration of pending measures to 2024.[5]

22.     On March 30, 2023, at approximately 9:00 a.m., the Tennessee House of Representatives met for its first legislative session after the Covenant School shooting. Following a customary period of "welcoming and honoring," Republican Representative Robert Stevens presented a bill related to the sale of wine in grocery stores.  Representative Pearson asked and was recognized to speak—in accordance with House rules and procedures—and began discussing the critical need for action to address gun violence.  Defendant Sexton cut Representative Pearson's remarks short, ruling them non-germane, and demanding that he stay on the topic of the grocery bill presented by Representative Stevens.

23.     A few minutes later, a bill sponsored by Republican Representative John Crawford concerning the state comptroller's office was brought up for consideration on the House floor.  Representative Pearson once again was recognized in accordance with the House rules and once again spoke regarding the need for legislation addressing gun violence.  Speaker Sexton again silenced the debate, this time turning off Representative Pearson's microphone and, again, ruling him out of order.[6]

---

[5] Andy Sher, *Tennessee Democratic lawmaker questions Gardenhire's decision to move all gun bills to 2024*, Chattanooga Times Free Press (Mar. 30, 2023, 10:19 PM). https://www.timesfreepress.com/news/2023/mar/30/democratic-lawmaker-questions-gardenhire-gun-bills-move-tfp/#/questions.

[6] *Id.*

24.     Later that morning, Representative Jones raised a parliamentary inquiry, informing the body and Speaker Sexton that Representative Jones had been prohibited from displaying a simple lapel pin noting the need for gun control.  Representative Jones stated that "I was told just right now by you, by a member of your staff, that I cannot wear a pin that says 'Halt the Assault' with a picture of an AR-15, that I'm banned from wearing this pin."  Representative Jones further noted, "[M]embers of the other side of the aisle always wear pins that say the NRA. They wear big pins with the AR-15 on it."[7]  Defendant Sexton denied that a Republican member was wearing such a pin that day, but did not deny the general claim about the inconsistent application of the rule in general.  Speaker Sexton nonetheless barred Representative Jones from wearing his lapel pin.

25.     Shortly thereafter, in retaliation for his attempts to speak and to be heard on these issues, Representative Jones' voting machine at his desk was turned off, preventing him from casting his vote.

26.     A few minutes later, during a brief pause between bills, Representatives Jones, Pearson, and Johnson—who had been repeatedly denied any opportunity to express their concerns regarding the murders at Covenant School and the refusal by the House to consider reasonable gun measures—entered the well of the House together.  Representatives Jones and Pearson began speaking from the podium, calling for legislative action against gun violence and for the recognition of the efforts of the many members of the public seated in the gallery, who were vocally protesting the refusal of the Legislature to address gun violence.[8]

---

[7] *Id.*

[8] *Id.*

27.     Speaker Sexton reacted by declaring Representative Jones was "out of order," calling a five minute recess, and asking for Republican leadership to approach him at the dais.[9]

28.     After protesting from the well of the House, Representatives Jones, Pearson, and Johnson departed the House floor voluntarily, peacefully, and without any confrontation, violence, or other incident. after conferring with Democratic leadership.  Their speeches and presence in the well had lasted for approximately sixteen minutes.[10]  At all times before, during, and after the sixteen minutes that Representative Jones spoke on the House floor on April 2, Representative Jones' speech and protest, as well as the protests of the other participating Tennessee legislators and the assembled members of the public, were entirely peaceful and without any violence, disturbance of the peace, or any confrontation with police.

29.     Speaker Sexton did not reconvene the House for more than a half hour, ordering Tennessee State Police troopers first to clear members of the public from the House gallery.  He conferred with the Republican caucus on the House chamber's outdoor balcony.

30.     Upon resuming the House session, Speaker Sexton stated

> "Members, we all know, like a year or two ago,
> that tensions and frustrations can run high on the
> House floor. . . . We have addressed those
> concerns before. At the same time there is a
> proper way to handle that and . . . what was
> demonstrated on this House floor is not the
> proper way to do that."[11]

31.     On April 3, 2023, as punishment for their exercise of their rights to free speech and protest, Speaker Sexton removed Representative Jones, along with Representative Johnson,

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

from all committee assignments.[12]  Representative Jones received a letter on this date, sent on the Speaker's letterhead and signed by Defendant Tammy Letzler, Chief Clerk of the Tennessee House of Representative, informing him that "[y]ou have been removed from all House standing committees and subcommittees and committees on which you serve as designee."  For Representative Jones, this unlawful act resulted in the loss of his seats on the Government Operations Committee, the Education Administration Committee, and the Agriculture & Natural Resources Committee, denying Representative Jones any chance to participate in the committees to which he had been assigned and depriving Representative Jones' constituents of representation in this important part of the legislative process.

32.     Representative Jones' only notice or due process of any kind regarding his removal from his seats on these committees was the April 3, 2023 letter signed by Defendant Letzler.

33.     Representative Johnson was restored to her committee seats on April 10, 2023 after the House vote failed to expel her. As of the filing of this Complaint, Representative Jones still has not been restored to his seat on the Government Operations Committee.

34.     On April 3, 2023, Representative Jones, along with Representatives Johnson and Pearson, also had his access to the Tennessee Capitol building and to the legislative parking garage restricted by order of Speaker Sexton.[13]

---

[12] Blaise Gainey, *Republicans will vote to expel three Democrats from the Tennessee Legislature following gun control protest*, WPLN News (Apr. 3 2023), https://wpln.org/post/republicans-bar-three-democrats-from-committees-following-their-gun-control-protest-on-tennessee-house-floor/.  Representative Pearson was elected in a 2023 special election and had not yet been assigned to any committees.

[13] Vivian Jones, *Tennessee House speaker strips Democrats of committee roles after Capitol protest*, The Tennessean (April 3, 2023, 4:57 PM), https://www.tennessean.com/story/news/politics/2023/04/03/tn-house-speaker-strips-democrats-of-committee-roles/70077117007/.

<u>Representatives Jones and Pearson Are Expelled.</u>

35.     Finally, acting on Speaker Sexton's threats, Republicans in the House of Representatives introduced resolutions calling for the expulsion of Representatives Jones, Johnson, and Pearson pursuant to Article II, Section 12 of the Tennessee Constitution.

36.     Since the Tennessee House of Representatives' inception in 1797, the punishment of expulsion has only been inflicted on three occasions, each involving the expelled representatives' criminal conduct or their efforts to prevent extending citizenship to former slaves:

- In 1866, six lawmakers were expelled after they tried to prevent Tennessee from ratifying the 14th Amendment to the U.S. Constitution to provide citizenship to former slaves.[14]

- In 1980, Republican Robert Fisher was expelled by a vote of 92-1 after being convicted in court for soliciting a bribe in exchange for squashing pending legislation.[15]

- In 2016, then-Representative Jeremy Durham was accused of sexual misconduct towards more than 20 women and was under investigation by the Tennessee Attorney General.  Durham was expelled by a vote of 70 yeas to 2 nays.[16]

---

[14] Tyler Whetstone and Angela Dennis, *Rep. Gloria Johnson survives Tennessee House expulsion vote after peaceful gun control demonstration*, knox news. (Apr. 8, 2023, 5:01 PM), https://www.knoxnews.com/story/news/politics/2023/04/06/rep-gloria-johnson-survives-expulsion-vote-tennessee-house-for-peaceful-gun-control-demonstration/70087846007/.

[15] Larry Daughtrey, *House Votes to Expel Fisher*, The Tennessean (Jan. 15, 1980), https://www.newspapers.com/article/the-tennessean-rep-robert-fisher-is-exp/6603293/.

[16] Melissa Brown and Vivian Jones, *Tennessee GOP begins expulsion process for 3 Democrats, House session devolves into chaos*, The Tennessean (Apr. 5, 2023, 3:29 PM), https://www.tennessean.com/story/news/politics/2023/04/03/tennessee-republicans-file-resolutions-to-expel-three-democrats-who-led-gun-reform-chants-on-house-f/70078002007/.

37.     In the more than two-hundred year history of the House, no member has ever been removed from elected office for simply speaking on behalf of his or her constituents.[17] Indeed, expulsion has been so rarely exercised that even Republican legislators who have been accused of actual criminal impropriety have not been expelled or threatened with expulsion.  For example, on March 29, 2023, one day before the protest at issue here, the House Ethics Subcommittee found that now-former Representative Campbell sexually harassed at least one female employee and had offered the employee cannabis products in exchange for viewing her body piercings and tattoos, which is a violation of Tennessee criminal law.[18]  Although credibly accused of this plainly criminal behavior—conducted while in his official role as a member of the House of Representatives—Representative Campbell was neither silenced nor expelled, as Representative Jones was, but rather resigned voluntarily, *after* being permitted first to vote to expel Representative Jones.

38.     The expulsion resolution against Representative Jones, House Resolution 65, was based on his exercise of his speech and protest on the floor of the House on March 30, seeking to expel him for "disorderly behavior" that "reflects adversely upon the integrity and dignity of the House of Representatives."[19]  No further bases for this action were set forth or alleged in House Resolution 65.  The Republican super-majority voted on party lines to expel Representatives Jones and Pearson merely for exercising their right to speak in representing their constituents.

---

[17] Joyce Orlando, *Tennessee three: What you need to know about the expulsion of Democratic TN lawmakers*, The Tennessean (Apr. 7, 2023, 2:26 PM), https://www.tennessean.com/story/news/2023/04/07/tennessee-house-expulsion-vote-why-were-lawmakers-expelled/70092066007/.

[18] Nikki McCann Ramirez, *Tennessee Republican Resigns After Being Caught Sexually Harassing Interns*, Rolling Stone (Apr. 20, 2023), https://www.rollingstone.com/politics/politics-news/tennessee-republican-sexually-harassing-interns-resigns-1234720714/.

[19] Husley, *House Resolution 65*, 2, https://www.capitol.tn.gov//Bills/113/Bill/HR0065.pdf.

39.     Representative Jones' first and only form of notice that Defendant intended to hold expulsion proceedings against him came in the form of the introduction of House Resolution 65 on the House floor on Monday, April 3.

40.     On Thursday, April 6, 2023, prior to the expulsion vote, Republican Majority Leader William Lamberth was recognized to speak on the House floor, where he made a motion to suspend the Rules of the House so that Representatives Jones, Pearson, and Johnson could be recognized for 20 minute question-and-answer periods relating to the expulsion resolutions. The suspension of the rules also allowed each of the three representatives to give a five minute closing and designate legal counsel to speak on their behalf during their allotted time.

41.     Leader Lamberth's motion to suspend the rules represented the only process and means of defense granted to Representative Jones.[20] There was no provision for the introduction of evidence or the calling of witnesses. In stark contrast, on April 6, 2023—immediately after Leader Lamberth's motion to suspend the rules—Republican Representative Johnny Garrett made another motion to suspend the rules in order to allow Republicans to present evidence *against* Representative Jones, namely to play a deceptive video before the entire House chamber. The video was a compilation of unfairly edited clips of Representatives Jones', Pearson's, and Johnson's protest, and was played during the proceedings as evidence to support Representative Jones and Pearson's expulsion.

42.     The Democratic minority had not been given any prior notice of the video or Republicans' intention to play it and opposed Representative Garrett's motion. The Republican majority put the motion to suspend the rules to allow the playing of the video to a recorded vote,

---

[20] April 6, 2023 House Floor Session 21st Legislative Day- April 6, 2023 hearing video, https://www.youtube.com/watch?v=ZZK--_x3gIU&list=PL9dTuWMF6QugCOPpN4ueCDlImI-nu_Fhz&index=27.

easily overcoming Democratic opposition. Representative Jones thus had no notice that a slanted and highly edited video would be presented against him and had no opportunity to prepare or to respond with evidence of his own.

43. Representative Jones was allowed twenty minutes to defend himself on the House floor. He made clear that his actions during the protest were protected speech under the U.S. and Tennessee Constitutions and argued that he was not "breaking a House rule, but exercising moral obedience to my constitutional responsibility to be a voice for my people," as specifically allowed under Article II Section 27 of the Tennessee Constitution. That Section reads, "Any member of either House of the General Assembly shall have liberty to dissent from and protest against, any act or resolve which he may think injurious to the public or to any individual, and to have the reasons for his dissent entered on the journals."[21] The Republican super majority voted to end debate and proceed to the expulsion vote before all the Democratic House members listed to speak were given an opportunity to ask questions.

44. The expulsion proceedings were intentionally designed to deny Representative Jones and his colleagues due process. House Republicans planned to remove Representative Jones from office without regard to the evidence presented, and they said as much in a closed-door Caucus meeting held subsequent to the vote. As noted above, Representative Garrett made no effort to hide his belief that the vote was pre-decided, telling is Republican colleagues, "We had the jury already. This obviously wasn't a trial. But I knew every single one of your vote counts. I knew that we did not have to convince you all."[22] Representative Zachary recalled that

---

[21] April 6, 2023 House Floor Session 21st Legislative Day- April 6, 2023 hearing video, https://www.youtube.com/watch?v=ZZK--_x3gIU&list=PL9dTuWMF6QugCOPpN4ueCDlImI-nu_Fhz&index=27.

[22] D. Patrick Rodgers, *Transcript: Leaked Audio From House Republican Caucus Meeting*, Nashville Scene (Apr. 17, 2023), https://www.nashvillescene.com/news/pithinthewind/transcript-leaked-audio-from-house-republican-caucus-meeting/article_1d214778-dc81-11ed-9aab-071eeaf54531.html.

he had voiced his position before the proceedings even began, telling Representative Barrett, "I'm all three expel no matter what."[23]  Alluding to the hearing's lack of due process, Representative Cepicky noted, "You gotta do what's right, *even if you think it might be wrong*." (emphasis added).[24] Representative Cepicky justified the unfairness by evoking fear about Representative Jones' left-wing political ideology:

> "I think the problem I have is if we don't stick together, if you don't believe we're at war for our republic, with all love and respect to you, you need a different job. *The left wants Tennessee so bad, because if they get us, the Southeast falls, and it's game over for the republic.* This is not a neighborhood social gathering. We are fighting for the republic of our country right now. And the world is staring at us — are we gonna stand our ground? I've gotten multiple phone calls from other representatives going, 'We sure hope you guys stand up, because maybe it will give us the courage to stand up and push back against what's going to destroy our republic.'" (emphasis added).[25]

Efforts to expel Representative Jones were not borne out of a good faith effort to ensure decorum in the Chamber, but of a desire to silence and disempower a political rival.

45.     In the afternoon on Thursday, April 6, 2023, House Resolution 65 was brought by Republicans to a vote, and the Tennessee House of Representatives voted to expel Representative Jones by a vote of 72 yeas and 25 nays, along party lines, as punishment for his protest on the House floor.[26]  The House also voted by the same margin to adopt House

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Bill Chappell and Vanessa Romo, *Tennessee House votes to expel 2 of 3 Democratic members over gun protest*, NPR (Apr. 6, 2023, 8:33 PM), https://www.npr.org/2023/04/06/1168363992/tennessee-expel-3-democrats-house-vote.

Resolution 63 expelling Representative Pearson.[27]  With these votes, Representative Jones and Representative Pearson became the only members in the history of the Tennessee House of Representatives to be expelled for speaking on behalf of their constituents.

46.     Representative Jones lost access to his state email less than fifteen minutes after being expelled.

47.     Both Representatives Jones and Pearson are Black men.  Similar to Representative Jones, Representative Pearson also represents a majority minority district. Ultimately, Representative Johnson, a white woman aligned with Representative Jones and representing a majority White district, was not expelled upon a vote of the House even though Representative Johnson also protested alongside and was otherwise identically situated to Representatives Jones and Pearson with respect to the expulsion charges in all relevant respects.

Defendants Commence a Campaign of Harassment Against Representatives Jones and Pearson.

48.     Throughout the period of time between Representative Jones' protest on the House Floor on March 30, 2023 and his expulsion on April 6, 2023, Representative Jones was subjected to repeated personal and *ad hominem* attacks by the Speaker and by Republicans members of the House of Representatives and their staff and employees.

49.     Such attacks during this period included repeated accusations of criminal activity. Representative Lamberth, for example, accused Representatives Jones and Pearson of "trying to incite a riot[.]"[28]  Representative Bulso claimed that the representatives "effectively conducted a

---

[27] Farmer, *House Resolution 63*, http://www.capitol.tn.gov/Bills/113/Bill/HR0063.pdf.

[28] Eliza Fawcett and Rick Rojas, *Outrage at G.O.P. Could Propel Expelled Democrats Right Back to House*, New York Times (Apr. 7, 2023), https://www.nytimes.com/2023/04/07/us/tennessee-house-democrats-jones-pearson.html.

mutiny."[29]   In perhaps the most repugnant of the Republican attacks against the representatives, Speaker Sexton likened them to those who stormed the U.S. Capitol on January 6, 2021, claiming that they were trying "to incite… violence,"[30] and stating that Representative Jones' conduct was "at least equivalent, maybe worse, depending on how you look at it, of doing an insurrection in the capitol."[31]   This particular false claim was quickly amplified by Right Wing media.[32]

50.    These attacks by Speaker Sexton and the other Republicans equating Representative Jones' conduct with the criminal insurrection that occurred on January 6, 2021 were patently false.[33]   Representative Jones' protest was at all times peaceful, protected First Amendment activity that was nothing like the lawlessness, violence, and destruction of the January 6th insurrection:

- There were no arrests made or injuries reported after Representative Jones' protest, and members of the public were permitted to observe the floor proceedings.

- There were no reports of damage to the Tennessee state capitol building.

---

[29] Kimberlee Kruesi and Jonathan Mattise, *Tennessee's House expels 2 of 3 Democrats over guns protest*, AP News (Apr. 7, 2023, 6:44 AM),  https://apnews.com/article/tennessee-lawmakers-expulsion-d3f40559c56a051eec49e416a7b5dade.

[30] Andy Sher, *Tennessee House speaker's likening of protest over gun laws to Jan. 6 assault on US Capitol draws fire*, Chattanooga Times Free Press (Apr. 2, 2023, 5:48 PM), https://www.timesfreepress.com/news/2023/apr/02/tennessee-house-speakers-likening-of-protest-over/.

[31] *Id.*

[32] *See, e.g.*, Tucker Carlson Tonight, Fox News (Mar. 31, 2023, 5:00-6:00 PM), https://archive.org/details/FOXNEWSW_20230401_000000_Tucker_Carlson_Tonight/start/2971.2/end/2981.2.

[33] *Id.*; Louis Jacobson and Amy Sherman, *Why it's wrong to call the Tennessee state representatives insurrectionists*, PolitiFact (Apr. 13, 2023), https://www.politifact.com/factchecks/2023/apr/13/cameron-sexton/why-its-ridiculous-to-compare-the-tennessee-repres/#:~:text=%22It%20is%20nonsense%20to%20refer%20to%20the%20actions,%22They%20were%20not%20trying%20to%20overthrow%20the%20government.%22 (noting, in part, that the Tennessee protest lasted only about seven minutes and that the representatives "'were not trying to overthrow the government'").

- There is no evidence that *anyone* was criminally investigated, indicted or convicted after Representative Jones' protest.

51.     The false statements by Speaker Sexton and these other Republicans comparing the peaceful and protected speech by Representative Jones and the violent, deadly attempts to block the peaceful transfer of power by the January 6 insurrectionists not only harmed Representative Jones, but also minimized the tragedy this country experienced on January 6, 2021.[34] Representative Jones participated in a peaceful protest that consisted primarily of presenting a sixteen-minute speech in the well of the House with two like-minded colleagues.  And he and Representative Pearson were then expelled from the House.

Representative Jones Is Reinstated and then Reelected in an August 2023 Special Election.

52.     On April 10, 2023, just a few days after his expulsion, the Metropolitan Council of Nashville and Davidson County, in an extraordinary session, unanimously voted to reinstate Representative Jones to his former seat.[35]  Despite widespread reports of threats that the Speaker would retaliate if the Council chose to appoint Representative Jones,[36] Representative Jones was

---

[34] In the January 6th insurrection over 2,000 rioters illegally breached the Capitol, resulting in over 1,000 criminal indictments, over injured 100 U.S. Capitol Police officers, and five deaths.  the January 6th insurrection caused over $2.7 million in property damage.  U.S. Attorney General Merrick Garland has called the Justice Department's January 6th probe the "most wide-ranging investigation in its history."  NPR Staff, *The Jan. 6 attack: The cases behind the biggest criminal investigation in U.S. history*, NPR (Aug. 11, 2023, 6:01 PM). https://www.npr.org/2021/02/09/965472049/the-capitol-siege-the-arrested-and-their-stories; Whitney Wild, *Dozens more US Capitol Police officers were injured on January 6 than previously known, report says*, CNN politics (Mar. 7, 2022, 6:56 PM), https://amp.cnn.com/cnn/2022/03/07/politics/capitol-police-injuries/index.html; Jack Healy, *These Are the 5 People Who Died in the Capitol Riot, New York Times* (Jan. 11, 2021), https://www.nytimes.com/2021/01/11/us/who-died-in-capitol-building-attack.html.

[35] Liz Crampton, *Exiled Tennessee lawmaker returns to state legislature, POLITICO (Apr. 10, 2023)*, https://www.politico.com/news/2023/04/10/justin-jones-tennessee-reinstated-expelled-00091296.

[36] Neil deMause, *Tennessee reportedly threatens Grizzlies Funding if Memphis want to keep the elected officials it elected* (April 10, 2023), https://www.fieldofschemes.com/2023/04/10/19830/tennessee-reportedly-threatens-grizzlies-funding-if-memphis-wants-to-keep-the-elected-officials-it-elected/. The Speaker ultimately agreed to reseat Representative Jones after Counsel for Representative Jones, together with Counsel for Representative Justin (continued...)

sworn back in and resumed his seat as a member of the House later that same day.[37]  On April

12, 2023, the Shelby County Board of Commissioners unanimously voted to reinstate

Representative Pearson to his former seat as well, and Representative Pearson was sworn back in

and resumed his seat in the House the following day.[38]

53.     However, during the final weeks of the House of Representatives' regular 2023

legislative session, Representative Jones continued to be singled out for retributive action by the

House majority because of his race and his political views.

54.     Following the end of the regular legislative session on April 27, 2023, pursuant to

the process established under the Tennessee Constitution, a Special Election was scheduled for the

purpose of filling on a permanent basis (*i.e.*, for the remainder of the current legislative term) the

vacant House seat created by Representative Jones' expulsion.  The 52nd District Special Election

was scheduled for Thursday, August 3, 2023, with a Democratic primary election schedule for

June 15, 2023.

55.     Thus, as a direct result of his illegal and unconstitutional expulsion from the House

of Representatives, Representative Jones was forced to run in the August 2023 Special Election to

seek reelection for the seat to which he had been legally elected only months earlier in November

2022.  Representative Jones and his campaign staff were forced to expend valuable time, resources,

and energy between April and August 2023 as part of the 2023 Special Election.  During this time,

Representative Jones attended an array of in-person campaign events; ran numerous

---

Pearson, sent the Speaker a letter on the morning of Monday, April 10, warning the Speaker against any further
violation of the Representatives' constitutional rights and warning the Speaker that "[t]he world is watching
Tennessee."

[37] Liz Crampton, *Exiled Tennessee lawmaker returns to state legislature, POLITICO (Apr. 10, 2023)*,
https://www.politico.com/news/2023/04/10/justin-jones-tennessee-reinstated-expelled-00091296.

[38] Omar Younis, *Justin Pearson sworn back in to Tennessee House*, Reuters (Apr. 14, 2023, 3:57 AM),
https://www.reuters.com/world/us/justin-pearson-due-be-sworn-back-tennessee-statehouse-2023-04-13/.

advertisements on television, radio, and across social media; and conducted an extensive door-to-door canvassing effort. His campaign was ultimately was forced to spend over $70,000 on his reelection campaign solely as a result of the unconstitutional and illegal expulsion.

56.     On August 3, 2023, Representative Jones ran and won reelection to the House seat that had been unconstitutionally taken from him.  Representative Jones won the Special Election for the 52nd District of the Tennessee House of Representatives by a landslide margin, winning just under eighty percent of the total votes cast and defeating his closest challenger by fifty-five points.

57.     On Thursday, August 17, 2023, Representative Jones was sworn in as the newly reelected representative of the 52nd House District by Tennessee Supreme Court Justice Sharon G. Lee, resuming his place as a duly elected member of the House of Representatives.[39]

58.     Despite having now been duly reelected to his seat in the 113th Tennessee General Assembly, the injuries that resulted from Representative Jones' illegal and unconstitutional expulsion are ongoing and have not been cured or redressed, even after the House reconvened for the Special Legislative Session on August 21, 2023.

The Speaker Passes and Employs New Draconian Rules to Silence Opposing Views.

59.     On May 8, 2023, within weeks of the end of the regular 2023 legislative session, Governor Bill Lee announced that he planned to call on the Tennessee General Assembly to reconvene on August 21, 2023 for the August 2023 Special Legislative Session in order to consider issues of public safety, including gun violence and school safety.  On August 8, 2023, the Governor confirmed this plan, issuing a proclamation calling the General Assembly into "extraordinary

---

[39] Vivian Jones & Melissa Brown, *The week in politics: How long will the special session on public safety last?* (Aug. 18, 2023), https://www.tennessean.com/story/news/politics/2023/08/18/the-week-in-politics-how-long-will-the-special-session-on-public-safety-last-justin-jones-sworn-in/70598864007/.

session" commencing at 4:00 pm Central on August 21, 2023 to consider and act upon legislation regarding eighteen enumerated topics relating to public safety, including issues regarding school safety and firearm safety.[40]

60. The Speaker and Republican majority opened the August 2023 Special Session by implementing amended rules of order for the House of Representatives during the Special Session. These new rules were recommended by House Ad Hoc Committee on Rules on August 21, 2023 and were implemented by the Speaker and published thereafter as the "Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, First Extraordinary Session" (the "New Rules").[41]

61. The New Rules included rules that were specifically designed to give the Speaker nearly unchecked power to limit and to silence speech and debate, including on topics germane to the legislative business of the House during the August 2023 Special Session, by any member of the House that the Speaker, in his sole discretion, decides should not be allowed to speak.

62. For example, the New Rules greatly expanded the powers of the Speaker and the Republican majority to enforce rules of "decorum" under Rule 2. As revised in the New Rules, Rule 2 gives the Speaker "the authority to set other guidelines for decorum," and to seek to discipline any "member causing a material disruption," by a majority vote of the House that per the Rule is to be held "without debate."

63. New Rule 2 includes a series of escalating punishments. Specifically, for the first violation of Rule 2, as determined by the Speaker and the Republican supermajority, the offending

---

[40] *See* State of Tennessee, *Proclamation by the Governor* (Aug. 8, 2023), https://tnsos.net/publications/proclamations/files/2517.pdf.

[41] *See* Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, First Extraordinary Session, *available at* https://www.capitol.tn.gov/house/publications/.

member is banned from being recognized or speaking on the House floor for a period of three legislative days. A second violation of the rule by the same member allows the Speaker to ban the member from speaking on the House floor for six legislative days. A third violation of the rule by the member allows the Speaker to impose the draconian ban to bar the member from speaking on the House floor <u>for the remainder of the annual session</u>, beginning on the date of the third offense.

64. The New Rules provide no guidance for how Rule 2 should be enforced, and specifically they provide no definition or guidance regarding the meaning or standard for what constitutes "decorum" or a "material disruption". Thus, the enforcement of Rule 2 and the application of its penalties silencing the target of the Rule for three days, six days, or even the entire annual legislative session (a period that could be up to four months in length) is solely at the personal discretion of the Speaker and his Republican supermajority in the House.

65. Rule 2 of the New Rules violates the First Amendment of the United States Constitution by providing the Speaker with unlimited, unchecked power to limit, silence, or chill protected speech by any member with whom he does not agree, including speech by members on behalf of their constituents as part of the legislative business of the House.

66. In addition, Rule 18 of the New Rules, entitled "Duties of Members Toward Speaker" was revised to provide the Speaker with nearly unlimited power to limit, silence, or chill protected speech by any member with whom he does not agree.

67. As found in the Permanent Rules of Order to the regular legislative session of the 113th General Assembly, *i.e.*, the original Rules prior to the August 2023 Special Session, Rule 18 simply sets forth the rules of decorum that are to be observed by each member in being recognized to speak and then in speaking. With respect to speaking on topic, Rule 18 simply (and

in full) states that "[a]fter recognition by the Speaker, the member shall proceed with making remarks which strictly conform to the question under debate and avoid all personalities."[42]

68.     Under this original form of this Rule 18, the Speaker had the power to rule members "out of order" when their comments went off topic from the bill under consideration, but such ruling merely had the limited effect of curtailing only the off-topic speech and had no impact on any member's right to speak or to otherwise perform her or his duty as an elected representative to the House outside of the specific comment.

69.     Under the New Rules, however, the Speaker and House majority weaponized Rule 18 to give the Speaker the sole and effectively unreviewable power to limit any Member's right to speak far beyond whatever speech was found to be off topic, a censure that could last as long as the remainder of the full legislative session.

70.     Specifically, the final provision of this Rule 18 was expanded to language stating that "[i]f a member's remarks fail to strictly conform to the question under debate, any time remaining for such member shall be subject to forfeit."[43]  It also established additional, escalating and draconian punishments limiting and banning further speech for any additional infractions:

- For a second infraction by the same member on the same day, "the Speaker may call the member to order and, if sustained by the House, the member shall not be recognized in debate or remarks on the House floor <u>for the remainder of the same legislative day</u>";

---

[42] *See*  Permanent Rules of Order of the Tennessee House of Representatives, One Hurdred Thirteenth General Assembly                     at                     5,                     *available                     at* *https://www.capitol.tn.gov/Archives/House/113GA/publications/113th%20Permanent%20Rules.pdf*.

[43] *See* Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, First Extraordinary Session at 5-6, *available at* https://www.capitol.tn.gov/house/publications/.

- For a third infraction by the same member "on any subsequent legislative day, "the Speaker may call the member to order and, if sustained by the House, the member shall not be recognized in debate or remarks on the House floor <u>for three legislative days beginning on the day on which the third offense is sustained</u>";

- Finally, for a fourth infraction by the same member on any subsequent legislative day, "the Speaker may call the member to order and, if sustained by the House, the member shall not be recognized in debate or remarks on the House floor <u>for the remainder of the annual session beginning on the day on which the fourth offense is sustained</u>."[44]

71.     As with Rule 2, the New Rules do not provide any definition or example of what constitutes "fail[ure] to strictly conform to the question under debate" or that otherwise provides members with any guidance to know what speech will be considered to violate Rule 18 of the New Rules.  Nor did the Speaker, entrusted with the sole power to enforce the new rule, ever provide any such explanation or guidance to members.

72.     Rule 18 of the New Rules violates the First Amendment of the United States Constitution by providing the Speaker with unlimited, unchecked power to limit, silence, or chill protected speech, including speech by members on behalf of their constituents as part of the legislative business of the House, by any member with whom he does not agree.

73.     On August 28, 2023, the Speaker used Rule 18 to violate Representative Jones' right to free speech under the U.S. and Tennessee constitutions, silencing him after arbitrarily

---

[44] *Id.*  (emphasis added).

ruling him to be out of order on two occasions.[45]  The first "out of order" ruling by the Speaker against Representative Jones House came as the House considered and discussed House Bill 7005 put forward by Republican Representative Bulso, which proposed to expand the number of private schools across Tennessee that enjoy the power, in the words of Representative Bulso, "to adopt their own firearms policy."  During debate on Bill 7005 on the House floor, the Speaker ruled Representative Jones as being out of order under Rule 18 after Representative Jones simply asked the bill's sponsor how allowing schools to increase the number of people with firearms on a campus might prevent attacks by AR-15 style weapons such as the one used in the killings at The Covenant School.  The question asked by Representative Jones "strictly conform[ed]" to the topic of debate by challenging the utility of House Bill 7005 to protect students, teachers, administrators, and staff.  Nonetheless the Speaker ruled him out of order.

74.    The second "out of order" ruling against Representative Jones by the Speaker came during discussion of House Bill 7023, sponsored by Republican Representative Cepicky, under which police and local law enforcement offices around the state would be allowed to assign gun-carrying School Resource Officers or other law enforcement to be present on school grounds, with or without the school's consent, whenever the school district did not have a Memorandum of Understanding in place with the police office.  During debate on Bill 7023 on the House floor, the Speaker ruled Representative Jones as being out of order under Rule 18 after Representative Jones rose in opposition to the bill and pointed out that his constituents did not want additional armed guards in their schools and instead needed that additional funding for mental health professionals

---

[45] The full video of the events occurring during the August 28, 2023 House session as described in these paragraphs may be seen beginning at approximately the 1:39:00 mark of the full video of this House session, which is available online at https://tnga.granicus.com/player/clip/28888?view_id=705&redirect=true&h=6e192f2c2855bedb393c57ff629d2799.

and better pay for teachers. Again, this conduct did not violate House rules but the Speaker nonetheless used Rule 18 to silence Representative Jones.

75.     Upon this second "out of order" ruling by the Speaker, Defendant Hicks, acting in his role as Assistant Clerk and Parliamentarian of the House, immediately informed Speaker Sexton that Representative Jones had been ruled as "out of order" twice and was subject to censure under Rule 18.

76.     Thereafter, the Speaker told the body that Representative Jones had been ruled out of order twice and invoked Rule 18, calling for a vote from the House to sustain the Speaker's second out of order ruling in order to impose punishment under Rule 18 and prohibit Representative Jones from speaking for the remainder of the legislative day with verbal threat that he could be silenced for the remainder of the legislative session. After lengthy discussion on the parliamentary process, including questions from numerous members noting that there was no clear standard for knowing what was and was not "out of order" to allow the Speaker to inflict this harsh punishment, the House voted to sustain the Speaker's ruling by a vote of 70-20, along partisan lines.

77.     Representative Jones was thus silenced by the Speaker and the Republican majority and was prevented from speaking in any form for the full remainder of the legislative day on August 28, 2023—even though both of the comments for which he was punished were clearly related to the bill that he opposed.

78.     Having been silenced and prohibited from speaking on the floor of the House for the rest of the legislative day, Representative Jones was prohibited from speaking on any of the remaining proposed legislation before the House. He was also denied the right to rise during the period of "Additional Business" at the end of the legislative session to bring forward to the floor a

motion of "no confidence" against the Speaker based on the Speaker's "continued abuse of power and dishonor to the public office he holds," as Representative Jones had informed the public that he intended to do in a social media post and other public statements. The Speaker's abuse of the new Rule 18 thus prevented Representative Jones from using his voice to dissent to the Speaker's leadership of the House and to raise concerns about the nature of the Speaker's use of his power in the House of Representatives.

79.     The Speaker's improper use of new Rule 18 to silence debate, not only on the issue in question but on future unrelated matters as well, has an extreme chilling effect on Representative Jones and other dissenting members' free speech rights. Representative Jones faces the threat that, whenever he rises to speak in the Legislature, the Speaker will rule Representative Jones out of order in order to impose the harsher additional punishments for third and fourth infractions under the new Rule 18 and thus to silence and chill speech by Representative Jones for his term.

80.     On information and belief, the Speaker and House Republican majority intend to implement the New Rules, or other procedural rules like them in substance, to govern future legislative sessions of the House, including the legislative session scheduled to convene on January 9, 2024.

Representative Jones Suffers Ongoing Injury and a Denial of Rights.

81.     The Speaker has continued unconstitutionally to deny Representative Jones his committee seats that were wrongfully stripped from him on April 3, 2023. In particular the Speaker continues to deny Representative Jones his seat on the Government Operations Committee, which continues to meet on a regular basis now even while the House is otherwise not in session.

82.     As described above, the Speaker's decision to strip Representative Jones of his committee assignments was an unjustified retaliation for Representative Jones' exercise of his First Amendment right to speech that was made without any notice or other process, and the ongoing refusal to restore Representative Jones to his seat on the still-active Government Operations Committee despite his April re-appointment and his subsequent reelection in the August Special Election constitutes an ongoing violation of his rights and an ongoing disenfranchisement of the voters of the 52nd legislative district, who are being denied their voice on this committee.

83.     There is no basis in law or in the Rules or practices of the Tennessee House of Representatives for the Speaker's ongoing refusal to allow Representative Jones to participate in his committee.  The Speaker himself specifically acknowledged this during an exchange with Representative Jones in open session of the House on April 10, 2023.  Representative Jones asked the Speaker whether he would be restored to his committees given his reappointment earlier that day, as Representative Gloria Johnson already had been to her committees.  The Speaker specifically told Representative Jones that he could not be restored to his committees for the sole reason that Representative Jones was not "duly elected."[46]   This rationale was pretextual; nothing in the law punishes a duly appointed representative from full legislative rights and privileges.

84.     More important, even this pretext was not followed.  After Representative Jones was duly elected, the Speaker continued to refuse to restore Representative Jones to his committee seats, including on the Government Operations Committee.  Following his reelection in August,

---

[46] April 10, 2023 Tennessee House of Representatives Session video, available at https://www.youtube.com/watch?v=Ke3XhiTx_XA.

Representative Jones, acting through counsel, wrote to the Speaker twice, on August 7 and again on August 17, demanding that he be restored to his committee positions now that he was once again "duly elected" and noting specifically the Speaker's own words from the April 10 House floor session. The Speaker ignored and did not respond to either letter.

85. On Monday, September 19, 2023, one day before the scheduled meeting of the Government Operations Committee on September 20, Representative Jones sent an email to Defendant Letzler, the Chief Clerk who had signed the April 3, 2023 letter informing Representative Jones that he was being removed from his committee assignments, noting that the Speaker had not replied to Representative Jones' two prior letters. Representative Jones asked Ms. Letzler to confirm that Representative Jones had been restored to his seat on the Government Operations Committee so that he could participate in the scheduled meeting.

86. On September 20, 2023, Ms.. Letzler responded by email, copying the Speaker and counsel for Representative Jones, informing Representative Jones that he and three other members, Representatives Pearson, Behn, and Hill, had not been appointed to committees because they "had been elected after the first annual session of the 113th General Assembly recessed on April 21.

87. Ms. Letzler's response ignored and refused to apply the Speaker's April 10 statement during House session that the sole reason Representative Jones could not be restored to his committees at that point in time was that he was not "duly elected." But as the Speaker and Ms. Letzler know, that purported shortcoming was cured and resolved on August 3, 2023 when Representative Jones was reelected or at latest on August 17, 2023, when Representative Jones was sworn back in based on his reelection.

88. Representative Jones met all conditions set for being restored to committee, and the Speaker's attempt to justify his ongoing denial of the committee seat to which Representative

Jones is entitled by comparing him to Representatives Pearson, Behn, and Hill, is a baseless pretext given that, unlike Representative Jones, none of those three members had even had committee appointments during the 2023 House legislative term, so none had any positions that could have been restored.

89.     The Speaker continues to deny Representative Jones his committee positions, including his seat on the still-active Government Operations committee, in violation of Representative Jones' constitutional rights.

<u>Defendant Has Been Denied Other Benefits of Office.</u>

90.     As a result of the illegal expulsion, Representative Jones also has been deprived of his full year of experience for purposes of calculating his level of seniority as a member of the House of Representatives.

91.     On information and belief, the House of Representatives accords certain privileges and rights to members based on their level of seniority, a determination that is made based on the year of the member's election to the House of Representatives.

92.     Representative Jones was duly elected by the people of the 52nd District in Nashville and was duly sworn in and seated in January 2023 as a freshman member of the House of Representatives for the 2023 Term. He is entitled to have his seniority calculate on that basis and that basis alone.

93.     As a result of the illegal expulsion by Defendants and of being forced to be reappointed and then to run again for his seat in a special election—all of which is solely a result of Defendants' illegal expulsion of Representative Jones from the House—Defendants have determined Representative Jones' seniority not based on his 2022 election but instead based on the date of any special election in 2023, depriving him of at least one year of seniority to which

he is entitled.  The official listing of House seniority shows that Representative Jones' year of seniority is qualified by his having been "[e]lected in a special election," rather than having the full, unqualified year of seniority that should have but for his unconstitutional expulsion.[47]

94.     In addition, on information and belief, Defendants' illegal expulsion of Representative Jones also resulted in the ongoing deprivation of Representative Jones' duly earned retirement benefits as an elected member of the House of Representatives.  Under Tennessee law, elected members of the House of Representatives become vested and eligible for participation in the Tennessee Consolidated Retirement System ("TCRS"), Tennessee's retirement program for government employees, after four years of "creditable general assembly service" as a legislator, and upon retirement each vested member has his or her retirement benefits in TCRS calculated based on that members total number of  years of "creditable general assembly service."[48]

95.     On information and belief, solely on the basis of their illegal expulsion of Representative Jones on April 6, 2023, Defendants have denied or intend to deny and refuse to credit Representative Jones with his year of service in the 2023 legislative session as a duly elected member of the House of Representatives in 2023 as a year of "creditable general assembly service" for purposes of determining Representative Jones' eligibility for and calculating his entitlement to benefits in the TCRS.

96.     On information and belief, a significant number of Representative Jones' emails from his state email account have not been restored from before April 6, 2023, depriving him of the ability to address constituent concerns.

---

[47] *See*  https://www.capitol.tn.gov/Archives/House/113ga/publications/SeniorityList_113th.pdf.

[48] *See* Lillard, David H., Treasurer, "Retire Ready: Tennessee's Retirement Program," (October 2021), available at https://treasury.tn.gov/Retirement/Retire-Ready-Tennessee/for-State-Employees.

97. On information and belief, Defendants, as a result of their illegal expulsion of Representative Jones, have denied and are continuing to deny Representative Jones additional benefits and rights to which he is entitled as a duly elected member of the House of Representatives.

## FIRST CLAIM FOR RELIEF
### (Violation of the First Amendment to the U.S. Constitution, 42 U.S.C. § 1983; Tennessee Constitution, Article I, §19)

98. Representative Jones incorporates by reference all of the foregoing allegations.

99. Representative Jones engaged in activity protected by the First Amendment of the Constitution of United States and the First Article of the Tennessee Constitution when, during a legislative recess, he spoke and participated in a protest about the need to prevent gun violence in the wake of a deadly school shooting, ending the lives of six people including three children.

100. The prevention of gun violence and the safety of community children, teachers, and school administrators are matters of immediate public concern.

101. On April 3, 2023, Defendants removed Representative Jones from his seats on the Government Oversight Committee, the Education Administration Committee, the Agriculture & Natural Resources Committee, and the Agriculture & Natural Resources Subcommittee in retaliation for, among other things, Representative Jones' speech from the well of the Tennessee House in protest of gun violence and in support of gun control legislation.

102. Defendants removed Representative Jones from his committees pursuant to a directive from the Speaker and therefore acted under the color of state law.

103. On April 6, 2023, Defendants expelled Representative Jones from the Tennessee House of Representatives in retaliation for Representative Jones' speech from the well of the Tennessee House in protest of gun violence and in support of gun control legislation.

Representative Jones' engagement in constitutionally protected activity by speaking on a matter of public concern was a substantial or motivating factor in his expulsion.

104.    Defendants expelled Representative Jones pursuant to a House resolution and a House vote and therefore acted under color of state law in expelling Representative Jones.

105.    Despite having been duly—and overwhelmingly—reelected by the people of the 52nd Legislative District, the Speaker and the House Republican majority have prevented and continue to prevent Representative Jones from speaking on behalf of his constituents by their continuing to deny Representative Jones his seat on the Government Operations committee to which he was duly appointed.

106.    Defendants passed and employed the New Rules of House procedure, including but not limited to Rules 2 and 18 of the New Rules, for the August 2023 Special Session for the purpose of preventing and silencing protected speech by members of the House with whom they disagree, and on August 28, 2023, they employed Rule 18 of the New Rules to silence and prevent Representative Jones from speaking on the floor of the House in violation of his rights under the U.S. and Tennessee Constitutions.

107.    Defendants intend to make or threaten to make ongoing use of the New Rules to prevent and silence Representative Jones and other members with whom they disagree, from speaking on issues germane to the business of the House for which he was elected to represent the citizens of the 52nd District.

108.    The foregoing actions constitute retaliatory discharge in violation of 42 U.S.C. § 1983 and the First Amendment of the United States Constitution.

109.    Defendants' violation of Section 1983 and the First Amendment has inflicted the following irreparable harm upon Representative Jones, including illegally preventing him from

serving and representing his constituents during the period of his expulsion from the House; silencing and prohibiting him from engaging in protected speech, including on behalf of his constituents as part of his duties as a duly elected member of the House, preventing him from serving on the Government Operations Committee; silencing him from protected speech through the arbitrary enforcement of the unconstitutional New Rules; and causing him to lose seniority and retirement benefits.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment that the New Rules are Unconstitutional under Article I of the U.S. Constitution, 42 U.S.C. § 1983; Tennessee Constitution, Article I, §19)

110.    Representative Jones incorporates by reference all of the foregoing allegations.

111.    The changes made to the Rules of Order of the Tennessee House of Representatives violate the US and Tennessee Constitutions, which guarantee the right to free speech.  The New Rules infringe upon constitutionally-protected speech, including by illegally chilling such speech, by giving the Speaker arbitrary and unchecked power to bar protected speech for sustained periods of time, including for the full duration of the legislative session as a disciplinary measure.

112.    These New Rules are also unconstitutionally vague and overbroad, prohibiting constitutionally protected expression without providing adequate notice of what forms of speech are impermissible.

113.    The New Rules, therefore, have a chilling effect on protected speech and expressive conduct. For example, Rule 2 does not provide any standard to determine what constitutes a "material disruption" and Rule 18 does not provide any standard to determine what constitutes a "failure to strictly conform to the question under debate[.]"  Absent such standards, these terms can be broadly construed by the House majority to suppress free expression of dissenting viewpoints. Legislators with dissenting viewpoints are at risk of arbitrary enforcement of the new

rules, as exemplified by the discipline Representative Jones faced during the Special Session, and do not have the opportunity to challenge any resulting discipline. This violates their due process rights under the U.S. and Tennessee Constitutions.

114. On August 28, 2023, Defendants enforced Rule 18 of the New Rules to illegally and unconstitutionally silence Representative Jones and bar him from engaging in constitutionally protected speech as part of his duties as the duly elected representative of Tennessee's 52nd Legislative District, and, on information and belief, Defendants intent to implement and enforce the New Rules in future legislative sessions to further chill, silence, and prevent such constitutionally protected speech by Representative Jones and others with whom they disagree.

115. Accordingly, an actual controversy exists between Representative Jones and Defendants, and Representative Jones is entitled to a declaration that the New Rules, both as written and as enforced during the August 2023 Special Session, are illegal and violate the United States and Tennessee constitutions.

### THIRD CLAIM FOR RELIEF
**(Violation of the Due Process Clause of the Fourteenth Amendment For Denial of Impartial Hearing, 42 U.S.C. § 1983)**

116. Representative Jones incorporates by reference all of the foregoing allegations.

117. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution bars state actors from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *see also Dixon v. Alabama State Bd. of Ed.*, 294 F.2d 150, 155 (5th Cir. 1961) ("Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law.").

118.     Under the Due Process Clause, an office holder may not be expelled from state office absent notice and an opportunity for hearing. *See, e.g.*, *McCarley v. Sanders*, 309 F. Supp. 8, 11 (M.D. Ala. 1970) (citing, *e.g.*, *Wieman v. Updegraff*, 344 U.S. 183, 191 (1952)).

119.     With respect to his dismissal from his committee assignments, Representative Jones' first and only form of notice that Defendants intended to remove him from his committees was the letter dated April 3, 2023 sent to Representative Jones on the Speaker's letterhead and signed by Defendant Tammy Letzler, Chief Clerk of the Tennessee House of Representative.

120.     The Speaker's unconstitutional denial of Representative Jones' seat on the Government Operations Committee is continuing and ongoing, despite the fact that Representative Jones was duly reelected in the August 2023 Special Election and has now been sworn back in as a member of the House.

121.     With respect to his expulsion, Representative Jones' first and only form of notice that Defendants intended to hold expulsion proceedings against him came in the form of the introduction of House Resolution 65 on the House floor on Monday, April 3, 2023.  The vote on his expulsion was scheduled for April 6, 2023.

122.     Representative Jones was forced to acquire legal counsel within three days to defend himself against the charges.

123.     Representative Jones was not advised of the procedures for his expulsion hearing, nor was he permitted an opportunity to evaluate the evidence against him.

124.     Representative Jones was deprived of time, resources, and opportunity to mount an adequate defense.

125.     During the expulsion hearing, House leadership moved to suspend the House Rules to subject Representative Jones to trial-like conditions.  Representative Jones was not provided notice that a motion to suspend the House Rules would be brought.

126.     After the House Rules were suspended, Representative Jones was given twenty minutes to defend himself on the House floor.  Representative Jones was given five minutes to offer a "closing" argument prior to the expulsion vote.

127.     Under the suspended House Rules, Representative Jones was not permitted to call witnesses.

128.     Under the suspended House Rules, Representative Jones was not permitted to introduce evidence. The House majority, however, was permitted to introduce evidence in the form of a manipulatively edited video of Representative Jones' protest.  Representative Jones was not given prior notice that such video would be played during the proceedings.

129.     Under the suspended House Rules, Representative Jones was afforded inadequate time to confer with his legal counsel.

130.     Despite the fact that many House members had yet to ask questions of Representative Jones, other members voted to suspend debate after twenty minutes had passed, thus depriving Representative Jones of an opportunity to adequately defend himself.

131.     In an adjudicatory proceeding, Due Process demands neutrality.  *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980); *see also Tumey v. Ohio*, 273 U.S. 510, 522, 533 (1927).

132.     This obligation of impartiality attaches to anyone acting in a "judicial or quasi-judicial capacity."  *Tumey*, 273 U.S. at 522.

133.     Those acting in a "judicial or quasi-judicial capacity" often have the power to impose binding, non-appealable sentences on the party before it. *Tumey*, 273 U.S. at 522.

134.    The Tennessee legislatures' expulsion votes are non-appealable and binding on members.

135.    The Tennessee legislature, acting in a judicial capacity, was required by the Due Process Clause to provide Representative Jones an impartial forum to adjudicate the expulsion charges against him.

136.    On information and belief, members of the Tennessee Legislature, acting as a judicial body, agreed to vote for Jones' conviction "no matter what." This pact was made in advance of the expulsion hearing and applied regardless of the facts presented through Representative Jones' defense.

137.    The Tennessee legislature, acting as a judicial body, denied Representative Jones an impartial forum to adjudicate the binding, non-appealable expulsion claims against him.

138.    The Tennessee legislature, acting as a judicial body, violated Representative Jones' due process rights.

139.    As a direct and proximate result of Defendants' violation of Section 1983 and the Fourteenth Amendment, Representative Jones suffered irreparable harm.

## FOURTH CLAIM FOR RELIEF
### (Violation of the Due Process Clause of the Fourteenth Amendment For Denial of Benefits, 42 U.S.C. § 1983)

140.    Representative Jones incorporates by reference all of the foregoing allegations.

141.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution bars state actors from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

142.    Procedural due process imposes constraints on governmental decisions which deprive individuals of property interests within the meaning of the Due Process Clause.

*Matthews v. Eldridge*, 424 U.S. 319, 332 (1976).  At base, due process requires that parties deprived of their property receive adequate notice of that deprivation and an opportunity to be heard.  *Id.*

143.    Health benefits are a protected property interest under the Due Process Clause. *See id.* at 333.

144.    Retirement benefits are a protected property interest under the Due Process Clause.  *See id.* at 333.

145.    On information and belief, the Tennessee House accords certain privileges and rights to its members, such as health insurance.

146.    On information and belief, Representative Jones' health insurance coverage was set to lapse as a consequence of his unlawful expulsion.

147.    On information and belief, the House of Representatives accords certain privileges and rights to members based on their number of years of service to the body.

148.    Under Tennessee law, elected members of the House of Representatives become vested and eligible for participation in the Tennessee Consolidated Retirement System ("TCRS"), Tennessee's retirement program for government employees, after four years of "creditable general assembly service" as a legislator.  TCRS eligibility is calculated based on an individual member's total number of years of "creditable general assembly service."

149.    On information and belief, Defendants have denied or intend to deny and refuse to credit Representative Jones with his year of service in the 2023 legislative session because of his unlawful expulsion.

150.   On information and belief, Defendants have denied and are continuing to deny Representative Jones additional benefits and rights to which he is entitled as a duly elected member of the House of Representatives.

151.   As a direct and proximate result of Defendants' violation of Section 1983 and the Fourteenth Amendment, Representative Jones suffered irreparable harm.  Specifically, as a result of his unconstitutional expulsion, Representative Jones temporarily lost health insurance coverage and will not have this year of public service count toward his retirement benefits.

**FIFTH CLAIM FOR RELIEF**
**(Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution for disparate racial treatment, 42 U.S.C. § 1983)**

152.   Representative Jones incorporates by reference all of the foregoing allegations.

153.   The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  It is enforceable pursuant to 42 U.S.C. § 1983.

154.   The government denied equal protection to Representative Jones in treating him differently than similarly situated white House members for the same conduct.

155.   Among other examples:

a.   Representative Jones, who is Black, was expelled from the House of Representatives by the majority White House membership for exercising his First Amendment right to free speech and protesting the House's failure to consider meaningful gun control measures, while Representative Gloria Johnson, who engaged in the exact same speech and protest as Representative Jones but who is white, was not expelled.

b. Representative Jones, who is Black, was censured, objected to, and ignored on the floor of the House on April 27, 2023 when he critically questioned a Republican-sponsored bill as threatening to "bully" Tennessee public school students, while Representative Bob Freeman, who only moments before had also criticized that the same bill would result in the "bullying" of students but who is white, was not censured or objected to and who indeed was allowed to engage in substantive floor debate with the bill's sponsor.

c. Representative Jones, who is Black, was denied committee positions after his reinstatement to the House membership on April 10, 2023, even though Representative Gloria Johnson, who was also censured and removed from committee seats for her speech and protest but who is white, was allowed to return to her committee assignments.

156. The government's purpose in treating Representative Jones differently than Representative Johnson was intentionally discriminatory.

157. Under the Constitution, "government policies that classify people by race are presumptively invalid." *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021) (citing U.S. Const. amend. XIV; *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 234, 235 (1995)).

158. Because race is a suspect classification, government racial classifications are subject to strict scrutiny, which means that the government's action must be narrowly tailored to further a compelling state interest. *Id.* at 22.; *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007).

159. The government's justification for its action does not pass constitutional scrutiny.

160.     As a direct and proximate result of Defendants' violation of Section 1983 and the

Fourteenth Amendment, Representative Jones suffered irreparable harm.

**SIXTH CLAIM FOR RELIEF**
**(Bill of Attainder in Violation of Article I of the U.S. Constitution, 42 U.S.C. § 1983)**

161.     Representative Jones incorporates by reference all of the foregoing allegations.

162.     Article I of the U.S. Constitution provides that "[n]o Bill of Attainder or ex post

facto Law shall be passed."  U.S. Const. Art. I § 9, cl. 3.  A bill of attainder is "legislative

punishment, of any form or severity, of specifically designated persons or groups."  *United*

*States v. Brown*, 381 U.S. 437, 447 (1965); *see also United States v. Lovett,* 328 U.S. 303, 315

(1946) ("[L]egislative acts, no matter what their form, that apply either to named individuals or

to easily ascertainable members of a group in such a way as to inflict punishment on them

without a judicial trial are bills of attainder prohibited by the Constitution.").

163.     Representative Jones was singled out for punishment by the Tennessee

legislature.  *Foretich v. United States*, 351 F.3d 1198, 1217 (D.C. Cir. 2003) ("The element of

specificity may be satisfied if the statute singles out a person or class by name or applies to

'easily ascertainable members of a group.'").

164.     First, Representative Jones' expulsion inflicts "pains and penalties"—such as

banishment—that have historically been associated with bills of attainder.  *See Nixon v. Admin.*

*of Gen. Servs.*, 433 U.S. 425, 474 (1977).

165.     Second, "viewed in terms of the type and severity of burdens imposed" on

Representative Jones, the Tennessee legislature's expulsion vote cannot be said to "further

nonpunitive legislative purposes."  *Nixon*, 433 U.S. at 475–76.  On information and belief, other

members of the Tennessee legislature have engaged in criminal acts while serving on the body.

These actions have gone unrecognized and uncorrected by the Tennessee legislature.  By

comparison, the expulsion charges brought against Jones for engaging in constitutionally protected conduct were retrospective and designed to punish. The Tennessee legislature lacked a legitimate interest in voting for Jones' expulsion.

166. Third, "the legislative record evinces a congressional intent to punish" conduct that is protected by the First Amendment. *Nixon*, 433 U.S. at 478.

167. In a recording of a conversation between House members after the expulsion vote, Representative Jason Zachary stated that "Democrats are not our friends," and that he would vote to expel Representative Jones "no matter what." This is the quintessential "'smoking gun' evidence of punitive intent necessary to establish a bill of attainder." *SBC Comm'ns, Inc. v. FCC*, 154 F.3d 226, 243 (5th Cir. 1998).

168. Under the historical, functional, and motivational tests, Representative Jones' expulsion for constitutionally protected speech constitutes an unconstitutional bill of attainder.

169. As a direct and proximate result of Defendants' violation of Section 1983 and the Fourteenth Amendment, Representative Jones' expulsion—and the downstream consequences of that expulsion, such as the loss of committee assignments, seniority, and other benefits provided to members of the Tennessee legislature—have caused and will continue to cause ongoing irreparable harm to Representative Jones.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment as follows:

1. Declaring that the Defendants' expulsion of Representative Jones from the House violated the U.S. Constitution and the Constitution of the State of Tennessee;

2. Declaring that Representative Jones' unconstitutional and illegal expulsion will not have any effect on his rights, privileges or entitlements, up to an including loss of seniority,

eligibility for committee appointments, or any benefits or entitlements provided to Representatives of the Tennessee State Legislature;

3.      Declaring that the "Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, First Extraordinary Session" are unconstitutional, in violation of the First Amendment Right to Freedom of Speech of the U.S. Constitution and the Constitution of the State of Tennessee;

4.      Enjoining Defendants from punishing or in any way preventing Representative Jones from speaking on the floor of the House or otherwise in his capacity as a duly elected member of the House of Representatives, including by any use of the New Rules;

5.      Enjoining and requiring Defendants to fully and immediately restore (including retroactively, where necessary) Representative Jones to the full rights and benefits of his elected office of which he has been and continues to be deprived as a result of his unconstitutional and illegal expulsion, including:

    a.   Reinstatement of Representative Jones to his committee appointments;

    b.   Restoration of Representative Jones' seniority based on his original date of election to the House of Representatives;

    c.   Official acknowledgement of Representative Jones' service in the 113th Tennessee General Assembly House of Representatives as a full year of creditable general assembly service for purposes of determining Representative Jones' qualification for and benefits under the Tennessee Consolidated Retirement System; and

    d.   Restoration of all other benefits of which he has or may have been deprived.

6.      Awarding compensatory damages to Plaintiff according to proof at trial;

7.      Awarding costs of suit and attorney's fees; and

8.      Providing such other and further relief as the Court may deem just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


Respectfully submitted this second day of October, 2023.

/s/ Jerry E. Martin
Jerry E. Martin (TBPR No. 020193)
David W. Garrison (TBPR No. 024968)
Scott P. Tift (TBPR No. 027592)
BARRETT JOHNSTON MARTIN
& GARRISON, PLLC
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com
stift@barrettjohnston.com

C. William Phillips*
COVINGTON & BURLING LLP
The New York Time Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: 212/841-1000
cphillips@cov.com

R. Gregory Rubio*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C.  20001
Telephone:  202/662-5237
202/778-5237 (fax)
grubio@cov.com

*Attorneys for Plaintiff Justin Jones*
*\*motions for admission pro hac vice forthcoming*

-46-