**IN THE UNITED STATES DISTRICT COURT**
**IN THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

REPRESENTATIVE JUSTIN JONES, in his personal capacity,

*Plaintiff*

v.

REPRESENTATIVE CAMERON SEXTON, in his individual capacity and in his official capacity as the Speaker of the Tennessee House of Representatives; TAMMY LETZLER, in her individual capacity and in her official capacity as the Chief Clerk for the Tennessee House of Representatives; BOBBY TROTTER, in his individual capacity and in his official capacity as the Chief Sergeant-at-Arms for the Tennessee House of Representatives; and DANIEL HICKS, in his individual capacity and in his official capacity as the Assistant Chief Clerk and Parliamentarian for the Tennessee House of Representatives,

*Defendants*.

Case No. 3:23-cv-01033
Judge Eli J. Richardson
Magistrate Judge Alistair E. Newbern

**AMENDED COMPLAINT**

For his Amended Complaint, Plaintiff Representative Justin Shea Bautista-Jones ("Plaintiff" or "Representative Jones"), appearing through undersigned counsel, alleges as follows, based on present knowledge, information, and belief:

**NATURE OF THE ACTION**

1.      Time and again over the past year Defendants have blocked Representative Jones from expressing views on critical issues that he was duly elected to express, ensuring that viewpoints dissenting from their own are silenced, neither heard nor spoken.  This censorship

violates the Constitution of the United States and of the State of Tennessee and is an anathema to a free, democratic society. By this action, Representative Jones seeks relief for Defendants' illegal and unconstitutional actions to silence his and other voices in the Tennessee Legislature, including injunctive relief to stop further violations of his rights to speak and to participate in the legislative process.

2. On April 6, 2023, the Tennessee House of Representatives (the "House") illegally expelled Representative Jones for exercising his right to free speech. Representative Jones had attempted to speak in the House to protest the refusal of Tennessee lawmakers to address the devastating problem of gun violence. Only days before, Nashville had witnessed the horrific murders of six Tennesseans, including three children, at The Covenant School. In the wake of these atrocities, Representative Jones and two other legislators, Representatives Justin Pearson and Gloria Johnson, sought to raise the critical issue of gun violence in the House, only to be cut off and silenced by Defendant Cameron Sexton, the Speaker of the House, who refused to allow them to address the issue. When these three lawmakers took to the well of the House in an attempt to be heard on this issue, Defendant Sexton shut down the House proceedings entirely, forced the removal of Representative Jones and his two colleagues from the Legislature, and then led an illegal and unconstitutional effort to expel them—all in an effort to quash legitimate and open discussion about the use of weapons of war in murdering six Nashville citizens.

3. The proceedings that followed were a pretext for silencing Representative Jones: There was never a real issue about whether Defendant Sexton and the House Republicans that he leads would expel Representative Jones and his colleague Representative Pearson; the show trial was rigged against them from the start. As Representative Garrett noted in a subsequent closed-door meeting among House Republicans, "We had the jury already. This obviously wasn't a trial.

But I knew every single one of your vote counts.  I knew that we did not have to convince you all."[1]

4.     After his expulsion, Representative Jones was re-appointed by a unanimous vote of the Metropolitan Council of Nashville and Davidson County, but the illegal action harmed him in several ways.  Among other injuries, Plaintiff's unlawful expulsion from the House violated his legal rights and robbed Representative Jones of his Committee appointments, employee benefits, and the seniority to which he was entitled as a duly elected Representative of the 52nd District in November 2022.  As a result of Defendants' illegal expulsion, Representative Jones was also required to undergo the expense and burden of running for re-election in a Special Election held on August 3, 2023 (the "August 2023 Special Election").  Representative Jones was re-elected by an overwhelming majority—winning nearly eighty percent of the vote.

5.     Even after Representative Jones' re-election, Defendants continued to deny Representative Jones his constitutionally protected rights to speak in the House and to represent his constituents.  During a special legislative session convened on August 21, 2023 to consider measures to address public safety, including gun and school safety (the "August 2023 Special Legislative Session"), Defendant Sexton imposed and abused new draconian and unconstitutional procedural rules, among other reasons, to enable his ability to silence Representative Jones and to prevent him from participating in House debates.  Although those Rules were later found to be unconstitutional as applied to speech by citizens attending the Special Session, Defendant Sexton used the Rules to stop Representative Jones from expressing

---

[1] D. Patrick Rodgers, *Transcript: Leaked Audio from House Republican Caucus Meeting*, Nashville Scene (Apr. 17, 2023), https://www.nashvillescene.com/news/pithinthewind/transcript-leaked-audio-from-house-republican-caucus-meeting/article_1d214778-dc81-11ed-9aab-071eeaf54531.html.

his views in debate on issues germane to the business of the House and significant to his constituents. And Defendant Sexton threatened Representative Jones with actions to silence him for the remainder of the year if he continued to express his views on issues involving gun safety. Defendant Sexton's ongoing violations of Representative Jones' constitutional rights continue to disenfranchise the citizens of Tennessee's 52nd House District by silencing the person they have elected to speak for them twice within a nine-month period.

6. Representative Jones has been, is, and will continue to be a voice for his constituents in the Tennessee House of Representatives. He brings this action to prevent Defendants from continuing to suppress his voice, whether through the updated House Rules or otherwise. Representative Jones also seeks full restoration of the benefits, rights, and privileges to which he is entitled, which Defendants illegally stripped from him in retaliation for his expression of protected speech.

**PARTIES**

7. Plaintiff was first elected in November 2022 to represent House District 52 as part of the 113th Tennessee General Assembly in January 2023. Plaintiff, a Democrat, is a twenty-eight-year-old Black man. District 52, located in east, south, and southeast Nashville and Davidson County, has a total population of over 71,000 people, and is comprised of a majority of individuals belonging to racial minorities.

8. As part of his service on behalf of his constituents, Representative Jones served on three House Committees: the Government Operations Committee, the Education Administration Committee, and the Agriculture & Natural Resources Committee. He also served on the Agricultural & Natural Resources Subcommittee. In his role on the Government Operations Committee, Representative Jones consistently fought to defend the civil rights and

liberties of his constituents and of all Tennesseans by, among other efforts, challenging administrative enforcement of book bans, questioning the Tennessee Department of Safety on its surveillance of protesters, and resisting retaliatory efforts by the State government to reduce the number of seats in Nashville's city council and to take over Nashville's airport authority board.

9.     Defendant Cameron Sexton is a white Republican and a member of the Tennessee House of Representatives for District 25.  Representative Sexton was elected to the House in November 2010 and has served as Speaker of the House since August 2019.  The Speaker of the House is the presiding officer of the House.  The Speaker presides over all House sessions, including debates and the adoption of House Rules, and enforces the House Rules.  Speaker Sexton is named as a Defendant in his individual capacity and in his official capacity as House Speaker, as further alleged herein.

10.     Defendant Tammy Letzler is the Chief Clerk of the 113th Tennessee House of Representatives.  The Chief Clerk serves as a general clerical assistant to the Speaker.  Under the House Rules, the Chief Clerk "shall keep open the Office of the Clerk during and between sessions of the General Assembly on a permanent basis and shall transact efficiently such business as is assigned or required by law or rules of the House, both during and between sessions.  The Chief Clerk . . . shall take an oath to support the Constitution of the United States and of the State of Tennessee and to truly and faithfully discharge the duties of the office to the best of their knowledge and ability."[2]  Defendant Letzler is sued in both her individual capacity and in her official capacity as Chief Clerk, as further alleged herein.

---

[2] *See* Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, Rule 9, *available at* https://www.capitol.tn.gov/house/publications/.

11.     Defendant Bobby Trotter is the Chief Sergeant-At-Arms of the 113th Tennessee House of Representatives.  The Sergeant-At-Arms maintains order and decorum in the House and House galleries, including through enforcement of the House Rules.  Under the House Rules, the "Chief Sergeant-At-Arms shall take an oath to support the Constitution of the United States and of the State of Tennessee and to truly and faithfully discharge the duties of the office to the best of their knowledge and ability."[3]  On information and belief Defendant Trotter and his staff enforce Defendant Sexton's orders concerning who to exclude from the House, the House floor, and the House galleries.  Defendant Trotter is sued in his individual capacity and in his official capacity as Chief Sergeant-At-Arms, as further alleged herein.

12.     Defendant Daniel Hicks is the Assistant Chief Clerk and Parliamentarian for the 113th Tennessee House of Representatives.  Under the House Rules, the "Assistant Chief Clerk/Parliamentarian . . . shall take an oath to support the Constitution of the United States and of the State of Tennessee and to truly and faithfully discharge the duties of the office to the best of their knowledge and ability."[4]  Defendant Hicks is sued in his individual capacity and in his official capacities as Assistant Chief Clerk and Parliamentarian, as further alleged herein.

13.     The Tennessee House of Representatives is one chamber of the legislative branch of the State of Tennessee.  The House has a total of ninety-nine members, each of whom serve two-year terms.  In the 113th Tennessee House of Representatives, which was elected in 2022 for the years 2023 and 2024, the House has a Republican "super majority" with seventy-five Republicans and twenty-four Democrats.  Almost all of the Republicans in the Tennessee House

---

[3] *See* Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, Rule 9, *available at* https://www.capitol.tn.gov/house/publications/.

[4] *Id.*

of Representatives voted to expel Representative Jones from the House on April 6, 2023, and voted to sustain his being silenced by Defendant Sexton for the remainder of the legislative session on August 28, 2023.

## JURISDICTION AND VENUE

14.     Representative Jones brings this action under 42 U.S.C. § 1983.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

15.     This Court has personal jurisdiction over Defendants because Defendants are Tennessee residents.

16.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside or work in this District and a substantial part of the acts and events giving rise to this Complaint occurred in this District.

## STANDING

17.     Plaintiff has standing to bring the claims asserted in this Complaint because Defendants' actions have infringed his rights under the Constitution of the United States and of the State of Tennessee, and his injuries can be redressed by injunctive and other relief ordered by this Court.

18.     Plaintiff has suffered injuries-in-fact because he has been denied his constitutionally protected rights to speak and to be heard in the Tennessee Legislature as the duly elected Representative of the people of District 52.  Plaintiff also has suffered and continues to suffer retaliation as a result of engaging in protected speech in the House, including his ongoing loss of his Committee seat to represent his constituents on the Government Operations Committee, his ongoing loss of seniority, and other deprivations as described herein.

19.     Judicial determination of this controversy will resolve the rights, status, and legal relationships of the Parties, and further is of overriding public concern.

## FACTUAL BACKGROUND

20.     On March 27, 2023, Audrey Hale, a former student at The Covenant School, a private school in Nashville, Tennessee, breached the campus and shot and killed six people, three children and three adults.  Hale had legally purchased seven firearms from local gun stores and used three of them during the shooting, including a military-style semiautomatic rifle.  Hale's parents stated they felt that Hale "should not own weapons."[5]

21.     On March 27, 2023, at approximately 1:34 pm CST, just hours after the shooting at The Covenant School, the House Government Operations Committee met in committee session.  Following a moment of silence for the victims of The Covenant School shooting, Representative William Lamberth began discussion on HB 0322, a bill centered on officer response and coordination in response to events like the tragedy at The Covenant School. Representative Jones began to speak, drawing attention to the "proliferation of guns" and the fact that the United States "is the only nation in which this keeps happening," when Government Operations Committee Chairman Representative John Ragan interrupted him and instructed Representative Jones that he had the "right to ask a question" not "to make a statement."  During the exchange of questions on HB 0322 that followed between Representative Jones and Representative Lamberth, the bill's sponsor, Representative Jones was again interrupted multiple

---

[5] Adeel Hassan & Emily Cochrane, *What We Know About the Nashville School Shooting*, N.Y. Times (Mar. 29, 2023), https://www.nytimes.com/article/nashville-school-shooting.html.

times, after which the order went to Representative Gloria Johnson, who spoke uninterrupted during her questioning period.[6]

22.     In the days following the tragedy at The Covenant School, protests rocked Nashville as parents, students, and community members marched on the Tennessee State Capitol and called for legislative action on reasonable gun control measures to stop gun violence.[7]

Representatives Jones, Pearson, and Johnson Are Silenced.

23.     On March 29, 2023—amidst ongoing and widespread condemnation of these murders and protests of the non-existent regulation of the military-style weapons used to commit them—State Senator Todd Gardenhire, Chairman of the Senate Judiciary Committee, announced a pause on all gun-related bills and moved further consideration of pending measures to 2024.[8]

24.     On March 30, 2023, at approximately 9:00 am, the House met for its first legislative session after The Covenant School shooting. Following a customary period of "welcoming and honoring," Republican Representative Robert Stevens presented a bill related to the sale of wine in grocery stores. Representative Pearson asked and was recognized to speak—in accordance with House rules and procedures—and began discussing the critical need for action to address gun violence. Defendant Sexton cut Representative Pearson's remarks short,

---

[6] March 27, 2023 House Government Operations Committee hearing video, https://www.youtube.com/watch?v=FBoql7tLg5A&list=PL9dTuWMF6QugxkurpyEhebewNrfSiaUZK&index=7&pp=iAQB.

[7] Vivian Jones & Melissa Brown, *Tennessee Capitol Protest Explainer: Here's What Did and Did Not Happen*, The Tennessean (Apr. 4, 2023, 5:05 AM), https://www.tennessean.com/story/news/politics/2023/04/04/tennessee-capitol-protest-heres-what-did-and-did-not-happen/70075823007/.

[8] Andy Sher, *Tennessee Democratic Lawmaker Questions Gardenhire's Decision to Move All Gun Bills to 2024*, Chattanooga Times Free Press (Mar. 30, 2023, 10:19 PM), https://www.timesfreepress.com/news/2023/mar/30/democratic-lawmaker-questions-gardenhire-gun-bills-move-tfp/#/questions.

ruled the remarks non-germane, and demanded that he stay on the topic of the grocery bill presented by Representative Stevens.

25.     A few minutes later, a bill sponsored by Republican Representative John Crawford concerning the State comptroller's office was brought up for consideration on the House floor.  Representative Pearson once again was recognized—again in accordance with the House rules—and once again spoke regarding the need for legislation addressing gun violence. Defendant Sexton again silenced Representative Pearson, this time turning off the Representative's microphone and, again, ruling him out of order.[9]

26.     Later that morning, Representative Jones raised a parliamentary inquiry, informing the body and Defendant Sexton that Representative Jones had been prohibited from displaying a simple lapel pin noting the need for gun control.  Representative Jones stated: "I was told just right now by you, by a member of your staff, that I cannot wear a pin that says 'Halt the Assault' with a picture of an AR-15, that I'm banned from wearing this pin." Representative Jones further noted, "[M]embers of the other side of the aisle always wear pins that say the NRA.  They wear big pins with the AR-15 on it."[10]  Defendant Sexton denied that a Republican member was wearing such a pin that day but did not deny Plaintiff's general claim about the inconsistent application of the rule in general.

27.     Defendant Sexton nonetheless barred Representative Jones from wearing his gun-control lapel pin.

28.     Shortly thereafter, in retaliation for his attempts to speak and to be heard on these issues, Representative Jones' voting machine at his desk was turned off, preventing him from

---

[9] *Id.*

[10] *Id.*

casting his vote. On information and belief, Plaintiff's voting machine was turned off on the instruction and order of Defendant Sexton.

29. A few minutes later, during a brief pause between bills, Representatives Jones, Pearson, and Johnson—who had been repeatedly denied any opportunity to express their concerns regarding the murders at The Covenant School and the House's refusal to consider reasonable gun measures—entered the well of the House, together. Representatives Jones and Pearson began speaking from the podium, calling for legislative action against gun violence and for the recognition of the efforts of the many members of the public seated in the House gallery, who were vocally protesting the refusal of the Tennessee Legislature to address gun violence.[11]

30. Defendant Sexton reacted to Plaintiff's speech by declaring that Representative Jones was "out of order," calling for a five-minute recess, and asking for Republican leadership to approach him at the dais.[12]

31. After protesting from the well of the House, Representatives Jones, Pearson, and Johnson departed the House floor voluntarily, peacefully, and without any confrontation, violence, or other incident. Their speeches and presence in the well had lasted approximately sixteen minutes.[13] At all times before, during, and after those sixteen minutes, Representative Jones' speech and protest, as well as the protests of the other participating Tennessee legislators and the assembled members of the public, were entirely peaceful and without any violence, disturbance of the peace, or confrontation with police.

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

32.     Defendant Sexton did not reconvene the House for more than half-an-hour, ordering Tennessee State Police troopers first to clear members of the public from the House gallery.  He conferred with the Republican caucus on the House chamber's outdoor balcony.

33.     Upon resuming the House session, Defendant Sexton stated:

> Members, we all know, like a year or two ago,
> that tensions and frustrations can run high on the
> House floor. . . . We have addressed those
> concerns before.  At the same time there is a
> proper way to handle that and . . . what was
> demonstrated on this House floor is not the
> proper way to do that.[14]

34.     On April 3, 2023, as punishment for their exercise of their rights to free speech and protest, Defendant Sexton removed Representative Jones and Representative Johnson from all their respective committee assignments.[15]

35.     On this date, Representative Jones received a letter, sent on the Speaker's letterhead and signed by Defendant Letzler, informing him that "[y]ou have been removed from all House standing committees and subcommittees and committees on which you serve as designee."  For Representative Jones, this unlawful revocation of his committee assignments resulted in the loss of his seats on the Government Operations Committee, the Education Administration Committee, and the Agriculture & Natural Resources Committee, denying Representative Jones any chance to participate in the committees to which he had been assigned

---

[14] *Id.*

[15] Blaise Gainey, *Republicans Will Vote to Expel Three Democrats from the Tennessee Legislature Following Gun Control Protest*, WPLN News (Apr. 3, 2023), https://wpln.org/post/republicans-bar-three-democrats-from-committees-following-their-gun-control-protest-on-tennessee-house-floor/.  Representative Pearson was elected in a 2023 special election and had not yet been assigned to any House Committees.

and further depriving Representative Jones' constituents of representation in this important part of the legislative process.

36.     Representative Jones' only notice or due process of any kind regarding his removal from his committee seats was the April 3, 2023 letter sent on Defendant Sexton's letterhead and signed by Defendant Letzler.

37.     Representative Johnson, meanwhile, was restored to her committee seats on April 10, 2023—after the House vote failed to expel her.  As of the filing of this Amended Complaint, Representative Jones has not been restored to his seat on the Government Operations Committee, which continues to meet regularly throughout the year, even while the House is not in session.

38.     On April 3, 2023, Representatives Jones, Johnson, and Pearson, also had their access to the Tennessee Capitol building and to the legislative parking garage restricted by order of Defendant Sexton.[16]  On information and belief, Defendant Sexton's order was enforced by Defendant Trotter and his staff.

Representatives Jones and Pearson Are Unlawfully Expelled.

39.     Finally, acting on Defendant Sexton's threats, House Republicans introduced resolutions calling for the expulsions of Representatives Jones, Johnson, and Pearson from the House, pursuant to Article II, Section 12 of the Tennessee Constitution.

40.     Since the Tennessee House of Representatives' inception in 1797, the punishment of expulsion has only been inflicted on three occasions, each prior expulsion involved either the expelled Representatives' criminal conduct or the Representatives' efforts to prevent extending citizenship to former slaves:

---

[16] Vivian Jones, *Tennessee House Speaker Strips Democrats of Committee Roles After Capitol Protest*, The Tennessean (Apr. 3, 2023, 4:57 PM), https://www.tennessean.com/story/news/politics/2023/04/03/tn-house-speaker-strips-democrats-of-committee-roles/70077117007/.

- In 1866, six lawmakers were expelled after they tried to prevent Tennessee from ratifying the Fourteenth Amendment of the U.S. Constitution to provide citizenship to former slaves.[17]

- In 1980, Representative Robert Fisher was expelled by a vote of 92 to1 after being convicted in court for soliciting a bribe in exchange for squashing pending legislation.[18]

- In 2016, then-Representative Jeremy Durham was accused of sexual misconduct towards more than twenty women and was under investigation by the Tennessee Attorney General.  Durham was expelled by a vote of 70 to 2.[19]

41.     In the more than two-hundred-year history of the House prior to this point, no member had ever been removed from his duly elected office for simply speaking on behalf of his or her constituents.[20]  Indeed, expulsion has been so rarely exercised that even Republican legislators who have been accused of actual criminal acts have neither been expelled nor threatened with expulsion.  For example, on March 29, 2023, one day before the protest at issue here, the House Ethics Subcommittee found that now-former Representative Scotty Campbell sexually harassed at least one female employee and had offered the employee cannabis products

---

[17] Tyler Whetstone & Angela Dennis, *Rep. Gloria Johnson Survives Tennessee House Expulsion Vote After Peaceful Gun Control Demonstration*, knox news. (Apr. 8, 2023, 5:01 PM), https://www.knoxnews.com/story/news/politics/2023/04/06/rep-gloria-johnson-survives-expulsion-vote-tennessee-house-for-peaceful-gun-control-demonstration/70087846007/.

[18] Larry Daughtrey, *House Votes to Expel Fisher*, The Tennessean (Jan. 15, 1980), https://www.newspapers.com/article/the-tennessean-rep-robert-fisher-is-exp/6603293/.

[19] Melissa Brown & Vivian Jones, *Tennessee GOP Begins Expulsion Process for 3 Democrats, House Session Devolves into Chaos*, The Tennessean (Apr. 5, 2023, 3:29 PM), https://www.tennessean.com/story/news/politics/2023/04/03/tennessee-republicans-file-resolutions-to-expel-three-democrats-who-led-gun-reform-chants-on-house-f/70078002007/.

[20] Joyce Orlando, *Tennessee Three: What You Need to Know About the Expulsion of Democratic TN Lawmakers*, The Tennessean (Apr. 7, 2023, 2:26 PM), https://www.tennessean.com/story/news/politics/2023/04/07/tennessee-house-expulsion-vote-why-were-lawmakers-expelled/70092066007/.

in exchange for viewing her body piercings and tattoos—a violation of Tennessee criminal law.[21] Although credibly accused of this plainly criminal behavior—conducted while in his official role as a member of the House—Representative Campbell was neither silenced nor expelled, as Representative Jones was; rather, Representative Campbell resigned voluntarily—*after* he was permitted to vote to expel Representative Jones.

42.     The expulsion resolution against Representative Jones, House Resolution 65, was based entirely on his exercise of his freedoms to speak and to protest on the House floor on March 30.  The Resolution sought to expel Representative Jones solely for "disorderly behavior" that "reflect[ed] adversely upon the integrity and dignity of the House."[22]  No further bases for Jones' expulsion were set forth or alleged in House Resolution 65.  The Republican super-majority voted on party lines to expel Representatives Jones and Pearson and did so merely because they exercised their rights to peacefully express their thoughts and opinions, to peacefully criticize government inaction, and to meaningfully contribute to a public debate on public issues—all while upholding their legislative obligation to take positions on controversial political questions during their representation of their constituents.

43.     Representative Jones' first and only form of notice that Defendant Sexton intended to hold expulsion proceedings against him came in the form of the introduction of House Resolution 65 on the House floor on Monday, April 3, 2023.

44.     On Thursday, April 6, 2023, prior to the expulsion vote, Republican Majority Leader William Lamberth was recognized to speak on the House floor, where he made a motion

---

[21] Nikki McCann Ramirez, *Tennessee Republican Resigns After Being Caught Sexually Harassing Interns*, Rolling Stone (Apr. 20, 2023), https://www.rollingstone.com/politics/politics-news/tennessee-republican-sexually-harassing-interns-resigns-1234720714/.

[22] Husley, *House Resolution 65*, 2, https://www.capitol.tn.gov//Bills/113/Bill/HR0065.pdf.

to suspend the Rules of the House so that Representatives Jones, Pearson, and Johnson could be recognized for twenty-minute, question-and-answer periods relating to the expulsion resolutions against them. The suspension of the House Rules also allowed each of the three Representatives to give a five-minute closing statement and to designate legal counsel to speak on his or her behalf during his or her allotted time.

45. Leader Lamberth's motion to suspend the Rules represented the only process and means of defense granted to Representative Jones during his expulsion proceeding.[23] There was no provision for the introduction of evidence or for the calling of witnesses. In stark contrast, on April 6, 2023—immediately after Leader Lamberth's motion to suspend the Rules—Republican Representative Johnny Garrett made another motion to suspend the Rules in order to allow House Republicans to present evidence *against* Representative Jones—namely, to play a deceptive video before the entire House chamber. The video was a compilation of unfairly edited clips of Representatives Jones, Pearson, and Johnson's protest on March 30, and was played during the proceedings as evidence to support Representatives Jones and Pearson's expulsions.

46. The House's Democratic minority had not been given prior notice of the video or of the House Republicans' intentions to play it, and they opposed Representative Garrett's motion. The Republican majority put the motion to suspend the Rules to allow the playing of the video to a recorded vote, easily overcoming the Democrats' opposition. As a result, Representative Jones had no notice that a slanted and highly edited video would be presented against him, and he had no opportunity to prepare or to respond with evidence of his own.

---

[23] April 6, 2023 House Floor Session 21st Legislative Day- April 6, 2023 hearing video, https://www.youtube.com/watch?v=ZZK--_x3gIU&list=PL9dTuWMF6QugCOPpN4ueCDlImI-nu_Fhz&index=27.

47.     Representative Jones was allowed twenty minutes to defend himself on the House floor.  He made clear that his actions during the March 30 protest were protected speech under the Constitution of the United States and of the State of Tennessee, and he argued that he was not "breaking a House rule, but exercising moral obedience to [his] constitutional responsibility to be a voice for [his] people," as specifically allowed under Article II, Section 27 of the Tennessee Constitution.  That Section reads, "Any member of either House of the General Assembly shall have liberty to dissent from and protest against, any act or resolve which he may think injurious to the public or to any individual, and to have the reasons for his dissent entered on the journals."[24]  The Republican super majority voted to end debate and proceed to the expulsion vote before all the Democratic House members listed to speak were given an opportunity to ask their questions.

48.     The expulsion proceedings were intentionally designed to deny Representative Jones and his colleagues their rights to due process.  House Republicans planned to remove Representative Jones from office without regard to the evidence presented, and they said as much in a closed-door Caucus meeting held after the vote.  During this meeting, Representative Garrett made no effort to hide his belief that the vote was pre-decided, telling his Republican colleagues, "We had the jury already.  This obviously wasn't a trial.  But I knew every single one of your vote counts.  I knew that we did not have to convince you all."[25]  Representative Zachary recalled that he had voiced his position before the proceedings even began, telling Representative

---

[24] April 6, 2023 House Floor Session 21st Legislative Day- April 6, 2023 hearing video, https://www.youtube.com/watch?v=ZZK--_x3gIU&list=PL9dTuWMF6QugCOPpN4ueCDllmI-nu_Fhz&index=27.

[25] D. Patrick Rodgers, *Transcript: Leaked Audio from House Republican Caucus Meeting*, Nashville Scene (Apr. 17, 2023),  https://www.nashvillescene.com/news/pithinthewind/transcript-leaked-audio-from-house-republican-caucus-meeting/article_1d214778-dc81-11ed-9aab-071eeaf54531.html.

Barrett, "I'm all three expel no matter what."[26] Alluding to the hearing's lack of due process, Representative Cepicky noted, "You gotta do what's right, *even if you think it might be wrong*."[27] Representative Cepicky justified such unfairness by evoking fear about Representative Jones' left-wing political ideology:

> I think the problem I have is if we don't stick together, if you don't believe we're at war for our republic, with all love and respect to you, you need a different job. *The left wants Tennessee so bad, because if they get us, the Southeast falls, and it's game over for the republic.* This is not a neighborhood social gathering. We are fighting for the republic of our country right now. And the world is staring at us—are we gonna stand our ground? I've gotten multiple phone calls from other representatives going, "We sure hope you guys stand up, because maybe it will give us the courage to stand up and push back against what's going to destroy our republic."[28]

Defendants' efforts to expel Representative Jones were not borne out of a good faith effort to ensure decorum in the Chamber, but out of a desire to silence, disempower, and penalize their political rival and to do so solely for the idea-content of his speech.

49.     In the afternoon on Thursday, April 6, 2023, House Resolution 65 was brought by Republicans to a vote, and the House voted to expel Representative Jones by a vote of 72 yeas to 25 nays, along party lines, as punishment for his protest on the House floor.[29] The House also

---

[26] *Id.*

[27] *Id.* (emphasis added).

[28] *Id*. (emphasis added).

[29] Bill Chappell & Vanessa Romo, *Tennessee House Votes to Expel 2 of 3 Democratic Members Over Gun Protest,* NPR (Apr. 6, 2023, 8:33 PM), https://www.npr.org/2023/04/06/1168363992/tennessee-expel-3-democrats-house-vote.

voted by the same margin to adopt House Resolution 63 expelling Representative Pearson.[30] With these votes, Representatives Jones and Pearson, two Black men, became the only members in the history of the Tennessee House of Representatives to be expelled for speaking on behalf of their constituents.

50.     Representative Jones lost access to his state email less than fifteen minutes after being expelled—access revoked by Defendants after Plaintiff's unlawful expulsion for the idea-content of his speech.

51.     Both Representative Jones and Representative Pearson are Black men.  Like Representative Jones, Representative Pearson also represents a majority-minority district. Ultimately, Representative Johnson, a white woman aligned with Representative Jones and representing a majority-white district, was not expelled upon a vote of the House even though Representative Johnson also protested alongside and was otherwise identically situated to Representatives Jones and Pearson with respect to the expulsion charges in all relevant respects.

Defendants Commence a Campaign of Harassment Against Representatives Jones and Pearson.

52.     Throughout the period of time between Representative Jones' protest on the House Floor on March 30, and his expulsion from the House on April 6, 2023, Representative Jones was subjected to repeated, personal and *ad hominem* attacks by Defendant Sexton and other House Republicans, as well as their staff and employees.

53.     Such attacks during this period included repeated accusations of criminal activity. Representative Lamberth, for example, accused Representatives Jones and Pearson of "trying to

---

[30] Farmer, *House Resolution 63*, http://www.capitol.tn.gov/Bills/113/Bill/HR0063.pdf.

incite a riot[.]"[31]  Representative Bulso claimed that the Representatives had "effectively conducted a mutiny."[32]  In perhaps the most repugnant of these Republican attacks, Defendant Sexton likened Plaintiff and Representative Pearson to the rioters who stormed the U.S. Capitol on January 6, 2021, claiming that they were trying "to incite . . . violence,"[33] and stating that Representative Jones' conduct was "at least equivalent, maybe worse, . . . of doing an insurrection in the capitol."[34]  Defendant Sexton's false claim was quickly amplified by Right Wing media.[35]

54.    The attacks by Defendant Sexton and other Republicans equating Representative Jones' conduct with the criminal insurrection that occurred on January 6, 2021, were patently false.[36]  Representative Jones' protest on March 30 was at all times peaceful and protected First Amendment activity that was nothing like the lawlessness, violence, and destruction of the January 6th insurrection:

---

[31] Eliza Fawcett & Rick Rojas, *Outrage at G.O.P. Could Propel Expelled Democrats Right Back to House*, N.Y. Times (Apr. 7, 2023), https://www.nytimes.com/2023/04/07/us/tennessee-house-democrats-jones-pearson.html.

[32] Kimberlee Kruesi & Jonathan Mattise, *Tennessee's House Expels 2 of 3 Democrats Over Guns Protest*, AP News (Apr. 7, 2023, 6:44 AM), https://apnews.com/article/tennessee-lawmakers-expulsion-d3f40559c56a051eec49e416a7b5dade.

[33] Andy Sher, *Tennessee House Speaker's Likening of Protest Over Gun Laws to Jan. 6 Assault on US Capitol Draws Fire*, Chattanooga Times Free Press (Apr. 2, 2023, 5:48 PM), https://www.timesfreepress.com/news/2023/apr/02/tennessee-house-speakers-likening-of-protest-over/.

[34] *Id.*

[35] *See, e.g.*, Tucker Carlson Tonight, Fox News (Mar. 31, 2023, 5:00-6:00 PM), https://archive.org/details/FOXNEWSW_20230401_000000_Tucker_Carlson_Tonight/start/2971.2/end/2981.2.

[36] *Id.  See also* Louis Jacobson & Amy Sherman, *Why it's Wrong to Call the Tennessee State Representatives Insurrectionists*, PolitiFact (Apr. 13, 2023), https://www.politifact.com/factchecks/2023/apr/13/cameron-sexton/why-its-ridiculous-to-compare-the-tennessee-repres/#:~:text=%22It%20is%20nonsense%20to%20refer%20to%20the%20actions,%22They%20were%20not%20trying%20to%20overthrow%20the%20government.%22 (noting, in part, that Plaintiff's protest lasted only about seven minutes and that the Representatives "'were not trying to overthrow the government'").

- There were no arrests made or injuries reported after Representative Jones' protest, and members of the public were permitted to observe the floor proceedings.

- There were no reports of damage to the Tennessee Capitol building.

- There is no evidence that *anyone* was criminally investigated, indicted, or convicted after Representative Jones' protest.

55.     The false statements by Defendant Sexton and these other Republicans comparing Plaintiff's peaceful and protected speech to the violent, deadly attempts to block the peaceful transfer of power by the January 6 insurrectionists not only harmed Representative Jones, but also minimized the tragedy this country experienced on January 6, 2021.[37]  Representative Jones participated in a peaceful protest that consisted primarily of presenting a sixteen-minute speech in the well of the House with two like-minded colleagues.  And for that, he and Representative Pearson were unlawfully expelled from the House.

Representative Jones Is Reinstated and then Reelected in an August 2023 Special Election.

56.     On April 10, 2023, just a few days after his expulsion, the Metropolitan Council of Nashville and Davidson County, in an extraordinary session, unanimously voted to reinstate

---

[37] In the January 6th insurrection, over 2,000 rioters illegally breached the U.S. Capitol, resulting in over 1,000 criminal indictments, over $2.7 million in property damage, over 100 injured U.S. Capitol Police officers, and five deaths.  United States Attorney General Merrick Garland has called the Justice Department's January 6th probe the "most wide-ranging investigation in its history."  NPR Staff, *The Jan. 6 Attack: The Cases Behind the Biggest Criminal Investigation in U.S. History*, NPR (Aug. 11, 2023, 6:01 PM), https://www.npr.org/2021/02/09/965472049/the-capitol-siege-the-arrested-and-their-stories.  *See also* Whitney Wild, *Dozens More US Capitol Police Officers Were Injured on January 6 than Previously Known, Report Says*, CNN Politics (Mar. 7, 2022, 6:56 PM), https://amp.cnn.com/cnn/2022/03/07/politics/capitol-police-injuries/index.html; Jack Healy, *These Are the 5 People Who Died in the Capitol Riot*, N.Y. Times (Jan. 11, 2021), https://www.nytimes.com/2021/01/11/us/who-died-in-capitol-building-attack.html.

Representative Jones to his former House seat.[38] Despite widespread reports of threats that Defendant Sexton would retaliate if the Council chose to appoint Representative Jones,[39] Representative Jones was sworn back in and resumed his seat as a member of the House later that same day.[40] On April 12, 2023, the Shelby County Board of Commissioners unanimously voted to reinstate Representative Pearson to his former seat, and Representative Pearson was sworn back in and resumed his seat in the House the following day.[41]

57. However, during the final weeks of the House's regular 2023 legislative session, Representative Jones continued to be singled out for retributive action by the House's Republican super majority because of his race and the idea-content of his speech.

58. Following the end of the regular legislative session on April 27, 2023, and pursuant to the process established under the Tennessee Constitution, a Special Election was scheduled for the purpose of filling on a permanent basis (*i.e.*, for the remainder of the current legislative term) the vacant House seat created by Representative Jones' expulsion. The 52nd District Special Election was scheduled for Thursday, August 3, 2023, with a Democratic primary election scheduled for June 15, 2023.

---

[38] Liz Crampton, *Exiled Tennessee Lawmaker Returns to State Legislature*, Politico (Apr. 10, 2023), https://www.politico.com/news/2023/04/10/justin-jones-tennessee-reinstated-expelled-00091296.

[39] Neil deMause, *Tennessee Reportedly Threatens Grizzlies Funding if Memphis Wants to Keep the Elected Officials it Elected* (April 10, 2023), https://www.fieldofschemes.com/2023/04/10/19830/tennessee-reportedly-threatens-grizzlies-funding-if-memphis-wants-to-keep-the-elected-officials-it-elected/. Defendant Sexton ultimately agreed to reseat Representative Jones after Plaintiff's Counsel, together with Counsel for Representative Pearson, sent Defendant Sexton a letter on the morning of Monday, April 10, 2023, warning him against any further violations of the Representatives' constitutional rights.

[40] Liz Crampton, *Exiled Tennessee Lawmaker Returns to State Legislature*, Politico (Apr. 10, 2023), https://www.politico.com/news/2023/04/10/justin-jones-tennessee-reinstated-expelled-00091296.

[41] Omar Younis, *Justin Pearson Sworn Back in to Tennessee House*, Reuters (Apr. 14, 2023, 3:57 AM), https://www.reuters.com/world/us/justin-pearson-due-be-sworn-back-tennessee-statehouse-2023-04-13/.

59.     Thus, as a direct result of Defendants' illegal and unconstitutional expulsion of Plaintiff from the House, Representative Jones was forced to run in the August 2023 Special Election to seek reelection for the seat to which he had been duly elected in November 2022 and to which he remained entitled in August 2023.  Representative Jones and his campaign staff were forced to expend valuable time, resources, and energy between April and August 2023 in lead up to the 2023 Special Election.  During this time, Representative Jones attended an array of in-person campaign events; ran numerous advertisements on television, radio, and across social media; and conducted an extensive door-to-door canvassing effort.  Plaintiff's campaign ultimately paid over $70,000 on his reelection solely as a result of his unconstitutional and illegal expulsion from the House by Defendants in April.

60.     On August 3, 2023, Representative Jones ran and won reelection to the House seat that had been unconstitutionally taken from him.  Representative Jones won the Special Election for the 52nd House District by a landslide margin, winning just under eighty percent of the total votes cast and defeating his closest challenger by fifty-five points.

61.     On Thursday, August 17, 2023, Representative Jones was sworn in as the newly reelected Representative of the 52nd District by Tennessee Supreme Court Justice Sharon G. Lee, resuming his place as a duly elected member of the House of Representatives.[42]

62.     Despite having now been duly reelected to his seat in the 113th Tennessee General Assembly, the injuries that resulted from Representative Jones' illegal and unconstitutional expulsion are ongoing and have not been cured or redressed, even after the House reconvened for the Special Legislative Session on August 21, 2023.

---

[42] Vivian Jones & Melissa Brown, *The Week in Politics: How Long Will the Special Session on Public Safety Last?*, The Tennessean (Aug. 18, 2023), https://www.tennessean.com/story/news/politics/2023/08/18/the-week-in-politics-how-long-will-the-special-session-on-public-safety-last-justin-jones-sworn-in/70598864007/.

<u>Defendant Sexton Passes and Enforces New Draconian Rules to</u>
<u>Silence Opposing Views and Penalize Dissenting Speech.</u>

63.     On May 8, 2023, within weeks of the end of the regular 2023 legislative session, Tennessee Governor Bill Lee announced that he planned to call on the Tennessee General Assembly to reconvene on August 21, 2023, for the August 2023 Special Legislative Session, in order to consider issues of public safety, including gun violence and school safety.  On August 8, 2023, Governor Lee confirmed this plan by issuing a proclamation calling the Tennessee General Assembly into "extraordinary session," commencing at 4:00 pm on August 21, 2023, to consider and act upon legislation regarding eighteen enumerated topics relating to public safety, including issues regarding school and firearm safety.[43]

64.     Defendant Sexton opened the August 2023 Special Session by implementing amended House Rules of Order for the Special Session.  These new rules were recommended by the House Ad Hoc Committee on Rules on August 21, 2023, implemented by Defendant Sexton, and published thereafter as the "Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, First Extraordinary Session" (the "New Rules").[44]

65.     The New Rules are vague, overbroad, and entirely unreasonable and do not further the purpose of the House.  The New Rules include rules that were specifically designed to give Defendant Sexton effectively unchecked power to limit and to silence speech and debate on the House floor, including on topics germane to the legislative business of the House during the

---

[43] *See* State of Tennessee, *Proclamation by the Governor* (Aug. 8, 2023), https://tnsos.net/publications/proclamations/files/2517.pdf.

[44] *See* Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, First Extraordinary Session, *available at* https://www.capitol.tn.gov/house/publications/.

August 2023 Special Session, by any member of the House that Defendant Sexton, in his sole discretion, decides should not be allowed to speak.

66. For example, the New Rules greatly expand the powers of the Speaker and the Republican super majority to enforce rules of "decorum" under Rule 2. New Rule 2 gives the Speaker "the authority to set other guidelines for decorum," and to seek to discipline any "member causing a material disruption," by a majority vote of the House "without debate."

67. New Rule 2 includes a series of escalating punishments—culminating in the disciplined member's silence "for the remainder of that annual session beginning on the day on which [his or her] third offense is sustained." Specifically, for the first violation of New Rule 2, as determined by the Speaker and the Republican super majority, the offending member is banned from being recognized or speaking on the House floor for three legislative days. A second violation by the same member allows the Speaker to ban the member from speaking on the House floor for six legislative days. A third violation of the Rule by the member allows the Speaker to bar the member from speaking on the House floor *for the remainder of the annual session*, beginning on the date of the third offense.

68. The New Rules provide no guidance for how New Rule 2 should be enforced, and specifically they provide no definition or guidance regarding the meaning or standard for what constitutes "decorum" or a "material disruption." Thus, the enforcement of New Rule 2 and the application of its penalties silencing the target of the Rule for three days, six days, or even the entire annual legislative session (a period that could be up to four months) is solely at the personal discretion of the Speaker and his Republican super majority in the House.

69. Rule 2 of the New Rules violates the First Amendment of the U.S. Constitution by providing the Speaker with unlimited, unchecked power to limit, silence, and chill protected

speech by any member with whom he does not agree, including speech by members on behalf of their constituents as part of the legislative business of the House.

70.     In addition, Rule 18 of the New Rules, entitled "Duties of Members Toward Speaker," was revised to provide the Speaker with nearly unlimited power to limit, silence, and chill protected speech by any member with whom he does not agree.

71.     As found in the Permanent Rules of Order to the regular legislative session of the 113th General Assembly, *i.e.*, the original Rules prior to the August 2023 Special Session, Rule 18 simply sets forth the rules of decorum that are to be observed by each member in being recognized to speak and then in speaking.  With respect to speaking on topic, Rule 18 simply (and in full) states: "After recognition by the Speaker, the member shall proceed with making remarks which strictly conform to the question under debate and avoid all personalities."[45]

72.     Under this original form of Rule 18, the Speaker had the power to rule members "out of order" when their comments went off topic from the bill under consideration, but such a ruling by the Speaker had the mere, limited effect of curtailing only the off-topic speech and had no impact on any member's right to speak or to otherwise perform his or her duty as a duly elected Representative outside of the specific comment in question.

73.     Under the New Rules, however, Defendant Sexton and the House's Republican majority weaponized Rule 18 to give the Speaker the sole—and effectively unreviewable— power to limit any member's right to speak far beyond whatever speech was found to be off topic, a censure that could last as long as the remainder of the full legislative session.

---

[45] *See* Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, Rule 18, https://www.capitol.tn.gov/house/publications/.

74.     Specifically, under the New Rules the final provision of Rule 18 was expanded to state that "[i]f a member's remarks fail to strictly conform to the question under debate, any time remaining for such member shall be subject to forfeit."[46]  New Rule 18 also establishes additional, escalating, draconian punishments that limit and ban further speech for any additional infractions:

- For a second infraction by the same member on the same day, "the Speaker may call the member to order and, if sustained by the House, the member shall not be recognized in debate or remarks on the House floor *for the remainder of the same legislative day*";

- For a third infraction by the same member "on any subsequent legislative day, "the Speaker may call the member to order and, if sustained by the House, the member shall not be recognized in debate or remarks on the House floor *for three legislative days beginning on the day on which the third offense is sustained*";

- Finally, for a fourth infraction by the same member on any subsequent legislative day, "the Speaker may call the member to order and, if sustained by the House, the member shall not be recognized in debate or remarks on the House floor *for the remainder of the annual session beginning on the day on which the fourth offense is sustained*."[47]

75.     As with New Rule 2, New Rule 18 does not provide a definition or an example of what constitutes a "fail[ure] to strictly conform to the question under debate," nor does New Rule 18 otherwise provide members with guidance to know what speech will be considered to violate

---

[46] *See* Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, First Extraordinary Session, Rule 18, https://www.capitol.tn.gov/house/publications/.

[47] *Id.* (emphases added).

New Rule 18.  Nor did Defendant Sexton, who as Speaker is entrusted with the sole power to enforce the New Rules, ever provide such explanations or guidance to House members.

76.     Rule 18 of the New Rules violates the First Amendment of the U.S. Constitution by providing the Speaker with unlimited, unchecked power to limit, silence, and chill protected speech, including speech by members on behalf of their constituents as part of the legislative business of the House, by any member with whom he does not agree.

77.     On August 28, 2023, Defendant Sexton used New Rule 18 to violate Representative Jones' right to free speech under the Constitution of the United States and of the State of Tennessee by silencing him after arbitrarily ruling him to be "out of order" on two occasions.[48]  Defendant Sexton's first "out of order" ruling came as the House considered and discussed House Bill 7005, put forward by Republican Representative Bulso, which proposed to expand the number of private schools across Tennessee that enjoy the power, in the words of Representative Bulso, "to adopt their own firearms policy."  During debate on Bill 7005 on the House floor, Defendant Sexton ruled Representative Jones as being "out of order" under New Rule 18 after Representative Jones simply asked the bill's sponsor how allowing schools to increase the number of people with firearms on private school campuses might prevent attacks by AR-15 style weapons, such as the one used in the killings at The Covenant School. Representative Jones' question "strictly conform[ed]" to the topic of debate by challenging the utility of House Bill 7005 to protect students, teachers, administrators, and staff.  Nonetheless Defendant Sexton ruled Plaintiff out of order, silencing him.

---

[48] The full video of the events occurring during the August 28, 2023 House session as described in these paragraphs may be seen beginning at approximately 01:39:00 of the full video of this House session, available at https://tnga.granicus.com/player/clip/28888?view_id=705&redirect=true&h=6e192f2c2855bedb393c57ff629d2799.

78.     Defendant Sexton's second "out of order" ruling came during discussion of House Bill 7023, sponsored by Republican Representative Cepicky, under which police and local law enforcement offices around the State would be allowed to assign gun-carrying School Resource Officers or other law enforcement to be present on school grounds, with or without the school's consent, whenever the school district did not have a Memorandum of Understanding in place with the police office.  During the debate on Bill 7023 on the House floor, Defendant Sexton ruled Representative Jones as being "out of order" under New Rule 18 after Representative Jones rose in opposition to the bill and pointed out that his constituents did not want additional armed guards in their schools and that instead his constituents needed that additional funding for mental health professionals and better pay for teachers.  Again, Plaintiff's conduct did not violate the text of the new House Rules; nevertheless, Defendant Sexton weaponized New Rule 18 to silence Representative Jones.

79.     Upon Defendant Sexton's second "out of order" ruling, Defendant Hicks, acting in his role as Assistant Chief Clerk and Parliamentarian of the House, immediately informed Defendant Sexton that Representative Jones had been ruled as "out of order" twice and was subject to censure under New Rule 18.

80.     Thereafter, Defendant Sexton told House members that Representative Jones had been ruled out of order twice and invoked New Rule 18, calling for a vote to sustain Defendant Sexton's second out of order ruling in order to penalize Plaintiff under New Rule 18 and to prohibit Plaintiff from speaking for the remainder of the legislative day with a verbal threat that Representative Jones could be silenced for the remainder of the legislative session (upon a third out of order ruling).  After lengthy discussion on the parliamentary process, including questions from numerous members noting that there was no clear standard for knowing what was and was

not "out of order," the House voted to sustain Defendant Sexton's second out of order ruling by a vote of 70-20, along partisan lines.

81.    Representative Jones was thus silenced by Defendant Sexton and the House Republican super majority and was prevented from speaking in any form for the full remainder of the legislative day on August 28, 2023—even though both Plaintiff's comments were clearly related to the bills that he opposed.

82.    Having been silenced and prohibited from speaking on the floor of the House for the rest of the legislative day, Representative Jones was prohibited from speaking on any of the remaining proposed legislation before the House.  Representative Jones was also denied the right to rise during the period of "Additional Business" at the end of the legislative session to bring forward to the floor a motion of "no confidence" against Defendant Sexton based on the Speaker's "continued abuse of power and dishonor to the public office he holds," as Representative Jones had informed the public that he intended to do in a social media post and in other public statements.

83.    Defendant Sexton's abuse of New Rule 18 to silence Representative Jones thus prevented him from using his voice to dissent to Defendant Sexton's leadership of the House and to raise concerns about the nature of Defendant Sexton's use of his power in the House of Representatives.  It also protected Defendant Sexton from facing votes, from Democrats and Republicans, publicly expressing no confidence in his leadership of the House in order to hold him accountable for multiple public scandals and serious accusations that he had faced in recent months, including allegations regarding Defendant Sexton's use of questionable payments to

become House Speaker in 2019,[49] regarding Defendant Sexton's residency and whether he lives in the House district that he represents,[50] and allegations of Defendant Sexton's participation in the covering up of sexual harassment charges that ultimately led to Representative Scott Campbell's resignation.[51]

84.     Defendant Sexton's improper use of New Rule 18 to silence debate, not only on the issue in question but on future unrelated matters as well, has an extreme chilling effect on Representative Jones and other dissenting members' free speech rights.  Representative Jones faces the threat that, whenever he rises to speak in the Legislature, Defendant Sexton will rule Representative Jones out of order in order to impose the harsher additional punishments for third and fourth infractions under the New Rule 18 and thus to silence and chill speech by Representative Jones for his entire legislative term.

85.     On information and belief, Defendants intend to implement and enforce the New Rules, or other procedural rules like them in substance, to govern future legislative sessions of the House, including the legislative session scheduled to convene on January 9, 2024.

<u>Representative Jones Suffers Ongoing Injury and Denials of Rights.</u>

86.     Defendants continue to unconstitutionally deny Representative Jones Committee seats that were wrongfully stripped from him on April 3, 2023.  In particular, Defendants

---

[49] Sam Stockard, *Cade Cothren Claims he Helped Cameron Sexton Win TN Speaker's Race Before Indictment*, The Tennessee Lookout (May 26, 2023), https://tennesseelookout.com/2023/05/26/cade-cothren-claims-he-helped-cameron-sexton-win-tn-speakers-race-before-indictment/.

[50] *See* Vivian Jones & Josh Keefe, *House Speaker Cameron Sexton Is Facing Questions About his Residency. Here's What to Know*, The Tennessean (April 19, 2023), https://www.tennessean.com/story/news/politics/2023/04/19/house-speaker-cameron-sexton-faces-questions-over-residency/70127605007/.

[51] *See* Aleks Phillips, *Cameron Sexton Facing Fresh Allegations of Covering up Sexual Harassment*, Newsweek (April 21, 2023), https://www.newsweek.com/cameron-sexton-tennessee-republican-allegations-sexual-harassment-cover-1795903.

continues to deny Representative Jones his seat on the Government Operations Committee, which continues to meet on a regular basis, even while the House is otherwise not in session.

87.     As described above, Defendant Sexton's decision to strip Representative Jones of his Committee assignments was an unjustified retaliation for Representative Jones' exercise of his First Amendment right to free speech that was made without any notice or due process, and Defendants' ongoing refusal to restore Representative Jones to his seat on the still-active Government Operations Committee despite his April re-appointment and his subsequent reelection in the August Special Election, constitutes an ongoing violation of his rights and an ongoing disenfranchisement of the voters of the 52nd District, who are being denied their voice on this important Committee.

88.     There is no basis in law, nor in the Rules or practices of the Tennessee House of Representatives, for Defendants' ongoing refusal to allow Representative Jones to participate in this Committee.  Defendant Sexton specifically acknowledged this during an exchange with Representative Jones in an open session of the House on April 10, 2023.  During this exchange, Representative Jones asked Defendant Sexton whether he would be restored to his Committee assignments given his reappointment earlier that day, as Representative Johnson already had been restored to her Committee assignments.  Defendant Sexton specifically told Representative Jones that he could not be restored to his Committee assignments for the sole reason that Representative Jones was not "duly elected."[52]  This rationale is pretextual; nothing in the law punishes a duly appointed Representative from full legislative rights and privileges to which he is entitled.

---

[52] April 10, 2023 Tennessee House of Representatives Session video, available at https://www.youtube.com/watch?v=Ke3XhiTx_XA.

89.    More importantly, Defendant Sexton did not follow even this pretextual explanation. After Representative Jones was duly elected, Defendants continued to refuse to restore Representative Jones to his Committee seats, including on the Government Operations Committee. Following his reelection in August, Representative Jones, acting through counsel, wrote to Defendant Sexton twice, first, on August 7, and again on August 17, to demand that he be restored to his Committee positions now that he was once again "duly elected." Plaintiff's letters specifically noted Defendant Sexton's own words from the April 10 House floor session. Defendant Sexton ignored and did not respond to either letter.

90.    On Monday, September 19, 2023, one day before the scheduled meeting of the Government Operations Committee on September 20, Representative Jones sent an email to Defendant Letzler, noting that the Speaker had not replied to Representative Jones' letters. Representative Jones asked Defendant Letzler to confirm that Representative Jones had been restored to his seat on the Government Operations Committee so that he could participate in the scheduled meeting.

91.    On September 20, 2023, Defendant Letzler responded by email, copying Defendant Sexton and counsel for Representative Jones, and informed Representative Jones that he and three other members, Representatives Pearson, Behn, and Hill, had not been appointed to Committees because they "had been elected after the first annual session of the 113th General Assembly recessed on April 21."

92.    Defendant Letzler's response ignored and refused to apply Defendant Sexton's April 10 statement during the House floor session that the sole reason Representative Jones could not be restored to his Committees in April was that he was not "duly elected." But as Defendant Sexton and Defendant Letzler know, that purported shortcoming was cured and resolved on

August 3, 2023, when Representative Jones was reelected or, at the latest, on August 17, 2023, when Representative Jones was sworn back in based on his reelection.

93.     Representative Jones met all the conditions set for being restored to his Committee assignments, and Defendants' attempts to justify their ongoing denial of the Committee seat to which Representative Jones is entitled by comparing his situation to the situations of Representatives Pearson, Behn, and Hill, is a baseless pretext. Unlike Representative Jones, not one of these three Representatives even had Committee appointments during the 2023 House legislative term, so not one of these three Representatives had positions that could have been unconstitutionally taken from them and then rightfully restored.

94.     Defendants continue to deny Representative Jones his Committee positions, including his seat on the still-active Government Operations Committee, in violation of Representative Jones' constitutional rights.

Defendant Has Been Denied Other Benefits of Office.

95.     As a result of his illegal expulsion, Representative Jones has also been deprived of his full year of experience for purposes of calculating his level of seniority as a member of the House of Representatives.

96.     On information and belief, the House accords certain privileges and rights to members based on their level of seniority, a determination that is made based on the year of the member's election to the House.

97.     Representative Jones was duly elected by the people of the 52nd District in November 2022 and was duly sworn in and seated in January 2023 as a freshman member of the House for the 2023 Term. Plaintiff is entitled to have his seniority calculated on that basis and that basis alone.

98.     As a result of the illegal expulsion by Defendants and of being forced to be reappointed and then to run again for his seat in a special election—all of which is solely a result of Defendants' illegal expulsion of Representative Jones from the House—Defendants have determined Representative Jones' seniority not based on his 2022 election but instead based on the date of any special election in 2023, depriving him of at least one year of seniority to which he is entitled. The official listing of House seniority shows that Representative Jones' year of seniority is qualified by his having been "[e]lected in a special election," rather than having the full, unqualified year of seniority that should have been, but for his unconstitutional expulsion.[53]

99.     On information and belief, Defendants' illegal expulsion of Representative Jones also resulted in the ongoing deprivation of Representative Jones' duly earned retirement benefits as an elected member of the House. Under Tennessee state law, elected members of the House of Representatives become vested and eligible for participation in the Tennessee Consolidated Retirement System ("TCRS"), Tennessee's retirement program for government employees, after four years of "creditable general assembly service" as a legislator, and upon retirement, each vested member has his or her retirement benefits in TCRS calculated based on that member's total number of years of "creditable general assembly service."[54]

100.    On information and belief, solely on the basis of their illegal expulsion of Representative Jones on April 6, 2023, Defendants have denied or intend to deny and refused to credit Representative Jones with his year of service in the 2023 legislative session as a duly elected member of the House in 2023 as a year of "creditable general assembly service" for

---

[53] *See* Tennessee House of Representatives, Seniority Listing, One Hundred Thirteenth General Assembly, https://www.capitol.tn.gov/Archives/House/113ga/publications/SeniorityList_113th.pdf.

[54] *See* David H. Lillard, Treasurer, "Retire Ready: Tennessee's Retirement Program" (October 2021), https://treasury.tn.gov/Retirement/Retire-Ready-Tennessee/for-State-Employees.

purposes of determining Representative Jones' eligibility for and calculating his entitlement to benefits in the TCRS.

101.    On information and belief, a significant number of Representative Jones' emails from his state email account have not been restored from before April 6, 2023, depriving him of the ability to address constituent concerns.

102.    On information and belief, Defendants, as a result of their illegal expulsion of Representative Jones, have denied and are continuing to deny Representative Jones additional benefits and rights to which he is entitled as a duly elected member of the House of Representatives.

## FIRST CLAIM FOR RELIEF
### (Violation of the First Amendment to the U.S. Constitution, 42 U.S.C. § 1983; Tennessee Constitution, Article I, §19)

103.    Representative Jones incorporates by reference all of the foregoing allegations.

104.    Representative Jones engaged in activity protected by the First Amendment of the Constitution of the United States and by Article I of the Constitution of the State of Tennessee when, during a legislative recess, he spoke and participated in a protest about the need to prevent gun violence in the wake of a deadly school shooting, which ended the lives of six people, including three children.  *See Bond v. Floyd*, 385 U.S. 116, 135–36 (1966).  *See also Kucinich v. Forbes*, 432 F. Supp. 1101, 1113–14 (N.D. Ohio 1977).

105.    The prevention of gun violence and the safety of community children, teachers, and school administrators are matters of immediate public concern.

106.    On April 3, 2023, Defendants removed Representative Jones from his seats on the Government Oversight Committee, the Education Administration Committee, the Agriculture & Natural Resources Committee, and the Agriculture & Natural Resources Subcommittee in

retaliation for, among other things, Representative Jones' speech from the well of the House in protest of gun violence and in support of gun control legislation.

107.     Defendants removed Representative Jones from his Committee assignments pursuant to a directive from Defendant Sexton and therefore acted under color of state law.

108.     On April 6, 2023, Defendants expelled Representative Jones from the Tennessee House of Representatives in retaliation for Representative Jones' speech from the well of the House in protest of gun violence and in support of gun control legislation.  Representative Jones' engagement in constitutionally protected activity by speaking on a matter of public concern was a substantial or motivating factor in his expulsion.

109.     Defendants expelled Representative Jones pursuant to a House resolution and a House vote and therefore acted under color of state law in expelling Representative Jones.

110.     Despite having been duly—and overwhelmingly—reelected by the people of the 52nd House District, Defendants have prevented and continue to prevent Representative Jones from speaking on behalf of his constituents by continuing to deny Representative Jones his seat on the Government Operations Committee to which he was duly appointed and remains entitled.

111.     Defendants passed and employed the New Rules, including but not limited to New Rules 2 and 18 during the August 2023 Special Session for the purposes of preventing and silencing constitutionally protected speech by members of the House with whom they disagree. And on August 28, 2023, Defendants employed and enforced New Rule 18 to silence and prevent Representative Jones from speaking on the House floor as punishment and in retaliation for Representative Jones having merely spoken during debate in the House on issues germane to bills under consideration, all in violation of Plaintiff's rights under the Constitution of the United States and of the State of Tennessee.

112.     Defendants intend to make or threaten to make ongoing use of the New Rules, or similar rules, to prevent and silence Representative Jones from speaking on issues germane to the business of the House for which he was elected to represent the citizens of the 52nd District.

113.     The foregoing actions constitute retaliatory discharge and unlawful punishment for the idea-content of expressive speech in violation of 42 U.S.C. § 1983 and the First Amendment of the U.S. Constitution.

114.     Defendants' violations of Section 1983 and the First Amendment of the U.S. Constitution has inflicted the following irreparable harms upon Representative Jones, including illegally preventing him from serving and representing his constituents during the period of his expulsion from the House; illegally silencing and prohibiting him from engaging in protected speech, including on behalf of his constituents as part of his duties as a duly elected member of the House; illegally preventing him from serving on the Government Operations Committee; illegally silencing him from expressing protected speech through the arbitrary enforcement of the unconstitutional New Rules; and illegally causing him to lose seniority, and retirement benefits.

115.     Defendants' actions constitute a completed violation of Plaintiff's legal rights under 42 U.S.C. § 1983, the First Amendment of the U.S. Constitution, and Article I of the Constitution of the State of Tennessee.  The prospective relief requested herein, including the awarding of nominal damages, "provide the necessary redress for a completed violation of [Representative Jones'] legal right[s]."  *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).

## SECOND CLAIM FOR RELIEF
**(Declaratory Judgment that the New Rules are Unconstitutional under Article I of the U.S. Constitution, 42 U.S.C. § 1983; Tennessee Constitution, Article I, §19)**

116.     Representative Jones incorporates by reference all of the foregoing allegations.

117.    The New Rules violate the Constitution of the United States and of the State of Tennessee, which guarantee the right to free speech.

118.    The New Rules infringe upon constitutionally protected speech, including by illegally chilling such speech, and by giving the Speaker vague, overbroad, and arbitrary, unchecked power to bar protected speech for sustained periods of time, including for the full duration of the legislative session as a disciplinary measure.

119.    The New Rules are also unconstitutionally vague and overbroad, prohibiting constitutionally protected expression without providing adequate notice of what forms of speech are impermissible. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

120.    The New Rules, therefore, have a chilling effect on protected speech and expressive conduct.  For example, New Rule 2 does not provide a standard to determine what constitutes a "material disruption," and New Rule 18 does not provide a standard to determine what constitutes a "failure to strictly conform to the question under debate[.]"  Absent such standards, these terms can be broadly construed by the Speaker and House Republican super majority to suppress free expression of dissenting viewpoints.  Legislators with dissenting viewpoints are at risk of arbitrary punishment pursuant to the arbitrary enforcement of the New Rules, as exemplified by the discipline Representative Jones faced during the Special Session, and they do not have the opportunity to challenge any resulting discipline.  The New Rules are unconstitutionally vague and violate Plaintiff's due process rights under the U.S. Constitution. *See Kucinich v. Forbes*, 432 F. Supp. 1101, 1114 (N.D. Ohio 1977).  In addition, the New Rules are overbroad because they prohibit constitutionally protected conduct and violate Plaintiff's due process rights under the U.S. Constitution.  *See Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).

121.    On August 28, 2023, Defendants enforced New Rule 18 to illegally and unconstitutionally silence Representative Jones and to bar him from engaging in constitutionally protected speech as part of his duties as the duly elected representative of the 52nd District.

122.    On information and belief, Defendants intend to and will implement and enforce the New Rules or other, similar rules in future legislative sessions to further chill, silence, and prevent such constitutionally protected speech by Representative Jones and other Representatives with whom they disagree.

123.    Accordingly, an actual controversy exists between Representative Jones and Defendants, and Representative Jones is entitled to a declaration that the New Rules, both as written and as enforced during the August 2023 Special Session, are illegal and violate the Constitution of the United States and of the State of Tennessee.

124.    The declaratory and injunctive relief sought herein is necessary to prevent future enforcement of the New Rules or other similar rules by Defendants that violate the Constitution of the United States and of the State of Tennessee.


**THIRD CLAIM FOR RELIEF**
**(Violation of the Due Process Clause of the Fourteenth Amendment or Denial of Impartial Hearing, 42 U.S.C. § 1983)**

125.    Representative Jones incorporates by reference all of the foregoing allegations.

126.    The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution bars state actors from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV; *see also Dixon v. Alabama State Bd. Of Ed.*, 294 F.2d 150, 155 (5th Cir. 1961) ("Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law.").

127.     Under the Due Process Clause, an office holder may not be expelled from state office absent adequate notice and an opportunity to be heard.  *See, e.g.*, *McCarley v. Sanders*, 309 F. Supp. 8, 11 (M.D. Ala. 1970) (citing, *e.g.*, *Wieman v. Updegraff*, 344 U.S. 183, 191 (1952)).

128.     With respect to his dismissal from his Committee assignments, Representative Jones' first and only form of notice that Defendants intended to remove him from these Committees was the letter dated April 3, 2023 sent to Representative Jones on Defendant Sexton's letterhead and signed by Defendant Letzler.

129.     Defendants' unconstitutional denial of Representative Jones' seat on the Government Operations Committee is continuing and ongoing, despite the fact that Representative Jones was duly reelected in the August 2023 Special Election and has now been sworn back in as a member of the House.

130.     With respect to his expulsion, Representative Jones' first and only form of notice that Defendants intended to hold expulsion proceedings against him came in the form of the introduction of House Resolution 65 on the House floor on Monday, April 3, 2023.  The vote on his expulsion was scheduled for April 6, 2023.

131.     Representative Jones was forced to acquire legal counsel within three days to defend himself against the charges.

132.     Representative Jones was not advised of the procedures for his expulsion hearing, nor was he permitted an opportunity to evaluate the evidence against him.

133.     Representative Jones was deprived of time, resources, and opportunity to mount an adequate defense.

134.    During the expulsion hearing, House leadership moved to suspend the House Rules to subject Representative Jones to trial-like conditions.  Representative Jones was not provided notice that a motion to suspend the House Rules would be brought.

135.    After the House Rules were suspended, Representative Jones was given twenty minutes to defend himself on the House floor.  Representative Jones was given five minutes to offer a "closing" argument prior to the expulsion vote.

136.    Under the suspended House Rules, Representative Jones was not permitted to call witnesses.

137.    Under the suspended House Rules, Representative Jones was not permitted to introduce evidence.  The House's Republican super majority, however, was permitted to introduce evidence in the form of a manipulatively edited video of Representative Jones' protest.  Representative Jones was not given prior notice that such a video would be played during the proceedings.

138.    Under the suspended House Rules, Representative Jones was afforded inadequate time to confer with his legal counsel.

139.    Even though many House members had yet to ask questions of Representative Jones, other members voted to suspend debate after twenty minutes had passed, thus depriving Representative Jones of an opportunity to adequately defend himself.

140.    In an adjudicatory proceeding, the Due Process Clause demands neutrality. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980); *see also Tumey v. Ohio*, 273 U.S. 510, 522, 533 (1927).

141.    This obligation of impartiality attaches to anyone acting in a "judicial or quasi-judicial capacity."  *Tumey*, 273 U.S. at 522.

142.     Those acting in a "judicial or quasi-judicial capacity" often have the power to impose binding, non-appealable sentences on the party before it. *Tumey*, 273 U.S. at 522.

143.     The House's expulsion votes are non-appealable and binding on its members.

144.     The House, acting in a judicial capacity, was required by the Due Process Clause to provide Representative Jones with an impartial forum to adjudicate the expulsion charges against him.

145.     On information and belief, members of the House, acting as a judicial body, agreed to vote for Jones' conviction "no matter what." This pact was made in advance of the expulsion hearing and applied regardless of the facts presented through Representative Jones' defense.

146.     The House, acting as a judicial body, denied Representative Jones an impartial forum to adjudicate the binding, non-appealable expulsion claims against him.

147.      The House, acting as a judicial body, violated Representative Jones' due process rights.

148.     As a direct and proximate result of Defendants' violations of Section 1983 and the Fourteenth Amendment of the U.S. Constitution, Representative Jones suffered irreparable harm.

149.     In addition, Defendants' actions constitute a completed violation of Plaintiff's legal rights under 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution. The prospective relief requested herein, including the awarding of nominal damages, "provide the necessary redress for a completed violation of [those] legal right[s]." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).

## FOURTH CLAIM FOR RELIEF
### (Violation of the Due Process Clause of the Fourteenth Amendment for Denial of Benefits, 42 U.S.C. § 1983)

150.    Representative Jones incorporates by reference all of the foregoing allegations.

151.    The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution bars state actors from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

152.    Procedural due process imposes constraints on governmental decisions which deprive individuals of property interests within the meaning of the Due Process Clause. *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). At base, due process requires that parties deprived of their property receive adequate notice of that deprivation and an opportunity to be heard. *Id.*

153.    Health benefits are a protected property interest under the Due Process Clause. *See id.* at 333.

154.    Retirement benefits are a protected property interest under the Due Process Clause. *See id.*

155.    On information and belief, the House accords certain privileges and rights to its members, such as health insurance.

156.    On information and belief, Representative Jones' health insurance coverage was set to lapse as a consequence of his unlawful expulsion.

157.    On information and belief, the House of Representatives accords certain privileges and rights to members based on their number of years of service to the body.

158.    Under Tennessee law, elected members of the House become vested and eligible for participation in the Tennessee Consolidated Retirement System ("TCRS"), Tennessee's retirement program for government employees, after four years of "creditable general assembly

service" as a legislator. TCRS eligibility is calculated based on an individual member's total number of years of "creditable general assembly service."

159.    On information and belief, Defendants have denied or intend to deny and refused to credit Representative Jones with his year of service in the 2023 legislative session because of his unlawful expulsion.

160.    On information and belief, Defendants have denied and are continuing to deny Representative Jones additional benefits and rights to which he is entitled as a duly elected member of the House.

161.    As a direct and proximate result of Defendants' violations of Section 1983 and the Fourteenth Amendment of the U.S. Constitution, Representative Jones suffered irreparable harm. Specifically, as a result of his unconstitutional expulsion, Representative Jones temporarily lost health insurance coverage, and will not have this year of public service count toward his retirement benefits.

**FIFTH CLAIM FOR RELIEF**
**(Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution for Disparate Racial Treatment, 42 U.S.C. § 1983)**

162.    Representative Jones incorporates by reference all of the foregoing allegations.

163.    The Fourteenth Amendment of the U.S. Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is enforceable pursuant to 42 U.S.C. § 1983.

164.    Defendants denied equal protection to Representative Jones when they treated him differently than they treated similarly situated white House members for the same conduct.

165.    Among other examples:

a. Representative Jones, who is Black, was expelled from the House by the majority white House membership for exercising his First Amendment right to free speech and protesting the House's failure to consider meaningful gun control measures, while Representative Gloria Johnson, who engaged in the exact same speech and protest as Representative Jones but who is white, was not expelled.

b. Representative Jones, who is Black, was censured, objected to, and ignored on the floor of the House on April 27, 2023 when he critically questioned a Republican-sponsored bill as threatening to "bully" Tennessee public school students, while Representative Bob Freeman, who only moments before had also criticized that the same bill would result in the "bullying" of students but who is white, was not censured or objected to and who indeed was allowed to engage in substantive floor debate with the bill's sponsor.

c. Representative Jones, who is Black, was denied committee positions after his reinstatement to the House membership on April 10, 2023, even though Representative Gloria Johnson, who was also censured and removed from committee seats for her speech and protest but who is white, was allowed to return to her committee assignments.

166. Defendants' purpose in treating Representative Jones differently than Representative Johnson was intentional, racial discrimination.

167. Under the Constitution, "government policies that classify people by race are presumptively invalid." *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021) (citing U.S. Const. amend. XIV; *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 234, 235 (1995)).

168.    Because race is a suspect classification, government racial classifications are subject to strict scrutiny, which means that the government's action must be narrowly tailored to further a compelling state interest.  *Id.* at 22.; *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007).

169.    Defendants' justifications for their actions do not pass constitutional scrutiny.

170.    As a direct and proximate result of Defendants' violations of Section 1983 and the Fourteenth Amendment of the U.S. Constitution, Representative Jones suffered irreparable harm.

171.    Defendants' actions constitute a completed violation of Plaintiff's legal rights under the Fourteenth Amendment of the U.S. Constitution.  The prospective relief requested herein, including the awarding of nominal damages, "provide the necessary redress for a completed violation of [Representative Jones'] legal right[s]."  *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).

**SIXTH CLAIM FOR RELIEF**
**(Bill of Attainder in Violation of Article I of the U.S. Constitution, 42 U.S.C. § 1983)**

172.    Representative Jones incorporates by reference all of the foregoing allegations.

173.    Article I of the U.S. Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed."  U.S. Const. Art. I § 9, cl. 3.  A bill of attainder is "legislative punishment, of any form or severity, of specifically designated persons or groups."  *United States v. Brown*, 381 U.S. 437, 447 (1965); *see also United States v. Lovett,* 328 U.S. 303, 315 (1946) ("[L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution.").

174.    Representative Jones was singled out for punishment by the Tennessee legislature. *Foretich v. United States*, 351 F.3d 1198, 1217 (D.C. Cir. 2003) ("The element of

specificity may be satisfied if the statute singles out a person or class by name or applies to 'easily ascertainable members of a group.'").

175.     First, Representative Jones' expulsion inflicts "pains and penalties"—such as banishment—that have historically been associated with bills of attainder.  *See Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 474 (1977).

176.     Second, "viewed in terms of the type and severity of burdens imposed" on Representative Jones, the House's expulsion vote cannot be said to "further nonpunitive legislative purposes."  *Nixon*, 433 U.S. at 475–76.  On information and belief, other members of the Tennessee legislature have engaged in criminal acts while serving on the body.  These actions have gone unrecognized and uncorrected by the Tennessee legislature.  By comparison, the expulsion charges brought against Jones for engaging in constitutionally protected conduct were retrospective and designed to punish.  The Tennessee legislature lacked a legitimate interest in voting for Jones' expulsion.

177.     Third, "the legislative record evinces a congressional intent to punish" conduct that is protected by the First Amendment.  *Nixon*, 433 U.S. at 478.

178.     In a recording of a conversation between House members after the expulsion vote, Representative Jason Zachary stated that "Democrats are not our friends," and that he would vote to expel Representative Jones "no matter what."  This is the quintessential "'smoking gun' evidence of punitive intent necessary to establish a bill of attainder."  *SBC Comm'ns, Inc. v. FCC*, 154 F.3d 226, 243 (5th Cir. 1998).

179.     Under the historical, functional, and motivational tests, Representative Jones' expulsion for constitutionally protected speech constitutes an unconstitutional bill of attainder.

180.    As a direct and proximate result of Defendants' violations of Section 1983 and the Fourteenth Amendment, Representative Jones' expulsion—and the downstream consequences of that expulsion, such as the loss of committee assignments, seniority, and other benefits provided to members of the Tennessee legislature—have caused and will continue to cause ongoing irreparable harm to Representative Jones.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment as follows:

1.    Declaring that Defendants' expulsion of Representative Jones from the House violated the Constitution of the United States and of the State of Tennessee;

2.    Declaring that Representative Jones' unconstitutional and illegal expulsion will not have any effect on his rights, privileges, or entitlements, up to and including loss of seniority, eligibility for committee appointments, or any benefits or entitlements provided to Representatives of the Tennessee State Legislature;

3.    Declaring that the "Permanent Rules of Order of the Tennessee House of Representatives, One Hundred Thirteenth General Assembly, First Extraordinary Session" are unconstitutional, in violation of the First Amendment Right to Freedom of Speech of the U.S. Constitution and the Constitution of the State of Tennessee, and that the rules violate the U.S. Constitution's Due Process Clause for vagueness and overbreadth;

4.    Enjoining Defendants from punishing or in any way preventing Representative Jones in the future from speaking on the floor of the House or otherwise in his capacity as a duly elected member of the House, including by any use of the New Rules or other, similar rules;

5.    Enjoining and requiring Defendants to fully and immediately restore (including retroactively, where necessary) Representative Jones to the full rights and benefits of his elected

office of which he has been and continues to be deprived as a result of his unconstitutional and illegal expulsion, including:

   a.   Reinstatement of Representative Jones to his Committee appointments;

   b.   Restoration of Representative Jones' seniority based on his original date of election to the House in November 2022;

   c.   Official acknowledgement of Representative Jones' service in the 113th Tennessee General Assembly House of Representatives as a full year of creditable general assembly service for purposes of determining Representative Jones' qualification for and benefits under the Tennessee Consolidated Retirement System; and

   d.   Restoration of all other benefits of which he has or may have been deprived.

   6.   Awarding compensatory damages to Plaintiff according to proof at trial for damages resulting from the expulsion order and for damages based on Defendants' deprivation of Plaintiff's civil rights under Section 1983;

   7.   Awarding nominal damages to Plaintiff according to proof at trial for Defendants' completed violations of Plaintiff's constitutional rights under the First and Fourteenth Amendments to the U.S. Constitution and his civil rights under 42 U.S.C. § 1983;

   8.   Awarding costs of suit and attorney's fees; and

   9.   Providing such other and further relief as the Court may deem just, proper, and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Respectfully submitted this third day of November, 2023.

/s/ R. Gregory Rubio

Jerry E. Martin (TBPR No. 020193)
Seth M. Hyatt (TBPR No. 031171)
David W. Garrison (TBPR No. 024968)
Scott P. Tift (TBPR No. 027592)
BARRETT JOHNSTON MARTIN
& GARRISON, PLLC
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com
dgarrison@barrettjohnston.com
stift@barrettjohnston.com

C. William Phillips (*pro hac vice*)
COVINGTON & BURLING LLP
The New York Time Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: 212/841-1000
cphillips@cov.com

R. Gregory Rubio (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Telephone: 202/662-5237
202/778-5237 (fax)
grubio@cov.com

*Attorneys for Plaintiff Justin Jones*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing *Amended Complaint* has been served on the following counsel via the Court's CM/ECF email notification system on this the 3rd day of November, 2023:

Whiteney Hermandorfer
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-3491
whitney.hermandorfer@ag.tn.gov


Matthew H. Frederick
Todd Disher
Lehotsky Keller Cohn LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350
matt@lkcfirm.com
todd@lkcfirm.com

Shannon Grammel
Lehotsky Keller Cohn LLP
200 Massachusetts Avenue, NW
Suite 700
Washington, D.C., 20001
(270) 498-5375
shannon@lkcfirm.com

*Attorneys for all Defendants*


     /s/ R. Gregory Rubio
     R. Gregory Rubio