# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| REPRESENTATIVE JUSTIN JONES, in his personal capacity, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| REPRESENTATIVE CAMERON SEXTON, in his individual capacity and in his official capacity as the Speaker of the Tennessee House of Representatives; TAMMY LETZLER, in her individual capacity and in her official capacity as the Chief Clerk for the Tennessee House of Representatives; BOBBY TROTTER, in his individual capacity and in his official capacity as the Chief Sergeant-at-Arms for the Tennessee House of Representatives; and DANIEL HICKS, in his individual capacity and in his official capacity as the Assistant Chief Clerk and Parliamentarian for the Tennessee House of Representatives, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:23-cv-01033<br>Hon. Eli J. Richardson<br>Hon. Alistair E. Newbern |
| Defendants. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SUPPLEMENTAL AND AMENDED COMPLAINT

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................................. ii

Introduction ....................................................................................................................................... 1

Statement of the Case ........................................................................................................................ 3

Argument ............................................................................................................................................ 7

    I.    This Court Lacks Subject-Matter Jurisdiction. ........................................................... 7

        A.      Plaintiff lacks standing. ....................................................................................... 7

        B.      Sovereign immunity bars Plaintiff's claims under state law. ........................... 10

        C.      Sovereign immunity bars Plaintiff's claims against Defendants in their official capacity. ............................................................................................... 10

    II.   Plaintiff's Claims Are Barred By Legislative Immunity. .............................................. 12

    III.  Plaintiff's Claims Are Barred By Qualified Immunity ................................................. 16

    IV.  Plaintiff Fails To State A Claim On Which Relief May Be Granted. ........................... 17

        A.      Plaintiff fails to state a First Amendment Claim. ............................................ 17

        B.      Plaintiff fails to state a vagueness claim against the House Rules. ................. 19

        C.      Plaintiff fails to state a procedural due process claim. ..................................... 21

        D.      Plaintiff fails to state an equal-protection claim. ............................................. 23

        E.      Plaintiff fails to state a bill-of-attainder claim. ............................................... 25

Conclusion ........................................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*511 Detroit St., Inc. v. Kelley,*
807 F.2d 1293 (6th Cir. 1986) ............................................................................................................ 19

*Anderson v. Creighton,*
483 U.S. 635 (1987) ................................................................................................................... 16, 17

*Avera v. Airline Pilots Ass'n Int'l,*
436 F. App'x 969 (11th Cir. 2011) ..................................................................................................... 22

*Banks v. Block,*
700 F.2d 292 (6th Cir. 1983) ............................................................................................................. 21

*Bd. of Regents of State Colls. v. Roth,*
408 U.S. 564 (1972) ................................................................................................................... 21, 22

*Bogan v. Scott-Harris,*
523 U.S. 44 (1998) ............................................................................................................... 13, 15, 16

*Bond v. Floyd,*
385 U.S. 116 (1966) ........................................................................................................................... 18

*Brennan v. Twp. of Northville,*
78 F.3d 1152 (6th Cir. 1996) ............................................................................................................. 16

*Brown v. Montoya,*
662 F.3d 1152 (10th Cir. 2011) ......................................................................................................... 11

*Buchanan v. City of Bolivar,*
99 F.3d 1352 (6th Cir. 1996) ............................................................................................................. 23

*Church v. Missouri,*
913 F.3d 736 (8th Cir. 2019) ..................................................................................................... 12, 13

*City of L.A. v. Lyons,*
461 U.S. 95 (1983) ............................................................................................................................. 10

*City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n,*
429 U.S. 167 (1976) ................................................................................................................... 19, 20

*Com. Money Ctr., Inc. v. Ill. Union Ins. Co.,*
508 F.3d 327 (6th Cir. 2007) ............................................................................................................... 1

Case 3:23-cv-01033    Document 55-1    Filed 11/27/24    Page 3 of 36 PageID #: 512

*Combs v. Wilkinson,*
    315 F.3d 548 (6th Cir. 2002) .................................................................................. 10

*Connally v. Gen. Constr. Co.,*
    269 U.S. 385 (1926) ............................................................................................. 20

*Cushing v. Packard,*
    30 F.4th 27 (1st Cir. 2022) ................................................................................... 13

*Daily Servs., LLC v. Valentino,*
    756 F.3d 893 (6th Cir. 2014) .................................................................................. 21

*Doe v. McMillan,*
    412 U.S. 306 (1973) ............................................................................................. 15

*Doe v. Univ. of Mich.,*
    78 F.4th 929 (6th Cir. 2023) ................................................................................... 9

*Dugan v. Rank,*
    372 U.S. 609 (1963) ............................................................................................. 11

*Durham v. Eley,*
    507 F. Supp. 3d 956 (M.D. Tenn. 2020) ............................................................... 21

*Durham v. Martin,*
    388 F. Supp. 3d 919 (M.D. Tenn. 2019) ............................................................... 25

*Durham v. Martin,*
    No. 21-5099, 2021 WL 6777028 (6th Cir. Nov. 23, 2021).................................... 22

*Eastland v. U.S. Servicemen's Fund,*
    421 U.S. 491 (1975) ........................................................................................ 13, 15

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ............................................................................................. 12

*Gamrat v. McBroom,*
    822 F. App'x 331 (6th Cir. 2020)....................................................................... 14, 15

*Gault v. City of Battle Creek,*
    73 F. Supp. 2d 811 (W.D. Mich. 1999)................................................................. 19

*Gravel v. United States,*
    408 U.S. 606 (1972) ........................................................................................ 13, 15

*Grayned v. Rockford,*
    408 U.S. 104 (1972) ............................................................................................. 19

*Green v. Mansour,*
   474 U.S. 64 (1985) ................................................................................................ 12

*Greenawalt v. Ind. Dep't of Corr.,*
   397 F.3d 587 (7th Cir. 2005) ................................................................................. 11

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ................................................................................................ 16

*Hawaii v. Gordon,*
   373 U.S. 57 (1963) .................................................................................................. 11

*Heffron v. Int'l Soc. for Krishna Consciousness, Inc.,*
   452 U.S. 640 (1981) ................................................................................................ 17

*Jefferson v. Fenech,*
   No. 18-12811, 2020 WL 7353517 (E.D. Mich. Dec. 15, 2020) .............................. 8

*Jefferson v. Jefferson Cnty. Pub. Sch. Sys.,*
   360 F.3d 583 (6th Cir. 2004) ................................................................................. 23

*Johns v. Sup. Ct. of Ohio,*
   753 F.2d 524 (6th Cir. 1985) ................................................................................. 10

*Jones v. Heyman,*
   888 F.2d 1328 (11th Cir. 1989) ............................................................................. 18

*Kent v. Ohio House of Representatives Democratic Caucus,*
   33 F.4th 359 (6th Cir. 2022) ...........................................................................*passim*

*Kolender v. Lawson,*
   461 U.S. 352 (1983) ................................................................................................ 20

*Koury v. City of Canton,*
   No. 1:04-CV-02248, 2005 WL 2649883 (N.D. Ohio Oct. 17, 2005) ..................... 15

*Kucinich v. Forbes,*
   432 F. Supp. 1101 (N.D. Ohio 1977) ..................................................................... 18

*Kuck v. Danaher,*
   822 F. Supp. 2d 109 (D. Conn. 2011) .................................................................... 11

*Lanman v. Hinson,*
   529 F.3d 673 (6th Cir. 2008) ................................................................................... 8

*Larsen v. Senate of Com. of Pa.,*
   152 F.3d 240 (3d Cir. 1998) ................................................................................... 13

*McCann v. Brady,*
909 F.3d 193 (7th Cir. 2018) ...................................................................... 14

*McGuinn v. Smith,*
No. 11-CV-4761, 2015 WL 12731755 (S.D.N.Y. Aug. 28, 2015) ................... 17

*Monserrate v. N.Y. State Senate,*
599 F.3d 148 (2d Cir. 2010) ......................................................................... 17

*Monserrate v. N.Y. State Senate,*
695 F. Supp. 2d 80 (S.D.N.Y. 2010) ............................................................. 21

*Morgan v. Bd. of Pro. Resp.,*
63 F.4th 510 (6th Cir. 2023) ........................................................................ 11

*Nat'l Ass'n of Soc. Workers v. Harwood,*
69 F.3d 622 (1st Cir. 1995) .................................................................... 13, 15

*Nordlinger v. Hahn,*
505 U.S. 1 (1992) ......................................................................................... 23

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ....................................................................................... 9

*Painter v. Shalala,*
97 F.3d 1351 (10th Cir. 1996) ...................................................................... 11

*Papasan v. Allain,*
478 U.S. 265 (1986) ..................................................................................... 12

*Pearson v. Callahan,*
555 U.S. 223 (2009) ..................................................................................... 16

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984) ................................................................................. 10, 12

*Reeder v. Madigan,*
780 F.3d 799 (7th Cir. 2015) ....................................................................... 15

*Risser v. Thompson,*
930 F.2d 549 (7th Cir. 1991) ....................................................................... 13

*Russell v. Lundergan-Grimes,*
784 F.3d 1037 (6th Cir. 2015) ..................................................................... 10

*S & M Brands, Inc. v. Cooper,*
527 F.3d 500 (6th Cir. 2008) ....................................................................... 12

*Scott v. Taylor,*
    405 F.3d 1251 (11th Cir. 2005) ................................................................................ 13

*Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.,*
    468 U.S. 841 (1984) ................................................................................................ 25

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996) .................................................................................................. 10

*Shields v. Charter Twp. of Comstock,*
    617 F. Supp. 2d 606 (W.D. Mich. 2009) ........................................................... 15, 19

*Snowden v. Hughes,*
    321 U.S. 1 (1944) .................................................................................................... 21

*Song v. City of Elyria,*
    985 F.2d 840 (6th Cir. 1993) ................................................................................. 25

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ............................................................................................7, 18

*State Emps. Bargaining Agent Coal. v. Rowland,*
    494 F.3d 71 (2d Cir. 2007) ..................................................................................... 13

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.,*
    446 U.S. 719 (1980) ..................................................................................... 12, 13, 15

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) .................................................................................................. 7

*Taylor v. Beckham,*
    178 U.S. 548 (1900) ................................................................................................ 21

*Tenn. State Conf. of NAACP v. Lee,*
    No. 3:23-cv-00832, 2024 WL 3896639 (M.D. Tenn. Aug. 21, 2024) ...................... 23

*Tenney v. Brandhove,*
    341 U.S. 367 (1951) ........................................................................................... 13, 16

*Thaddeus-X v. Blatter,*
    175 F.3d 378 (6th Cir. 1999) ................................................................................. 18

*TriHealth, Inc. v. Bd. of Comm'rs,*
    430 F.3d 783 (6th Cir. 2005) ........................................................................... 23, 24

*United States v. Hansen,*
    599 U.S. 762 (2023) ................................................................................................ 19

*United States v. Johnson,*
   383 U.S. 169 (1966) ............................................................................................. 13

*United States v. Williams,*
   553 U.S. 285 (2008) ............................................................................................. 19

*White v. City of Norwalk,*
   900 F.2d 1421 (9th Cir. 1990) ....................................................................... 17, 19

*Whitener v. McWatters,*
   112 F.3d 740 (4th Cir. 1997) ................................................................... 14, 15, 18

*Whole Woman's Health v. Jackson,*
   595 U.S. 30 (2021) ............................................................................................... 11

*Will v. Mich. Dep't of State Police,*
   491 U.S. 58 (1989) ............................................................................................... 10

*Ex parte Young,*
   209 U.S. 123 (1908) ........................................................................................ 7, 10

*Zilich v. Longo,*
   34 F.3d 359 (6th Cir. 1994) ................................................................................. 25

**Constitutional Provisions & Statutes**

U.S. CONST. amend. I ................................................................................................ 17

U.S. CONST. amend. XIV ........................................................................................... 21

U.S. CONST. art. I, § 6, cl. 1 ...................................................................................... 13

U.S. CONST. art. III, § 2, cl. 1 ..................................................................................... 7

TENN. CONST. art. II, § 12 ............................................................................... 3, 14, 25

42 U.S.C. § 1983........................................................................................................... 6

Tenn. Code Ann. § 8-27-204(a)(1)(A) ...................................................................... 22

Tenn. Code Ann. § 8-27-208(a)(2) ............................................................................ 22

Tenn. Comp. R. & Regs. Ch. 1700-03-02-.03(1) ...................................................... 23

**Other Authorities**

General Assembly, *Report of the Ad Hoc Committee on Rules First Extraordinary Session,*
   https://perma.cc/ZY63-Q9BA .............................................................................. 5

HR 0063, *Bill History,* https://perma.cc/7DTK-78TT ............................................... 4

HR 63, 113th General Assembly (Tenn. 2023), https://perma.cc/4HKN-SXGC .................................. 4

HR 0064, *Bill History*, https://perma.cc/7VUH-826L ................................................................... 4

HR 64, 113th General Assembly (Tenn. 2023), https://perma.cc/966B-6GUW .................................. 4

HR 0065, *Bill History*, https://perma.cc/AF4H-EX2U ................................................................... 4

HR 65, 113th General Assembly (Tenn. 2023), https://perma.cc/CK95-LJML ................... 3, 4, 13, 24

House Floor Session—5th Legislative Day—1st Extraordinary Session (Aug. 29, 2023), https://www.youtube.com/watch?v=_gzIHmQiHCc ............................................................ 9

House Floor Session 21st Legislative Day—April 6, 2023 (Apr. 6, 2023), https://www.youtube.com/watch?v=ZZK--_x3gIU&list=PL9dTuWMF6QugCOPpN4ueCDlImI-nu_Fhz&index=63 ..................... 1

Mason's Manual of Legislative Procedure (2020) ......................................................................... 20

Representative Justin Jones, *Committees*, https://perma.cc/YT54-3ZXW ................................... 5

SJR 1629, *Summary*, https://perma.cc/DZV6-NGD8 ...................................................................... 6

Joseph Story, Commentaries on the Constitution of the United States § 835 ........................................ 14

*Tennessee Election Results*, N.Y. Times, https://perma.cc/LP6G-3KRF (last updated Nov. 21, 2024) ................................................................................................................................ 5

Tennessee General Assembly, *113th Gen. Assembly House Committees*, https://perma.cc/J24T-DX7B ........................................................................................................ 5

Tennessee General Assembly, *House Floor Session—1st Legislative Day—1st Extraordinary Session* (Aug. 21, 2023), https://tnga.granicus.com/player/clip/28820?view_id=705&redirect=true&h=70d48f42508633c75214628eff403d18 .................................................. 5

Tennessee House of Representatives, 113th General Assembly, *Permanent Rules of Order*, https://perma.cc/KZ67-LLHG ............................................................................................. 3

Tennessee House of Representatives, 113th General Assembly, *Permanent Rules of Order*, https://perma.cc/LN6U-STYC .............................................................................................. 3

# INTRODUCTION

On March 30, 2023, Representative Justin Jones ("Plaintiff") disrupted a legislative session of the Tennessee House of Representatives by occupying the well of the House without permission to speak and leading a "protest" involving "the assembled members of the public" that lasted "approximately sixteen minutes." Supplemental and Amended Complaint ("SAC") ¶¶ 26, 33. During the protest, Plaintiff used a bullhorn to address the gallery, shout slogans, and lead members of the public in chants.[1] After the protest, Plaintiff was removed from his committee assignments, and on April 6, 2023, he was expelled from the House by a supermajority vote. Plaintiff was soon reinstated, then re-elected. And just this month, he was re-elected again.

In this lawsuit, Plaintiff claims that he has a constitutional right to hijack legislative proceedings at his pleasure and speak on any topic at any time—using a bullhorn if he wishes—contrary to the rules that apply to every other member of the Tennessee House. He claims that House Speaker Cameron Sexton and three legislative officials violated his rights by promulgating and enforcing the House Rules against him. And he asks this Court, among other things, to enjoin the entire House (not just Defendants) from enforcing its rules against him in perpetuity.

Plaintiff has no conceivable right to such relief. His demand that this Court micromanage the internal operations of the Tennessee House violates basic principles of federalism and the separation of powers. Plaintiff's latest complaint adds a new litany of grievances from the most recent legislative session, but the fundamental flaws in his case remain. This Court still lacks subject-matter jurisdiction, Defendants are still immune from suit, and Plaintiff still fails to state a claim on which relief can be

---

[1]    *See* House Floor Session 21st Legislative Day—April 6, 2023 at 4:44:56 (Apr. 6, 2023), https://www.youtube.com/watch?v=ZZK--_x3gIU&list=PL9dTuWMF6QugCOPpN4ueCDlImI-nu_Fhz&index=63. This video may be considered by the Court because it is a matter of public record, and it is referred to in and integral to Plaintiff's complaint, SAC ¶ 47 n.23. *See Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

1

granted. There is no reason to prolong this litigation through another legislative session. Plaintiff's complaint should be dismissed.

This Court lacks subject-matter jurisdiction for two reasons. *First*, Plaintiff's alleged injuries are not traceable to any of the individual Defendants—the House expelled him by a supermajority vote and sustained application of its rules by a majority vote. *Second*, sovereign immunity bars all claims under the Tennessee Constitution and all claims against Defendants in their official capacity, including claims for prospective injunctive relief because *Ex parte Young*'s exception does not apply.

The complaint should also be dismissed in its entirety because Defendants are immune from suit altogether. Plaintiff's claims against all Defendants are foreclosed by absolute legislative immunity, which bars lawsuits against legislators and legislative staff based on legislative activities—including adoption and enforcement of legislative rules. Plaintiff's claims for damages are likewise barred by qualified immunity, and individual-capacity injunctive relief is not available under Section 1983.

Even if the Court had jurisdiction, and even if Defendants were not immune, Plaintiff's claims would be subject to dismissal for failure to state a claim. Plaintiff's First Amendment claims fail because he has no constitutional right to speak in violation of the House Rules or to sit on any legislative committee. His vagueness claim fails because the House Rules simply are not vague. His due-process claims fail because he identifies no protected property interest and because he does not even allege that he lacked adequate means of redress. His equal-protection claim fails because he does not allege facts to show that he was treated differently from similarly situated individuals by the Speaker (who voted to expel all three protestors) or any other Defendant, and his conclusory allegation of racial motivation is insufficient. Finally, his bill-of-attainder claim fails under this Court's precedent, which establishes that a resolution to expel a member of the Tennessee House is not a bill of attainder.

Plaintiff's complaint should be dismissed with prejudice.

## STATEMENT OF THE CASE

**A.** The Tennessee Constitution grants the Tennessee House of Representatives (the "House")
authority to "determine the rules of its proceedings, punish its members for disorderly behavior, and,
with the concurrence of two-thirds, expel a member." Tenn. Const. art. II, § 12. Under that authority,
the House adopted Permanent Rules of Order (the "House Rules") for the 113th General Assembly.
Among other provisions, the House Rules require legislators to "preserve order and decorum" (Rule
2), speak only after being "recognized by the Speaker" (Rule 18), refrain from using "props or personal
displays of any kind" (Rule 35), and "not crowd or stand about the Clerk's desk" (Rule 41). The House
Rules were adopted at the start of the 2023 legislative session,[2] and an amended version was adopted
at the start of the 2024 legislative session.[3]

**B.** Plaintiff violated multiple House Rules on March 30, 2023, when he and two "like-minded
colleagues"—Representative Justin Pearson (of District 86) and Representative Gloria Johnson (of
District 90)—disrupted House proceedings by entering the well of the House chamber without
recognition, shouting as they walked. SAC ¶¶ 31, 33, 57.[4] Once in the well, Plaintiff and his colleagues
"pounded on the podium, led chants with citizens in the gallery, and generally engaged in disorderly
and disruptive conduct, including refusing to leave the well, sitting on the podium, and utilizing a sign
displaying a political message." HR 65 at 2. Plaintiff and "Representative Pearson used a bullhorn to

---

[2] Tennessee House of Representatives, 113th General Assembly, *Permanent Rules of Order*,
https://perma.cc/KZ67-LLHG. The 2023 version of the House Rules may be considered by the
Court because they are a matter of public record, and they are referred to in and integral to Plaintiff's
complaint, *e.g.*, SAC ¶¶ 12-14, 66, 73. *See supra* n.1.

[3] Tennessee House of Representatives, 113th General Assembly, *Permanent Rules of Order*,
https://perma.cc/LN6U-STYC. The 2024 version of the House Rules may be considered by the
Court because they are a matter of public record, and they are referred to in and integral to Plaintiff's
complaint, *e.g.*, SAC ¶¶ 88, 139-45. *See supra* n.1.

[4] HR 65, 113th General Assembly (Tenn. 2023), https://perma.cc/CK95-LJML (hereafter
"HR 65"). This Court may consider the House Resolutions cited in this memorandum as both a matter
of public record and documents referenced in Plaintiff's complaint that are integral to his claims, *e.g.*,
SAC ¶ 44. *See supra* n.1.

amplify their protestations." *Id.* According to Plaintiff, the protest continued for approximately sixteen minutes. SAC ¶ 33. The disruption paused House proceedings for nearly one hour. SAC ¶ 34.

Shortly after the protest, resolutions seeking the expulsion of Plaintiff and both of his colleagues were introduced. SAC ¶ 41.[5] That same day, Plaintiff and Representative Johnson were removed from their committee assignments. SAC ¶ 36. At the time, Plaintiff sat on the Agriculture and Natural Resources Committee, the Agriculture and Natural Resources Subcommittee, the Education Administration Committee, and the Government Operations Committee. SAC ¶ 10.

On April 6, 2023, the House suspended House Rules to allow Plaintiff and Representatives Pearson and Johnson each (1) a twenty-minute period of questioning regarding their expulsion resolutions, (2) a five-minute closing statement, and (3) the option to designate counsel to speak on their behalf. SAC ¶ 46. Plaintiff does not allege that he chose to designate counsel. He does not allege that he moved to introduce any evidence or witnesses, and it is unclear what evidence or witnesses he might have introduced (the complaint identifies none) when the members of the House personally witnessed Plaintiff's protest on the House floor. Representative Johnny Garrett (of District 45), meanwhile, moved to admit a video of the disruption, and the motion passed. SAC ¶¶ 47-48.

The resolution to expel Plaintiff passed by a vote of 72-25, SAC ¶ 51, with one Republican member voting against, SAC ¶ 15.[6] The resolution to expel Representative Pearson passed by a vote of 69-26, SAC ¶ 51,[7] with three Republican members voting against.[8] The resolution to expel Representative Johnson (who did not use a bullhorn) narrowly failed by a vote of 65-30. SAC ¶ 39.[9]

---

[5]    *See* HR 63, 113th General Assembly (Tenn. 2023), https://perma.cc/4HKN-SXGC (calling for the expulsion of Representative Pearson); HR 64, 113th General Assembly (Tenn. 2023), https://perma.cc/966B-6GUW (calling for the expulsion of Representative Johnson); HR 65 (calling for the expulsion of Plaintiff).

[6]    *See* HR 0065, *Bill History*, https://perma.cc/AF4H-EX2U.

[7]    *See* HR 0063, *Bill History*, https://perma.cc/7DTK-78TT.

[8]    *Id.*

[9]    *See* HR 0064, *Bill History*, https://perma.cc/7VUH-826L.

Plaintiff was reinstated by the Metropolitan Council of Nashville and Davidson County on April 10, 2023, and sworn in that same day. SAC ¶ 58. He won a Special Election on August 3, 2023, SAC ¶ 62, and currently serves in the House, SAC ¶ 63.[10] Upon his re-election in 2023, Plaintiff sat on the Agriculture and Natural Resources Committee, the Agriculture and Natural Resources Subcommittee, the Education Administration Committee, and the Transportation Committee.[11] He now sits on the Agriculture and Natural Resources Committee, the Agriculture and Natural Resources Subcommittee, and the Government Operations Committee.[12]

The General Assembly commenced a special session focused on public safety on August 21, 2023. SAC ¶ 65. At the outset, rules recommended by the bipartisan Ad Hoc Committee on Rules ("the Special Session Rules"), SAC ¶ 66,[13] were adopted by the House.[14] As relevant here, Special Session Rule 2 prescribes consequences for "caus[ing] a material disruption of official legislative business," and Special Session Rule 18 prescribes consequences for making "remarks [that] fail to strictly conform to the question under debate." On August 28, 2023, Plaintiff was twice ruled out of order under Special Session Rule 18 for not conforming his remarks to the discussion of two separate bills. SAC ¶¶ 79-82. The second out-of-order ruling was sustained by a 70-20 vote of the House, and Plaintiff was not recognized for the remainder of the day. SAC ¶¶ 82-83.

---

[10] Plaintiff won re-election again on November 5, 2024. *Tennessee Election Results*, N.Y. Times, https://perma.cc/LP6G-3KRF (last updated Nov. 21, 2024).
[11] *See* ECF 36-1 at 13-14; Tennessee General Assembly, *113th Gen. Assembly House Committees*, https://perma.cc/J24T-DX7B.
[12] Representative Justin Jones, *Committees*, https://perma.cc/YT54-3ZXW.
[13] Tennessee House of Representatives, 113th General Assembly, *Report of the Ad Hoc Committee on Rules First Extraordinary Session*, https://perma.cc/ZY63-Q9BA (hereafter "Special Session Rules"). This Court may consider the Special Session Rules as both a matter of public record and a document referenced in Plaintiff's complaint that is integral to his claims, *e.g.*, SAC ¶¶ 66, 76. *See supra* n.1.
[14] Tennessee General Assembly, House Floor Session—1st Legislative Day—1st Extraordinary Session at 8:05 (Aug. 21, 2023), https://tnga.granicus.com/player/clip/28820?view_id=705 &redirect=true&h=70d48f42508633c75214628eff403d18.

The 2024 legislative session ran from January 9, 2024, to April 25, 2024. SAC ¶ 88.[15] During this time, Plaintiff was again ruled out of order several times under the House Rules. Among other things, Plaintiff spoke out of turn and off topic, SAC ¶¶ 92, 94-96; proposed nongermane amendments, SAC ¶ 93; and improperly recorded House proceedings using his phone, SAC ¶ 97.[16]

**C.** On October 2, 2023, Plaintiff filed this lawsuit alleging that his expulsion and the enforcement of the House Rules violated his rights under federal and state law. His amended complaint names four state officials as Defendants in their individual and official capacities: House Speaker Cameron Sexton (of District 25), SAC ¶ 11; Chief Clerk Tammy Letzler, SAC ¶ 12; Assistant Chief Clerk and Parliamentarian Daniel Hicks, SAC ¶ 14; and Chief Sergeant-At-Arms Bobby Trotter, SAC ¶ 13. On October 30, 2024, he filed a Supplemental and Amended Complaint to add allegations regarding the 2024 legislative session.

Plaintiff brings six claims under 42 U.S.C. § 1983: (1) that his expulsion violated the First Amendment, SAC ¶¶ 124-37; (2) that the 2024 House Rules are unconstitutionally vague, SAC ¶ 138-45; (3) that his expulsion violated the Fourteenth Amendment's Due Process Clause, SAC ¶¶ 146-70; (4) that the denial of his health and retirement benefits violates the Fourteenth Amendment's Due Process Clause, SAC ¶¶ 171-82; (5) that House officials intentionally discriminated against him based on his race in violation of the Fourteenth Amendment's Equal Protection Clause, SAC ¶¶ 183-92; and (6) that he was subjected to a bill of attainder in violation of Article I, SAC ¶¶ 193-201. Plaintiff also challenges his expulsion and the enforcement of the House Rules under Article I, Section 19, of the Tennessee Constitution. SAC ¶¶ 124-37, 138-45.

Plaintiff seeks declaratory, injunctive, and monetary relief. SAC at 59-60 (Prayer for Relief). In

---

[15]    SJR 1629, *Summary*, https://perma.cc/DZV6-NGD8.
[16]    Plaintiff complains of "retaliatory efforts" against him in the form of "rolling Democrat bills to the end of the Legislative Session calendar." SAC ¶ 112. But Plaintiff does not allege that he had any bills on the calendar, and he thus fails to allege any injury to himself.

6

particular, he requests that this Court declare his discipline and the House Rules unconstitutional, enjoin enforcement of the House Rules against him, restore his seniority and benefits, and award damages. SAC at 59-60 (Prayer for Relief).

## ARGUMENT

## I. This Court Lacks Subject-Matter Jurisdiction.

Plaintiff's complaint should be dismissed under Rule 12(b)(1) because this Court lacks subject-matter jurisdiction. Plaintiff lacks standing, even assuming he has identified a cognizable injury in fact, because his alleged injuries are neither traceable to nor redressable by Defendants. His claims challenging the House Rules are also moot because those rules are no longer in effect, and any alleged future injuries from those "or other, similar rules in future legislative sessions," SAC ¶ 143, are speculative. Sovereign immunity independently bars Plaintiff's claims under the Tennessee Constitution and his claims against Defendants in their official capacity, and he cannot invoke the limited exception to sovereign immunity under *Ex parte Young*, 209 U.S. 123 (1908), for prospective relief against state executive officials for ongoing violations of federal law.

### A. Plaintiff lacks standing.

Article III limits federal-court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The requirement that a plaintiff demonstrate standing "gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citation omitted) (cleaned up). To establish standing, Plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Even if Plaintiff suffered a cognizable injury in fact, he lacks standing because his alleged injuries are neither traceable to nor redressable by Defendants.

7

As an initial matter, Plaintiff has failed to allege any conduct at all traceable to Defendants Letzler, Trotter, and Hicks. "[I]n the Sixth Circuit, grouping all defendants together collectively and providing no factual basis to distinguish each defendants' conduct does not satisfy the *Twombly/Iqbal* fair notice pleading standard." *Jefferson v. Fenech*, No. 18-12811, 2020 WL 7353517, at *4 (E.D. Mich. Dec. 15, 2020) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012)). Rather, Plaintiff "must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Plaintiff does not allege facts to demonstrate that Defendants Letzler, Trotter, or Hicks took part in any of the actions he challenges. Plaintiff makes no specific allegations about Defendant Trotter. Plaintiff's lone allegation against Defendant Letzler, *see* SAC ¶¶ 37-38, relates to her communication with Plaintiff regarding his removal from committee assignments. Plaintiff does not assert that she had any role in removing him. And Plaintiff's sparse allegations against Defendant Hicks, *see* SAC ¶¶ 81, 93, relate only to out-of-order rulings ultimately alleged to be made or sustained by others. Because Plaintiff has not identified any cognizable injury traceable to these Defendants, his claims against them should be dismissed.

Plaintiff's alleged injuries are not traceable to Speaker Sexton, either. The heart of Plaintiff's case is that "the Tennessee *House of Representatives* (the 'House') illegally expelled Representative Jones." SAC ¶ 2 (emphasis added); *see also, e.g.*, SAC ¶ 50 ("*House Republicans* planned to remove Representative Jones from office without regard to the evidence presented." (emphasis added)); SAC ¶ 51 ("*[T]he House* voted to expel Representative Jones by a vote of 72 yeas to 25 nays." (emphasis added)); SAC ¶ 110 ("*House Republicans* regularly singled representative Jones out for their vitriol and attack" (emphasis added)); SAC ¶ 195 ("Representative Jones was singled out for punishment by *the Tennessee legislature*." (emphasis added)). Plaintiff's expulsion is not traceable to Speaker Sexton; it required a supermajority vote of the entire House. Likewise, Plaintiff alleges that he was "silenced by Defendant Sexton and the House Republican super majority" through application of Special Session Rule 18.

SAC ¶ 83. But once again, Speaker Sexton could not sustain any punishment under the Special Session Rules; that required a vote of the entire House. SAC ¶¶ 69, 76, 82. So too under the House Rules. SAC ¶ 15 ("Nearly all of the Republicans in the Tennessee House of Representatives … voted to sustain Representative Jones being silenced at disproportionate rates compared to other House colleagues for similar behavior during the 2024 Session."). Plaintiff's alleged injuries are traceable to the House as a whole—not to Speaker Sexton—and are therefore not redressable by a judgment against the Speaker.[17]

The Court also lacks jurisdiction over Plaintiff's claims challenging the House Rules. *See, e.g.*, SAC ¶¶ 138-45. The House Rules governed only the 113th General Assembly, which adjourned on April 25, 2024. *See supra* p.6. When the House reconvenes on January 14, 2025, for the 114th General Assembly, new rules will have to be adopted.[18] Even if the expiration of the House Rules did not render Plaintiff's claims moot, *but see Doe v. Univ. of Mich.*, 78 F.4th 929, 947-48 (6th Cir. 2023) (holding challenge to university policy mooted by adoption of new policy), Plaintiff does not allege an actual case or controversy because he can only speculate that the House Rules, or similar rules, will be unlawfully enforced against him in the future. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Plaintiff alleges no present adverse effects from the application of the House Rules, and any allegation that similar rules may be

---

[17]  Plaintiff's allegation that he "was denied his seat on the Government Operations Committee for close to eight months," SAC ¶ 87, does not identify a concrete injury traceable to and redressable by any particular Defendant. But assuming for the sake of argument that Plaintiff's assignment to the Transportation Committee rather than the Government Operations Committee for a handful of months, *see supra* p.5, amounts to a cognizable injury traceable to any Defendant, the Court nevertheless lacks jurisdiction because sovereign immunity bars Plaintiff's official-capacity claims against all Defendants, *see infra* pp.10-12.

[18]  The Special Session Rules are also no longer in effect, as the Special Session concluded on August 29, 2023. *See* House Floor Session—5th Legislative Day—1st Extraordinary Session at 53:49 (Aug. 29, 2023), https://www.youtube.com/watch?v=_gzIHmQiHCc.

approved in the future and wrongfully applied against Plaintiff is speculative. *See, e.g.*, *City of L.A. v. Lyons*, 461 U.S. 95, 104-05 (1983).

**B.      Sovereign immunity bars Plaintiff's claims under state law.**

This Court cannot entertain Plaintiff's claims alleging violations of Article I, Section 19, of the Tennessee Constitution. *See, e.g.*, SAC ¶¶ 125, 132, 137, 139, 144-45. "Case law is legion that the Eleventh Amendment to the United States Constitution directly prohibits federal courts from ordering state officials to conform their conduct to state law." *Johns v. Sup. Ct. of Ohio*, 753 F.2d 524, 526 (6th Cir. 1985); *see, e.g.*, *Combs v. Wilkinson*, 315 F.3d 548, 560 (6th Cir. 2002). As the Supreme Court has explained, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Yet that is precisely what Plaintiff seeks here. *See* SAC at 59-60 (Prayer for Relief). This Court lacks jurisdiction to adjudicate Plaintiff's state-law claims.

**C.      Sovereign immunity bars Plaintiff's claims against Defendants in their official capacity.**

This Court also lacks subject-matter jurisdiction over Plaintiff's claims against any Defendant in his or her official capacity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), that is, "the State itself," *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). And under the principles of sovereign immunity reflected in the Eleventh Amendment, a State is not "amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)). The State of Tennessee has not consented to suit, so Plaintiff's official-capacity claims are barred by sovereign immunity.

That bar applies to all of Plaintiff's claims, including claims for prospective injunctive relief. In *Ex parte Young*, 209 U.S. 123, the Supreme Court recognized a limited exception to sovereign immunity allowing federal courts to issue prospective injunctive relief to prevent a state official "from

enforcing state laws that are contrary to federal law," *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). The *Ex parte Young* exception "applies only when the plaintiff sues for 'prospective [injunctive] relief to end a continuing violation of federal law.'" *Morgan v. Bd. of Pro. Resp.*, 63 F.4th 510, 515 (6th Cir. 2023) (quoting *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013)). But if the plaintiff's complaint does not "'make clear what those ongoing violations are,' the exception does not apply." *Id.* (quoting *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017)).[19]

The exception does not apply here because Plaintiff does not identify any ongoing violation of federal law by Defendants. The only continuing injury he identifies is a supposed loss of seniority. SAC ¶ 136. But even if that constituted an ongoing violation of federal law, the relief sought by Plaintiff would not merely restrain the individual Defendants; it would require this Court to assert control over the internal operation of the Tennessee House. Plaintiff's suit therefore targets the sovereign, not individual officers, as it would "interfere with the public administration" and "restrain the Government from acting" or "compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (citations omitted); *see also Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam) (explaining that "relief sought nominally against an officer is in fact against the sovereign" if it would require "official affirmative action"); *Painter v. Shalala*, 97 F.3d 1351, 1359 (10th Cir. 1996) (holding that sovereign immunity applied when the requested relief would entail ordering the defendant "to take various forms of affirmative action"). Plaintiff's claims would therefore impose an even "greater intrusion on state

_____

[19]    Prospective injunctive relief against Defendants in their individual capacity is not available under Section 1983. *See Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991))); *Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011) ("Plaintiffs cannot obtain prospective injunctive relief from the Defendants sued in their individual capacities as such Defendants would not have the authority to provide such relief in their individual capacities.").

sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. He asks this Court to instruct state officials on how to conduct the State's lawmaking process itself. In short, Plaintiff's claims cannot sustain the fiction underlying *Ex parte Young*'s limited exception to sovereign immunity because they seek to control the legislative process of a sovereign State through a federal injunction.

Even if Plaintiff could invoke the *Ex parte Young* exception, sovereign immunity would still bar his official-capacity claims for damages or retrospective relief. *Edelman v. Jordan*, 415 U.S. 651, 666-68 (1974). Sovereign immunity bars "*all* retroactive relief," not only "retroactive monetary relief," against state officials in their official capacity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008). Sovereign immunity thus forecloses declaratory relief when there is "no claimed continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 73 (1985). Here, sovereign immunity bars Plaintiff's claims for damages against Defendants in their official capacity, *see* SAC at 60 (Prayer for Relief); *S & M Brands*, 527 F.3d at 507; any claim for a declaratory judgment that past conduct of Defendants violated the Constitution, *see* SAC at 59 (Prayer for Relief); *Mansour*, 474 U.S. at 68; *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986); and any claim for restoration of rights allegedly denied to Plaintiff, *see* SAC at 59-60 (Prayer for Relief).

## II.     Plaintiff's Claims Are Barred By Legislative Immunity.

The complaint should also be dismissed because all of Plaintiff's claims against all Defendants are barred by absolute legislative immunity.[20] Legislative immunity shields "lawmakers from lawsuits for their legislative acts." *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 360 (6th

---

[20]    Legislative immunity would bar Plaintiff's claims even if he could overcome sovereign immunity under the *Ex parte Young* exception. *See Church v. Missouri*, 913 F.3d 736, 753 (8th Cir. 2019) ("Even if the governor's appropriation-reduction authority is not shielded by sovereign immunity through *Ex parte Young*, legislative immunity, a separate defense, forecloses suit against the governor." (citing *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734 (1980))).

Cir. 2022). It extends to "all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). It applies to both individual-capacity and official-capacity claims, barring "lawsuits for monetary damages as well as for prospective relief." *Kent*, 33 F.4th at 364; *see Consumers Union*, 446 U.S. at 734.[21] And it applies to lawmakers at all levels of government. *See Bogan*, 523 U.S. at 49.[22] Legislative immunity bars all of Plaintiff's claims because Defendants' alleged acts were part of a core legislative function: legislative self-discipline.

To the extent they took any action affecting Plaintiff, Defendants simply enforced House rules of decorum and order necessary to conduct legislative business. *See* HR 65; SAC ¶¶ 79-80. This falls in the heartland of legislative immunity, which protects "not only speech and debate per se," *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 630 (1st Cir. 1995), but all activities "generally done in a session of the [legislature] by one of its members in relation to the business before it," *Gravel v. United States*, 408 U.S. 606, 623-24 (1972) (citation omitted). Courts have specifically "declined to take a 'narrow view'" of legislative immunity, *Kent*, 33 F.4th at 363 (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)), instead applying it "broadly to effectuate its purposes," *United States v. Johnson*, 383 U.S. 169, 180 (1966); *see Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975). Legislative immunity thus applies to "matters 'integral' to legislators' deliberative and communicative processes for evaluating bills, voting, or performing other tasks within their jurisdiction." *Kent*, 33 F.4th at 365

---

[21] *See also Cushing v. Packard*, 30 F.4th 27, 39 (1st Cir.) (en banc), *cert denied* 143 S. Ct. 308 (2022) (mem.); *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 87-88 (2d Cir. 2007); *Larsen v. Senate of Com. of Pa.*, 152 F.3d 240, 252-54 (3d Cir. 1998); *Risser v. Thompson*, 930 F.2d 549, 551 (7th Cir. 1991); *Church*, 913 F.3d at 753; *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005).

[22] Members of Congress are immune under the Speech and Debate Clause, U.S. Const. art. I, § 6, cl. 1, and state and local legislators enjoy federal common-law immunity not abrogated by Section 1983, *see, e.g.*, *Bogan*, 523 U.S. at 49; *Tenney*, 341 U.S. at 369-76. The Supreme Court "generally ha[s] equated" the two forms of legislative immunity, *Consumers Union*, 446 U.S. at 733, and courts "use[] the relevant case law interchangeably," *Kent*, 33 F.4th at 364 (citation omitted).

(citation omitted) (cleaned up).

Those matters include the legislature's authority "to determine the rules of its own proceedings," which "would be nugatory, unless it was coupled with a power to punish for disorderly behavior, or disobedience to those rules." Joseph Story, Commentaries on the Constitution of the United States § 835. The Tennessee Constitution places such matters within the Legislature's sole jurisdiction. *See* Tenn. Const. art. II, § 12. This power of self-discipline "is the primary power by which legislative bodies preserve their 'institutional integrity' without compromising the principle that citizens may choose their representatives." *Whitener v. McWatters*, 112 F.3d 740, 744 (4th Cir. 1997) (citing *Powell v. McCormack*, 395 U.S. 486, 548 (1969)).

Following these long-settled principles, this Court and others consistently recognize absolute legislative immunity against claims based on self-disciplinary actions. In *Kent v. Ohio House of Representatives Democratic Caucus*, the Sixth Circuit held that Ohio legislators were entitled to legislative immunity against claims arising from the expulsion of a member from the Democratic caucus. The court explained that "excluding a representative" from caucus membership "is 'part and parcel' of" the caucus's "'deliberative and communicative processes.'" 33 F.4th at 366 (citation omitted); *see, e.g.*, *McCann v. Brady*, 909 F.3d 193, 197 (7th Cir. 2018) (Illinois legislators entitled to legislative immunity for allegedly expelling a member from their Republican caucus). Likewise in *Gamrat v. McBroom*, 822 F. App'x 331 (6th Cir. 2020), *cert. denied sub nom. Bauer v. McBroom,* 141 S. Ct. 1700 (2021) (mem.), the Sixth Circuit held that legislative immunity insulated legislators from claims arising from the Michigan House's decision to expel one of its members. There, Judge Kethledge explained that the "House's expulsion of [that member] was legislative activity, regardless of any bad faith, and [the member] cannot sue the House Defendants for participating in that process." *Id.* at 334. And in *Whitener v.*

14

*McWatters*—an opinion courts in the Sixth Circuit regularly rely on[23]—the Fourth Circuit concluded that "a legislative body's discipline of one of its members is a core legislative act," thus barring an expelled member's First Amendment and due process claims. 112 F.3d at 741. The actions underlying Plaintiff's claims are thus quintessentially legislative.

The resulting legislative immunity extends to all Defendants. While Speaker Sexton is plainly immune as a "state legislator[]," *Consumers Union*, 446 U.S. at 732, the other Defendants are likewise immune as legislative "staff," *Doe v. McMillan*, 412 U.S. 306, 312 (1973). Legislative immunity applies not only to legislators but also to "non-legislative officials who act in a legislative capacity." *Kent*, 33 F.4th at 364; *see Eastland*, 421 U.S. at 507; *Gravel*, 408 U.S. at 616. Courts have thus afforded absolute legislative immunity to legislative "aides," *Gravel*, 408 U.S. at 618; legislative "staff," *McMillan*, 412 U.S. at 312; chief counsel, *Eastland*, 421 U.S. at 507; legislative press secretaries, *Reeder v. Madigan*, 780 F.3d 799, 804 (7th Cir. 2015); and a head doorkeeper, *Harwood*, 69 F.3d at 631. Here, each Defendant's alleged actions to enforce the House Rules fall within "the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54 (citation omitted). Like Speaker Sexton, Defendants Letzler, Trotter, and Hicks (according to Plaintiff's allegations) were "carry[ing] out the will of the body by enforcing the rule[s] as a part of their official duties." *Harwood*, 69 F.3d at 631. Thus, to the extent Defendants participated in the events underlying Plaintiff's claims, they are absolutely immune from suit.

Plaintiff cannot overcome legislative immunity by alleging that Defendants acted with an impermissible purpose. Legislative immunity applies to legislative acts, and "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Subjective motivation is irrelevant. "The claim of an unworthy purpose does

---

[23] *See Kent*, 33 F.3d at 366; *Gamrat*, 822 F. App'x at 334; *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606, 615 (W.D. Mich. 2009); *Koury v. City of Canton*, No. 1:04-CV-02248, 2005 WL 2649883, at *13 (N.D. Ohio Oct. 17, 2005), *aff'd*, 221 F. App'x 379 (6th Cir. 2007).

not destroy the privilege." *Tenney*, 341 U.S. at 377. The Supreme Court has specifically instructed that whether legislative actions were meant to "single[] out" or "'intimidate and silence'" is immaterial to legislative immunity. *Bogan*, 523 U.S. at 55 (citation omitted). Thus, Plaintiff's allegation that Defendants acted to "single[] [him] out" and to "silence" him, SAC ¶¶ 50, 195, even if true, has no bearing on legislative immunity. The determinative question is "whether, stripped of all considerations of intent and motive, [Defendant]s' actions were legislative." *Bogan*, 523 U.S. at 55. Because that standard is met here, Plaintiff's claims against all Defendants are barred by legislative immunity.

### III. Plaintiff's Claims Are Barred By Qualified Immunity.

Qualified immunity independently bars Plaintiff's claims for damages against Defendants in their individual capacity. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). It is not merely a defense to liability, but also a shield for public officials against the burdens of litigation and trial. *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). The Supreme Court has thus "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (citation omitted).

To overcome qualified immunity, the plaintiff must show from the facts alleged that the government official "violate[d] a clearly established statutory or constitutional right." *Id.* at 231 (citation omitted). This requires the plaintiff to show both (1) that a constitutionally protected right was violated and (2) that the right was clearly established. *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996). Plaintiff cannot make that showing here. For the reasons explained below, Plaintiff has failed to allege any constitutional violation. *See infra* pp.17-25. And even if he had, there is no "pre-existing law" that makes "the unlawfulness … apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Plaintiff alleges that he was expelled from the House by a supermajority vote after

interrupting a legislative session by using a bullhorn to lead a sixteen-minute protest on the House floor. He now complains that the House Rules were applied to him. It would not be "sufficiently clear" to "a reasonable official" that legislative actions taken to address such conduct would be unconstitutional. *Id.* His claims for damages are therefore independently barred by qualified immunity.

## IV. Plaintiff Fails To State A Claim On Which Relief May Be Granted.

Even if this Court had jurisdiction, and even if Defendants were not immune, Plaintiff's complaint would be subject to dismissal under Rule 12(b)(6) because he fails to state a claim on which relief may be granted against any Defendant.

### A. Plaintiff fails to state a First Amendment claim.

Plaintiff fails to state a First Amendment claim because his allegations do not show the denial of his right to free speech. The First Amendment protects "the freedom of speech," U.S. Const. amend. I, but it "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired," *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) (citation omitted). The legislative context "is a unique setting where ordinary notions of First Amendment protection sometimes yield to the political nature of democratic governance." *McGuinn v. Smith*, No. 11-CV-4761, 2015 WL 12731755, at *6 (S.D.N.Y. Aug. 28, 2015); *see White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) ("Principles that apply to random discourse may not be transferred without adjustment to this more structured situation."). Federal courts should accordingly "exercise a respectful reluctance to interfere in the measures taken by a state legislature to regulate its affairs, discipline its members, and protect its integrity and good name." *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 157 (2d Cir. 2010). Here, Plaintiff invokes the First Amendment to challenge his expulsion and treatment under the House Rules. SAC ¶¶ 124-37. His claims fail as a matter of law.

Plaintiff alleges that his expulsion, removal from committee assignments, and subjection to the House Rules amount to "retaliatory discharge and unlawful punishment for the idea-content of

expressive speech." SAC ¶ 135. But Plaintiff's allegations do not establish the requisite "causal connection" between the content of his speech and the alleged adverse actions. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam) (setting forth the elements of a First Amendment retaliation claim). Put simply, Plaintiff "was disciplined for his lack of decorum, not for expressing his view on policy." *Whitener*, 112 F.3d at 745.

Plaintiff's reliance on *Bond v. Floyd*, 385 U.S. 116, 135-36 (1966), and *Kucinich v. Forbes*, 432 F. Supp. 1101, 1113-14 (N.D. Ohio 1977), *see* SAC ¶ 125, is therefore misplaced because neither case involved a violation of legislative rules. In *Bond*, the Georgia House refused to seat a legislator based on his criticism of the war in Vietnam, which occurred outside of the Legislature and before the legislative session began. *See* 385 U.S. at 118-23. In *Kucinich*, the Cleveland City Council suspended a council member for making allegedly defamatory statements while recognized to speak. *See* 432 F. Supp. at 1104-07. In each of those cases, the plaintiff was penalized for "pure speech," *i.e.*, "the idea content of his speech, not the failure to yield the floor when ordered, nor for any other action." *Id.* at 1112. That is not the case here. As Plaintiff alleges, HR 65 states that Plaintiff was expelled because of his "disorderly behavior," SAC ¶ 44 (quoting HR 65 at 2), which violated several House Rules. Plaintiff accordingly "has not demonstrated that [Defendants'] actions resulted from disapproval of [Plaintiff's] message rather than from the need to continue the orderly progression" of legislative proceedings. *Jones v. Heyman*, 888 F.2d 1328, 1332 (11th Cir. 1989).

Moreover, the House Rules and Special Session Rules do not unconstitutionally infringe speech. As an initial matter, it is unclear which Rules Plaintiff challenges. Plaintiff baldly asserts that House "Rule[s] 2, 18, and 19" were applied against him. SAC ¶ 133. But he only supplies factual allegations regarding the application of Rule 19. SAC ¶¶ 95, 97. The only Special Session Rule Plaintiff alleges was applied against him is Special Session Rule 18. *See* SAC ¶¶ 79-86. Plaintiff lacks standing to challenge any Rule he fails to allege was applied against him. *See Spokeo*, 578 U.S. at 338.

In any event, "[a] governmental body has significant discretion to regulate its own meetings in the manner it sees fit." *Shields*, 617 F. Supp. 2d at 613. Legislative rules limiting speech must be "reasonable and viewpoint neutral, but that is all they need to be." *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811, 814 (W.D. Mich. 1999) (quoting *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995)). As courts have recognized, "a public body does not violate the First Amendment when it limits speech to a certain topic." *Shields*, 617 F. Supp. 2d at 613; *see, e.g.*, *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 175 n.8 (1976) ("Plainly, public bodies may confine their meetings to specified subject matter"). So too here, the Rules do not offend the First Amendment. They are reasonable, they prevent disruption of the legislative process, and they are viewpoint neutral. The Rules turn not on "the viewpoint [a speaker] is expressing" but whether the speech has "become[] irrelevant." *White*, 900 F.2d at 1425.

### B. Plaintiff fails to state a vagueness claim against the House Rules.

Plaintiff claims that House Rules 2 and 18 "violate the U.S. Constitution's Due Process Clause for vagueness and overbreadth." SAC at 59 (Prayer for Relief). Plaintiff also refers to the First Amendment in his vagueness claim, but he expressly casts it as a due process claim. SAC ¶ 142. In any event, Plaintiff's related claims of vagueness and overbreadth fail as a matter of law.

A law is not unconstitutionally vague if a "person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited" by the law. *Grayned v. Rockford*, 408 U.S. 104, 108 (1972). To state a facial claim for vagueness under the Due Process Clause, a plaintiff generally "must establish that *no set of circumstances* exists under which the [statute] would be valid." *United States v. Hansen*, 599 U.S. 762, 769 (2023) (citation omitted). And while some "greater degree of specificity" is required where First Amendment-protected conduct is regulated, *511 Detroit St., Inc. v. Kelley*, 807 F.2d 1293, 1295 (6th Cir. 1986) (citation omitted), "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity," *United States v. Williams*, 553 U.S. 285, 304 (2008)

(citation omitted). The First Amendment still requires a showing that the challenged law "reaches 'a substantial amount of constitutionally protected conduct.'" *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (citation omitted). Plaintiff fails to satisfy either standard because he fails to establish that either Rule facially discriminates against a substantial amount of constitutionally protected conduct.

Plaintiff identifies only two phrases of concern: "strictly conform to the question under debate" (Rule 18) and "order and decorum" (Rule 2). *See* SAC ¶ 142. Neither of those phrases is vague. Rule 18's use of "strictly conform to the question under debate" invokes a concept familiar in the legislative context. *See, e.g., Joint Sch. Dist. No. 8*, 429 U.S. at 175 n.8; Mason's Manual of Legislative Procedure § 101 (2020) ("Debate Is Limited to Proposal Before the House"). So too does Rule 2's use of "order and decorum." Mason's Manual of Legislative Procedure ch. 12 ("Decorum in Debate").

Given the familiarity of their content, people of ordinary intelligence—and certainly sitting legislators—understand Rules 2 and 18. There is no need to "guess at [their] meaning." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). If a Representative were to set off a firecracker in the House Chamber during legislative debate (or use a loudspeaker to lead the public gallery in protest during a legislative session), that would plainly breach decorum under Rule 2. Likewise, if a Representative made a speech about climate change during debate on a bill about gun control, no one could reasonably doubt that the comment did not "strictly conform to the question under debate" under Rule 18. Even if Plaintiff's generic allegations of vagueness could raise some doubt about the meaning of those terms in marginal cases, that is not sufficient to state a claim that the House Rules are unconstitutionally vague under the First Amendment or the Due Process Clause.

Furthermore, Plaintiff's fears of "unchecked power" for the Speaker are baseless. SAC ¶ 140. Any member may call another to order under Rules 2 and 18, and "the House shall, if appealed to, decide" whether the member is out of order. *See* House Rule 19. So too with subsequent calls to order on the same day; the House may "allow[] … [the member] to proceed." *Id.* Because the enforcement

of Rules 2 and 18 relies on the House as a whole, the Speaker "does not have 'unfettered' discretion to abuse" them. *Monserrate v. N.Y. State Senate*, 695 F. Supp. 2d 80, 96 (S.D.N.Y.), *aff'd*, 599 F.3d 148 (2d Cir. 2010) (citing *United States v. Batchelder*, 442 U.S. 114, 124 (1979)).

> **C.    Plaintiff fails to state a procedural due process claim.**

Plaintiff brings two procedural due process claims, the first based on the alleged denial of an impartial hearing, SAC ¶¶ 146-70, and the second based on the alleged denial of benefits, SAC ¶¶ 171-82. The Due Process Clause protects against state "depriv[ations] … of life, liberty, or property, without due process of law." To make out "a procedural due process claim, a plaintiff must show that (1) [he] had a life, liberty, or property interest protected by the Due Process Clause; (2) [he] was deprived of this protected interest; and (3) the state did not afford [him] adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014). A property interest requires "more than an abstract need or desire for it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). It must "stem from an independent source such as state law" that operates to "secure certain benefits and … claims of entitlement to those benefits." *Id.* In this analysis, "the statute creating and defining that right is controlling." *Banks v. Block*, 700 F.2d 292, 296-97 (6th Cir. 1983). Both of Plaintiff's claims fail because he has alleged no protected property interest.

*First*, with respect to the alleged denial of an impartial hearing, Plaintiff has failed to allege any protected property interest in either a legislative office or committee assignments. It is well established that a "public office is not property" protected by due process. *Taylor v. Beckham*, 178 U.S. 548, 576 (1900); *see Snowden v. Hughes*, 321 U.S. 1, 7 (1944) ("[A]n unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause."). As such, an expelled legislator "d[oes] not have a property interest in his elected office protected by the Fourteenth Amendment," even if his expulsion was allegedly "lacking in process." *Durham v. Eley*, 507 F. Supp. 3d 956, 965-66 (M.D. Tenn. 2020). Nor does Plaintiff have a protected

property interest in committee assignments. Rather, House Rule 6 generally leaves it to the Speaker's discretion to "appoint all committees." It does not guarantee any legislator any committee assignments, and thus does not "secure certain benefits" or "support claims of entitlement to those benefits" as is required for a constitutionally protected property interest. *Roth*, 408 U.S. at 577. In any event, Plaintiff can hardly claim a constitutional injury when he sat on the same number of committees in the 2023 legislative session as he sat on before his expulsion and was restored to the Government Operations Committee in the 2024 legislative session. *See supra* p.5.

*Second*, with respect to Plaintiff's claim alleging the denial of benefits, Plaintiff has failed to allege any protected property interest, assuming for purposes of this motion that he was in fact denied health or retirement benefits. To start, Plaintiff has failed to allege "a vested property interest in his healthcare benefits." *Durham v. Martin*, No. 21-5099, 2021 WL 6777028, at *5 (6th Cir. Nov. 23, 2021). Under Tennessee law, legislators are eligible for "health insurance coverage," SAC ¶ 177, only during their continued employment. Tenn. Code Ann. § 8-27-204(a)(1)(A). And Plaintiff is not eligible for (let alone entitled to) post-service health benefits. *See id.* § 8-27-208(a)(2) (limiting post-service health benefits to "representative[s]" whose "first election … occur[red] before July 1, 2015").

Similarly, Plaintiff has not alleged any vested property interest in retirement benefits. Plaintiff alleges that under Tennessee law, a state legislator's retirement benefits do not vest until after four years of creditable service, though he cites no legal authority. SAC ¶¶ 120, 179. Assuming he is correct, however, Plaintiff has no vested interest because he was first elected less than four years ago. SAC ¶ 9. His argument thus appears to be one step removed—based on a loss of "creditable general assembly service" rather than a loss of benefits themselves. SAC ¶ 179. Seniority credit, however, is not a protected property interest. *See Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 975 (11th Cir. 2011) (rejecting procedural due process claim based on alleged "depriv[ation]" of "longevity and seniority").

Even if Plaintiff had alleged a protected property interest in health or retirement benefits, he

fails to allege that state processes for redress are "inadequate." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004). Although the State provides for an appeal process, *see* Tenn. Comp. R. & Regs. Ch. 1700-03-02-.03(1) ("Any person who is aggrieved by an action or decision made within the discretion or control of the TCRS, may appeal the action or decision."), Plaintiff does not allege that he has pursued it, let alone that it is inadequate. His due process claim therefore fails.

### D. Plaintiff fails to state an equal-protection claim.

Plaintiff fails to state an equal-protection claim, SAC ¶¶ 183-92, because his allegations show that he was not subjected to disparate treatment by any Defendant, and he alleges no facts to support a plausible inference of racially discriminatory intent. The Equal Protection Clause ensures that "similarly situated individuals" are treated "in a similar manner." *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996) (citation omitted). Individuals are similarly situated when they "are in all relevant respects alike," *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992), or do not "differ in several material respects," *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005). Plaintiff alleges that Defendants violated equal protection when they "treated him differently than they treated similarly situated white House members"—namely, Representative Johnson and Representative Bob Freeman—"for the same conduct." SAC ¶ 185. But Plaintiff's own allegations confirm that the challenged actions are "readily explainable on grounds apart from race." *Tenn. State Conf. of NAACP v. Lee*, No. 3:23-cv-00832, 2024 WL 3896639, at *17 (M.D. Tenn. Aug. 21, 2024) (citation omitted).

*First*, Plaintiff's comparison of his treatment to Representative Freeman's, SAC ¶ 186(b), is a nonstarter. Plaintiff does not allege that any Defendant who allegedly took part in "censur[ing], object[ing] to, and ignor[ing]" him on the House floor spared Representative Freeman from similar treatment. SAC ¶ 186(b). He thus fails to state a claim against any Defendant on this basis.

*Second*, Representative Johnson is not "similarly situated" because she did not engage in the "same conduct." SAC ¶ 185. Plaintiff's allegations demonstrate that his behavior during the disruption

differed materially from hers. Plaintiff alleges that he and Representative "Pearson began speaking from the podium, calling for legislative action against gun violence and for the recognition of the efforts of the many members of the public seated in the House gallery." SAC ¶ 31. He does not allege that Representative Johnson did so. The expulsion resolutions (and video incorporated into the complaint, *see supra* n.1) further show that Plaintiff and Representative Pearson—but not Representative Johnson—"used a bullhorn to amplify their protestations." HR 65 at 2. Plaintiff and Representative Johnson therefore "differ in several material respects" when it comes to the expulsion proceedings. *TriHealth*, 430 F.3d at 790. They also differ with respect to committee assignments. *See* SAC ¶ 186(c). Per Plaintiff's allegations, Representative Johnson had her assignments restored after the vote to expel her failed. SAC ¶ 39. The vote to expel Plaintiff succeeded. SAC ¶ 51.

*Third*, Plaintiff fails to allege that any Defendant in fact "treated him differently" from Representative Johnson. SAC ¶ 185. Plaintiff alleges broadly that "Defendants" denied him equal protection when "the majority white House membership" expelled him. SAC ¶¶ 164, 186(a). But Speaker Sexton is the only Defendant who participated in the expulsion votes, and he treated Plaintiff and Representative Johnson exactly the same—he voted to expel them both. *See supra* nn.6, 9. Plaintiff therefore fails to state an equal-protection claim.

*Fourth*, Plaintiff fails to identify any similarly situated individuals who were treated more favorably during the 2024 legislative session. Plaintiff identifies no other comparable individual in connection with his allegations about being ignored by Speaker Sexton. SAC ¶ 186(e). And his vague gesture to "Republican, non-Black colleagues" who were not called to order after "commit[ting] similar, or the same behavior" cannot overcome the deficiencies in his factual allegations. SAC ¶ 186(d). Plaintiff has identified no colleague who, for instance, proposed a nongermane amendment, read an amendment that had already been ruled out of order during debate, made accusations of "racism within the Republican caucus" during debate, or accused colleagues of "support[ing] the

24

January 6th insurrection." SAC ¶¶ 93-96.

E.    **Plaintiff fails to state a bill-of-attainder claim.**

Plaintiff's bill-of-attainder claim fails as a matter of law. *See* SAC ¶¶ 193-201. Article I, Section 10, of the U.S. Constitution provides that "[n]o State shall … pass any Bill of Attainder." A bill of attainder is a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*, 468 U.S. 841, 846-47 (1984) (citation omitted). The Bill of Attainder Clause imposes a "safeguard against legislative exercise of the judicial function." *Song v. City of Elyria*, 985 F.2d 840, 844 (6th Cir. 1993) (citation omitted). But "[w]here the role is traditionally a legislative function, not a judicial function, the Bill of Attainder Clause does not outlaw legislative action against a specific legislator." *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994).

The Bill of Attainder Clause does not apply here because the House's action to discipline one of its own members is legislative, not judicial. *See supra* pp.12-16. The Tennessee Constitution empowers the House to "determine the rules of its proceedings, punish its members for disorderly behavior, and, with the concurrence of two-thirds, expel a member." Tenn. Const. art. II, § 12. "Because the Tennessee Constitution confers that power on the legislature, it is a legislative power" that does not implicate the Bill of Attainder Clause. *Durham v. Martin*, 388 F. Supp. 3d 919, 935 (M.D. Tenn. 2019), *aff'd sub nom. Durham v. McWhorter*, 789 F. App'x 533 (6th Cir. 2020). That is why this Court has confirmed that a "resolution to expel [a representative] from the Tennessee House of Representatives was not a bill of attainder." *Id.*; *cf. Zilich*, 34 F.3d at 360, 362-63 ("city council resolution denouncing plaintiff" was not a bill of attainder). There is no basis to reach a different result here.

## CONCLUSION

Plaintiff's complaint should be dismissed in its entirety with prejudice because Plaintiff could not remedy its legal defects.

Dated: November 27, 2024

Respectfully submitted.

TODD DISHER*
MATTHEW H. FREDERICK*
Lehotsky Keller Cohn LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350
todd@lkcfirm.com
matt@lkcfirm.com

JONATHAN SKRMETTI (BPR #031551)
Attorney General and Reporter

/s/ Whitney D. Hermandorfer
WHITNEY D. HERMANDORFER (BPR #041054)
Director of Strategic Litigation
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-3491
whitney.hermandorfer@ag.tn.gov

SHANNON GRAMMEL*
Lehotsky Keller Cohn LLP
200 Massachusetts Avenue, NW, Suite 700
Washington, DC 20001
shannon@lkcfirm.com

*admitted pro hac vice*

*Counsel for Defendants Representative Cameron Sexton, Tammy Letzler, Bobby Trotter, and Daniel Hicks*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of November 2024, I filed the foregoing electronically through the Court's CM/ECF System and thereby served the following:

David W. Garrison
Jerry E. Martin
Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
200 31st Avenue North
Nashville, TN 37203
615-244-2202
Fax: 615-252-3798
Email: dgarrison@barrettjohnston.com
jmartin@barrettjohnston.com
stift@barrettjohnston.com

C. William Phillips
Covington & Burling, LLP
The New York Time Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
Email: cphillips@cov.com

R. Gregory Rubio
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-5237
Fax: (202) 778-5237
Email: grubio@cov.com

**Counsel for Plaintiff**
**Representative Justin Jones**

Whitney D. Hermandorfer
Office of the Tennessee Attorney General and
  Reporter
P.O. Box 20207
Nashville, TN 37202
(615) 741-3491
Email: whitney.hermandorfer@ag.tn.gov

Todd Disher*
Matthew H. Frederick*
Lehotsky Keller Cohn LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350
Email: todd@lkcfirm.com
matt@lkcfirm.com

Shannon Grammel*
Lehotsky Keller Cohn LLP
200 Massachusetts Avenue, NW, Suite 700
Washington, DC 20001
Email: shannon@lkcfirm.com

*\* admitted pro hac vice*

**Counsel for Defendants**
**Representative Cameron Sexton, Tammy**
**Letzler, Bobby Trotter, and Daniel Hicks**

/s/ Whitney D. Hermandorfer
Whitney D. Hermandorfer