# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**REPRESENTATIVE JUSTIN JONES**, in his personal capacity,

   *Plaintiff*

v.

**REPRESENTATIVE CAMERON SEXTON**, in his individual capacity and in his official capacity as the Speaker of the Tennessee House of Representatives; **TAMMY LETZLER**, in her individual capacity and in her official capacity as the Chief Clerk for the Tennessee House of Representatives; **BOBBY TROTTER**, in his individual capacity and in his official capacity as the Chief Sergeant-at-Arms for the Tennessee House of Representatives; and **DANIEL HICKS**, in his individual capacity and in his official capacity as the Assistant Chief Clerk and Parliamentarian for the Tennessee House of Representatives,

   *Defendants*.

Case No. 3:23-cv-01033
Judge Eli J. Richardson
Magistrate Judge Alistair E. Newbern

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SUPPLEMENTAL AND AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

COUNTERSTATEMENT OF FACTS ................................................................ 1

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ........................................................................................................ 5

I.   **This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims.** ........................ 5

    A.    Plaintiff Has Standing. ............................................................................ 5

            1.    *Plaintiff Satisfies the Injury-in-Fact Requirement.* ...................... 5

            2.    *Plaintiff's Injuries Are "Fairly Traceable" to Defendants' Actions.* ......... 6

            3.    *Plaintiff Satisfies the Redressability Requirement.* ...................... 7

            4.    *Plaintiff's House Rules Claims Are Not Speculative.* ................. 8

    B.    "Sovereign Immunity" Does Not Defeat this Court's Jurisdiction ......................... 8

II.  **Defendants' Claimed Personal Immunities Do Not Defeat Plaintiff's Claims.** .......... 11

    A.    Defendants' Are Not Entitled to Absolute Legislative Immunity. ...................... 11

    B.    Defendants Are Not Entitled to Qualified Immunity ........................................... 15

            1.    *Plaintiff's Clearly Established First Amendment Rights Were Violated.* ........................................................... 15

            2.    *Plaintiff's Due Process Clause Rights Were Violated.* ............. 17

            3.    *Plaintiff's Equal Protection Rights Were Violated.* ................... 18

III. **Plaintiff Has Stated Claims For Which Relief May Be Granted.** ............................... 18

    A.    Plaintiff has Sufficiently Pled His First Amendment Claims. ............................. 18

    B.    Plaintiff has Sufficiently Pled His Due Process Claims. ..................................... 22

    C.    Plaintiff has Sufficiently Plead His Equal Protection Claim. .............................. 23

**TABLE OF AUTHORITIES**

CASES                                                                                    Page(s)

*Alia v. Michigan Sup. Ct.*,
   906 F.2d 1100 (6th Cir. 1990) ...............................................................13

*Anders v. Cuevas*,
   984 F.3d 1166 (6th Cir. 2021) ...............................................................12

*Ark. Educ. Television Comm'n v. Forbes*,
   523 U.S. 666 (1998)................................................................................11

*Baggett v. Bullitt*,
   377 U.S. 360 (1964)................................................................................21

*Baker v. Carr*,
   369 U.S. 186 (1962)..........................................................................11, 18

*Bd. Of Cnty. Comm'rs, Wabaunsee Ctnty., Kan. v. Umbehr*,
   518 U.S. 668 (1996)................................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................18, 25

*Benison v. Ross*,
   765 F.3d 649 (6th Cir. 2014) ...............................................................14

*Bogan v. Scott-Harris*,
   523 U.S. 44 (1998)..................................................................................12

*Boler v. Earley*,
   865 F.3d 391 (6th Cir. 2017) .................................................................9

*Bond v. Floyd*,
   385 U.S. 116 (1966)......................................................................*passim*

*Boquist v. Courtney*,
   32 F.4th 764 (9th Cir. 2022) .................................................................20

*Brandon v. Holt*,
   469 U.S. 464 (1985)................................................................................14

*Burns v. Reed*,
   500 U.S. 478 (1991)................................................................................11

*Carey v. Piphus*,
   435 U.S. 247 (1978)..................................................................................6

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
    92 F.3d 1412 (6th Cir. 1996) ........................................................................9

*Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*,
    362 F.3d 877 (6th Cir. 2004) ........................................................................4

*Doe v. Univ. of Mich.*,
    78 F.4th 929 (6th Cir. 2023) ........................................................................8

*Dombrowski v. Eastland*,
    387 U.S. 82 (1967) ........................................................................14

*Dugan v. Rank*,
    372 U.S. 609 (1963) ........................................................................10

*Durham v. Martin*,
    388 F. Supp. 3d 919 (M.D. Tenn. 2019) ........................................................................17

*Durham v. Martin*,
    905 F.3d 432 (6th Cir. 2018) ........................................................................5

*Durham v. McWhorter*,
    789 F. App'x 533 (6th Cir. 2020) ........................................................................7, 17

*Gragg v. Ky. Cabinet for Workplace Dev.*,
    289 F.3d 958 (6th Cir. 2002) ........................................................................4, 8

*Gravel v. United States*,
    408 U.S. 606 (1972) ........................................................................14

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ........................................................................21

*Hahn v. Star Bank*,
    190 F.3d 708 (6th Cir. 1999) ........................................................................22

*Hall v. Tollett*,
    128 F.3d 418 (6th Cir. 1997) ........................................................................14

*Hawaii v. Gordon*,
    373 U.S. 57 (1963) (per curiam) ........................................................................10

*Heckler v. Mathews*,
    465 U.S. 728 (1984) ........................................................................6

*Holzemer v. City of Memphis*,
    621 F.3d 512 (6th Cir. 2010) ........................................................................19

iv

*Jackson v. Roslyn Bd. of Educ.*,
  652 F. Supp. 2d 332 (E.D.N.Y. 2009) ................................................................17

*Jefferson v. Fenech*,
  No. 18-12811, 2020 WL 7353517 (E.D. Mich. Dec. 15, 2020) ............................7

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*,
  927 F.3d 396 (6th Cir. 2019) .............................................................................5

*Kennedy v. City of Cleveland*,
  797 F.2d 297 (6th Cir. 1986) .............................................................................5

*Kent v. Ohio House of Representatives Democratic Caucus*,
  33 F.4th 359 (6th Cir. 2022) ........................................................................12, 14

*Kentucky v. Graham*,
  473 U.S. 159 (1985).....................................................................................9, 14

*Kilbourn v. Thompson*,
  103 U.S. 168 (1881)..........................................................................................14

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
  944 F.3d 613 (6th Cir. 2019) ...........................................................................15

*Kucinich v. Forbes*,
  432 F. Supp. 1101 (N.D. Ohio 1977)............................................................10, 20

*Leach v. Shelby Cnty. Sheriff*,
  891 F.2d 1241 (6th Cir. 1989) ..........................................................................14

*Lewis v. Clarke*,
  581 U.S. 155 (2017)..........................................................................................14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)........................................................................................6, 7

*Marcilis v. Twp. of Redford*,
  693 F.3d 589 (6th Cir. 2012) .............................................................................7

*McAfee v. Cauthorne*,
  No. 2:21CV00033, 2022 WL 2118982 (W.D. Va. June 13, 2022) .....................12

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)..........................................................................................23

*Mills v. Alabama*,
  384 U.S. 214 (1966)....................................................................................15, 16

v

*Ohio Nat'l Life Ins. Co. v. United States*,
    922 F.2d 320 (6th Cir. 1990) ....................................................................4

*Painter v. Shalala*,
    97 F.3d 1351 (10th Cir. 1996) ..................................................................10

*Pearson v. Callahan*,
    555 U.S. 223 (2009)..................................................................................15

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..................................................................................9, 10

*Powell v. McCormack*,
    395 U.S. 486 (1969)..................................................................................14

*S & M Brands, Inc. v. Cooper*,
    527 F.3d 500 (6th Cir. 2008) ......................................................................9

*Siefert v. Hamilton Cnty.*,
    951 F.3d 753 (6th Cir. 2020) ....................................................................16

*Siggers-El v. Barlow*,
    412 F.3d. 693 (6th Cir. 2005) ...................................................................19

*Snowden v. Hughes*,
    321 U.S. 1 (1944)......................................................................................18

*Sup. Ct. of Va. v. Consumers Union of U. S., Inc.*,
    446 U.S. 719 (1980)........................................................................11, 12, 13

*Taylor v. Duncan*,
    720 F. Supp. 2d 945 (E.D. Tenn. 2010)......................................................5

*Tenn. State Conf. of NAACP v. Lee*,
    No. 3:23-cv-00832, 2024 WL 3896639 (M.D. Tenn. Aug. 21, 2024)....................24

*Tenney v. Brandhove*,
    341 U.S. 367 (1951)..................................................................................11

*United States v. Ballin*,
    144 U.S. 1 (1892)......................................................................................11

*United States v. Brewster*,
    408 U.S. 501 (1972)..................................................................................12

*Uzuegbunam v. Preczewski*,
    592 U.S. 279 (2021)....................................................................................7

vi

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
535 U.S. 635 (2002)................................................................................9

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)..........................................................................23, 25

*Warth v. Seldin.*,
422 U.S. 490 (1975).................................................................................4

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021)...................................................................................9

*Ex parte Young*,
209 U.S. 123 (1908).................................................................................9

*Zilich v. Longo*,
34 F.3d 359 (6th Cir. 1994) ...................................................................16

CONSTITUTIONAL PROVISIONS, STATUTES, REGULATIONS & RULES

U.S. Const. amend. 1 ...............................................................................15

# INTRODUCTION

The people of Tennessee's 52nd Legislative District have elected Plaintiff, State Representative Justin Jones, three times now to be their voice in the Tennessee Legislature. Yet, Defendants, led by Defendant Sexton, have repeatedly sought to silence Plaintiff, in violation of his rights under the U.S. and State Constitutions, to prevent him from dissenting on issues critical to the people of District 52 and the entire State, including reasonable gun control. The violations of Plaintiff's rights included actions taken against him in April 2023, when Defendants unlawfully expelled Plaintiff and two Democratic colleagues from the Tennessee House of Representatives (the "House"). These violations have continued, and indeed have grown even more aggressive and egregious, in House legislative sessions since that time, including throughout the most recent 2024 term, when Defendants repeatedly and arbitrarily enforced the House Rules of Order to silence Plaintiff for the content of his speech. Plaintiff's recently filed Supplemental and Amended Complaint (the "Complaint"), seeks relief from this Court for these violations, including to protect Plaintiff from the ongoing and continuing violations in future legislative sessions, including the 2025 session that begins on January 14.

By this motion, Defendants seek to silence Plaintiff's voice in this Court too, asking the Court to deprive Plaintiff of his day in court and the chance to protect his rights. Defendants' motion is wholly without merit. Plaintiff's claims as pled readily satisfy the pleading standard under Rule 12 and should be allowed to proceed. These claims are of great importance not only to Plaintiff, but also to the voters who elected him; the Court should reject Defendants' attempts to keep Plaintiff's claims from being heard.

# COUNTERSTATEMENT OF FACTS

This lawsuit challenges Defendants' campaign to silence dissent in the Tennessee House of Representatives—a campaign led by Defendant Sexton against Plaintiff. The immediate

backdrop to this lawsuit began on March 27, 2023, when three 9-year-old students and three adults were slaughtered at The Covenant School in Nashville, Tennessee by a mass shooter wielding legally purchased guns. Complaint, Dkt. No. 52 at ¶ 22. In the days that followed, Plaintiff used his platform to protest House leadership's refusal to consider common sense gun safety measures. *Id.* at ¶ 23. On March 30, a day after the State Senate announced that no gun-related bills would be considered in 2023, *id.* at ¶ 26, Plaintiff again sought to bring attention to this critical issue, including by raising a parliamentary inquiry regarding Defendant Sexton's ban of Plaintiff's "Halt the Assault" lapel pin. *Id.* at ¶ 28. In retaliation for this inquiry, Defendants silenced Plaintiff by turning off his microphone and voting machine. *Id.* at ¶¶ 28–30. Deprived of any other means to dissent, Plaintiff, along with Representatives Justin Pearson and Gloria Johnson, entered the House well to speak about and protest the House's inaction for 16 minutes before voluntarily and peacefully departing. *See id.* ¶¶ 31–33.

Defendants, led by Defendant Sexton and his House Republican supermajority, responded swiftly to punish Plaintiff for his speech, removing him from all of his committee assignments, *id.* at ¶¶ 36–37, revoking his access to the Capitol and legislative garage, *id.* at ¶ 40, and ultimately, on April 6, 2023, voting to expel Plaintiff and Representative Pearson from their elected offices, *id.* at ¶¶ 41–53. Only Plaintiff and Representative Pearson, both of whom are Black, were expelled; Representative Johnson, who is white, was not. *See id.* at ¶ 53. Plaintiff's expulsion was unprecedented: In the 200-plus year history of the Tennessee House, the body has only expelled members on three occasions due to alleged criminal conduct. *Id.* at ¶ 42. No member has ever been expelled for speaking on a matter of public concern. *Id.*

Plaintiff was reinstated to his seat, first on temporarily on April 10, 2023, by vote of the Metropolitan Council of Nashville and Davidson County, *id.* at ¶ 58, and then permanently by an

overwhelming majority of the voters of the 52nd Legislative District in an August 2023 Special Election, *id.* at ¶¶ 60–63. On August 21, 2023, the House reconvened for a Special Legislative Session called by the Tennessee Governor to consider public and school safety, including gun violence. *Id.* at ¶ 65. During the Special Session, Defendant Sexton implemented and enforced a new package of procedural rules (the "2023 Special Session Rules," *see id.* ¶ 66) that included unconstitutional provisions giving himself expansive powers to control debate, including by silencing any member for up to the full duration of the legislative session. *Id.* at ¶¶ 66–87. On August 28, 2023, Defendant Sexton ruled Plaintiff out of order for raising plainly relevant points of dissent during debate, silencing him for the remainder of the legislative day under the 2023 Special Session Rules. *Id.* at ¶¶ 80–87. Among other repercussions, this prevented Plaintiff from bringing a motion for a vote of "no confidence" in Defendant Sexton's leadership of the House, which he had previewed to all of his House colleagues the day before. *Id*. at ¶ 84.

Defendants' abuse of power to silence Plaintiff continued throughout the 2024 legislative session and appears likely to continue through the upcoming 2025 session. When the 2024 House session began on January 9, 2024, Defendants implemented similar House Rules (the "2024 New Rules"), which enabled Defendant Sexton and his Republican supermajority to silence Plaintiff without justification the very next day.[1] On January 11, 2024, Defendant Sexton confirmed that he would not re-seat Plaintiff on the key Education Administration Committee,[2] continuing his and Defendant Letzler's deprivation from April 2023 in retaliation to Plaintiff's protest on the House floor. Complaint at ¶ 37. Defendant Sexton continued to abuse his power

---

[1] Tenn. H. Sess., "House Floor Session – 1/10/2024," House Floor Session.

[2] *See* Tara Suter, *Formerly expelled Tennessee House lawmaker says he's been stripped of committee assignment,* The Hill (Jan. 11, 2024), https://thehill.com/homenews/state-watch/4403802-expelled-tennessee-house-lawmaker-committee/

and target Plaintiff throughout the 2024 Session, singling him out from among all House members and repeatedly silencing him and censuring him throughout the session to prevent him from dissenting. *Id* at ¶¶ 88–115.

Plaintiff filed this lawsuit against Defendants, in their official <u>and</u> individual capacities, for completed and continuing violations of his constitutional rights under the First Amendment,[3] Due Process Clause, and Equal Protection Clause. *See id.* at ¶¶ 103–80. Plaintiff, who won reelection to another two-year term in November 2024, seeks injunctive and declaratory relief to prevent Defendants' continuing constitutional violations, as well as nominal and consequential damages.

## LEGAL STANDARD

In assessing Defendants' Motion to Dismiss, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 880–81 (6th Cir. 2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). The Court need only decide whether Plaintiff properly alleged a basis for subject matter jurisdiction "tak[ing] the allegations in the complaint as true." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

For Defendants' immunity defenses, this Court should apply a heightened legal standard at the Motion to Dismiss stage, specifically placing the burden on the moving entity to show it is entitled to immunity, even taking all allegations in the complaint as true when evaluating the claims of both absolute and qualified immunity. *See e.g., Gragg v. Ky. Cabinet for Workplace*

---

[3] Among these claims are facial and as-applied challenges to offending new House Rules. Defendants' pattern of conduct forecasts that they will adopt similar rules in future sessions, including one that gavels in on January 14, 2025, absent intervention from this Court.

*Dev.*, 289 F.3d 958, 963 (6th Cir. 2002); *Taylor v. Duncan*, 720 F. Supp. 2d 945, 949 (E.D. Tenn. 2010); *Kennedy v. City of Cleveland*, 797 F.2d 297, 299 (6th Cir. 1986).

## ARGUMENT

Defendants' motion rests on three grounds: (1) this Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) for lack of standing and due to State sovereign immunity, Motion to Dismiss at 6–12; (2) Plaintiff's claims are barred by purported personal immunity defenses, *id.* at 12–16; and (3) the Complaint fails to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6), *id.* at 16–23. As shown below, Defendants fail to satisfy their burden on each issue, and their motion should be denied.

## I.    This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims.

Each of Defendants' arguments that this Court lacks subject matter jurisdiction over Plaintiff's claims is entirely without merit.

### A.    Plaintiff Has Standing.

Plaintiff sufficiently alleges the requisite "injury in fact, causation, and redressability" to establish Article III standing. *Durham v. Martin*, 905 F.3d 432, 433 (6th Cir. 2018).

#### 1.    *Plaintiff Satisfies the Injury-in-Fact Requirement.*

Defendants do not challenge that the Plaintiff satisfies the "injury in fact" requirement. *See* Mot. to Dismiss at 7. Plaintiff alleges a litany of completed and ongoing injuries that are: (1) concrete and particularized; and (2) actual or imminent, not just conjectural or hypothetical. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405–06 (6th Cir. 2019); *see e.g.*, Complaint at ¶ 51 (expulsion from the House); ¶ 37 (removal from Plaintiff's Committees); ¶ 40, (restriction from the Capitol); ¶¶ 65–87 (targeted enforcement under both sets of new

House Rules); ¶¶ 149–60, 178–81 (denial of Plaintiff's procedural due process rights);[4] and ¶¶ 9, 11, 51, 53, 59, 183–92 (intentional racial discrimination).[5]  Defendants' pattern of conduct, including during the 2024 House session, demonstrates that Plaintiff's alleged fear of future violations, including the credible threat that Plaintiff will be targeted and silenced in the 2025 House Session, are concrete and far from conjectural or hypothetical.

2.      *Plaintiff's Injuries Are "Fairly Traceable" to Defendants' Actions.*

Plaintiff satisfies this requirement by alleging a "causal connection between the injury and the conduct complained of," as to each Defendant *i.e.*, that his injury is "fairly traceable" to each defendant and not "the result of the independent action of some third party[.]" *Durham*, 905 F.3d at 434 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Contrary to Defendants' arguments,[6] Plaintiff alleges numerous violations of his constitutional rights that are directly caused by Defendant Sexton.  *See* Complaint at ¶ 2 ("Defendant Sexton shut down the House proceedings entirely, forced the removal of Representative Jones . . . , and then led an illegal and unconstitutional effort to expel [him]."); ¶ 36 ("Defendant Sexton removed [Plaintiff] from all [his] committee assignments"); ¶ 45 (Defendant Sexton "[held] expulsion proceedings against [Plaintiff]"); ¶ 66 (Defendant Sexton implemented the 2023 Special Session Rules); ¶ 79 ("Defendant Sexton used the August 2023 Special Session Rule 18 to violate Representative Jones' right to free speech."); *see also id.* ¶¶ 3, 26–30, 34–38, 40, 49–51, 54–57.  This requirement is thus plainly met as to Defendant Sexton.

---

[4] Deprivations of procedural due process are "actionable for nominal damages without proof of actual injury."  *Carey v. Piphus*, 435 U.S. 247, 266 (1978).

[5] Violations of the Equal Protection Clause are cognizable injuries.  *See Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984).

[6] *See* Mot. to Dismiss at 8.

6

Plaintiff's injuries are traceable to the other Defendants as well. "Plaintiffs suing public officials can satisfy the causation and redressability requirements of standing by demonstrating a meaningful nexus between the defendant and the asserted injury. An official's enforcement of another's policy falls into this category." *Durham*, 905 F.3d at 434 (citation omitted). As alleged, Defendant Letzler, as Clerk, removed Plaintiff from committee assignments and oversaw the unlawful administration of both sets of House Rules. *See* Complaint at ¶¶ 12, 37–38, 149. Defendant Hicks, as Assistant Clerk and Parliamentarian, triggered the unlawful enforcement of both sets of House Rules. *Id.* at ¶¶ 14, 81, 93–94. Defendant Trotter, as Sergeant-at-Arms, revoked Plaintiff's access to the Capitol and legislative parking garage. *Id.* at ¶¶ 13, 40. Plaintiff's allegations have not "group[ed] all defendants together" as Defendants argue, so their authorities are inapposite. Mot. to Dismiss at 8; *see also Jefferson v. Fenech*, No. 18-12811, 2020 WL 7353517, at *2 (E.D. Mich. Dec. 15, 2020) (allegations were not made against defendants by name); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (same).

3.  *Plaintiff Satisfies the Redressability Requirement.*

Plaintiff's claims are redressable by this Court because it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision[,]" granting his request for injunctive relief, committee reinstatement, and declaratory judgments.[7] *Lujan*, 504 U.S. at 561; *see also Durham v. McWhorter*, 789 F. App'x 533, 534 (6th Cir. 2020) (Plaintiffs may seek a prospective injunction against state officials who have 'some connection' to an ongoing constitutional violation."); *Durham*, 905 F.3d at 433 (holding expelled Tennessee Representative

---

[7] Plaintiff also seeks nominal and compensatory damages from Defendants in their individual capacities, which would clearly redress completed injuries. *See* Complaint at ¶¶ 137, 170, 192, and Prayer for Relief; *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 282-83 (2021) (holding that a request for nominal damages satisfies the redressability element of Article II standing).

had standing to sue officials involved with implementing the consequences of his expulsion when seeking these categories of relief). Indeed, given the continuing violations of his rights during the 2024 legislative session, it is clear that relief from the Court will redress Plaintiff's injuries given the pattern of violations for the last two years. Plaintiff's injuries will continue in 2025 and other, future sessions in the absence of the relief sought. *See* Complaint at ¶¶ 115, 133.

4. *Plaintiff's House Rules Claims Are Not Speculative.*

Defendants are wrong that Plaintiff's House Rules claims are speculative and fail to allege an actual claim or controversy.[8] Plaintiff's claims based on Defendants' targeted enforcement of the rules, and in particular Rule 18, are live controversies because he seeks nominal damages for Defendants' completed constitutional violations. *See* Complaint at ¶¶ 65–86, 131–37. Plaintiff's claims seeking prospective injunctive and declaratory relief are also live, and not speculative, controversies given Plaintiff's expectation that Defendants will continue to violate his constitutional rights in the 2025 and other future legislative sessions, an expectation that was shown entirely reasonable by Defendants' ongoing violations during the 2024 Session.

B. "Sovereign Immunity" Does Not Defeat this Court's Jurisdiction.

Defendants' claim to sovereign immunity under the Eleventh Amendment also fails and does not prevent this Court's subject matter jurisdiction. As an initial matter, Defendants bear the burden of showing their entitlement to the protection of sovereign immunity, *see Gragg,* 289 F.3d at 963, which at most only applies to Plaintiff's official-capacity claims and not to

---

[8] Defendants' suggestion that these claims may be "moot" is also baseless. *See* Mot. to Dismiss at 9. A party asserting mootness "bears a heavy burden and must show that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Doe v. Univ. of Mich.*, 78 F.4th 929, 946 (6th Cir. 2023). Given Defendants' ongoing attacks on Plaintiff's right to speak and otherwise express dissent on behalf of his constituents as alleged in the Supplemental and Amended Complaint, Defendants cannot meet that heavy burden here.

8

Plaintiff's individual-capacity claims, *see Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity . . . may possess, such as the Eleventh Amendment.").

Defendants cannot meet their burden because under the well-established *Ex parte Young* rule, Eleventh Amendment sovereign immunity does not apply to or protect against "claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations," which is precisely what Plaintiff alleges here, *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (quoting *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). Because the Eleventh Amendment does not allow state officials to violate federal rights, the *Ex parte Young* exception "permit[s] the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) (citation omitted).

The *Ex parte Young* exception applies when, as here, "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 636 (2002); *see also Ex parte Young*, 209 U.S. 123, 157 (1908); *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). Plaintiff's official capacity claims all fall directly within the *Ex parte Young* exception because Plaintiff suffers an ongoing or threatened future violation of his constitutional rights and is accordingly seeking prospective relief. *See, e.g.*, Complaint at ¶¶ 79–87 (Defendants' repeated use of 2023 Special Session Rules, including Rule 18, to violate Plaintiff's right to free speech); ¶¶ 88–109 (Defendants' use of 2024 New Rules to continue violation of Plaintiff's right to free speech); ¶¶ 178–81 (Defendants' ongoing denial of Plaintiff's procedural due process rights); and Prayer for Relief; *see also Whole Woman's Health v. Jackson*, 595 U.S.

9

30, 47–48 (2021).  Indeed, Plaintiff's need for prospective relief was demonstrated throughout the 2024 legislative session as Plaintiff was targeted and improperly silenced on multiple occasions.  *See, e.g.,* Complaint at ¶¶ 88, 92–100.  Additionally, Plaintiff continues to be excluded from the Education Administration Committee.  Defendants have offered no indication that their course of conduct will improve and, indeed, in light of Defendants' repeated violations during the 2024 session, Plaintiff fears and expects that Defendants will continue to improperly silence him throughout the 2025 session as well and seeks relief for precisely this reason.

Plaintiff's claims do not "target[] the sovereign" or ask "this Court to assert control over the internal operation of the Tennessee House of Representatives," as Defendants assert.  Mot. to Dismiss at 11.  To the contrary, Plaintiff specifically does not seek relief from the State of Tennessee.  Instead, Plaintiff asks this Court to uphold the supremacy of federal law by enjoining Defendants, in their official capacity, from continuing to violate Plaintiff's established, constitutional rights—relief that is specifically authorized under these circumstances by *Ex parte Young* and that courts in this Circuit have consistently granted in similar circumstances.  *See*, *e.g.*, *Kucinich v. Forbes*, 432 F. Supp. 1101, 1117 (N.D. Ohio 1977); *see also Bond v. Floyd*, 385 U.S. 116 (1966) (reversing district court's dismissal of State representative's complaint seeking to enjoin officers of the Georgia legislature and the Secretary of state based on allegations that exclusion violated his rights under the First Amendment). [9]

---

[9] The authorities cited by Defendants are inapposite and not to the contrary, including because none of them involve valid claims under *Ex parte Young*.  The first three cases cited do not concern state sovereign immunity.  They describe the boundaries of federal sovereign immunity and characterize suits seeking relief that is categorically different than Plaintiff.  *See Dugan v. Rank*, 372 U.S. 609 (1963); *Hawaii v. Gordon*, 373 U.S. 57 (1963) (per curiam); *and see Painter v. Shalala*, 97 F.3d 1351 (10th Cir. 1996).  The remaining case cited is also inapplicable here, as the ruling does not apply to federal constitutional challenges brought against state officers.  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106.

Finally, Defendants are wrong that application of the *Ex parte Young* exception here offends separation of powers principles. *See* Mot. to Dismiss at 10–12. The legislature's status as a co-equal branch of government is not a license to trample constitutional rights, and a federal court may provide a remedy where they do so. *Baker v. Carr*, 369 U.S. 186 (1962). For example, in *Bond*, the Supreme Court unanimously held that a State legislature could not limit free speech rights by excluding an elected official. 385 U.S. 116. The rule applies equally to a legislature's power to enforce rules of "order and decorum," whether real or, as here, pretextual, in its proceedings: Such rules may not be used to suppress a legislator's "expression merely because public officials oppose the speaker's views," and federal courts should intercede when they do. *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 678–79 (1998); *see also United States v. Ballin*, 144 U.S. 1, 5 (1892) (Congress "may not by its rules ignore constitutional restraints or violate fundamental rights."). Here, Plaintiff's constitutional rights have been violated and continue to be threatened, and this Court is empowered to step in.

## II. Defendants' Claimed Personal Immunities Do Not Defeat Plaintiff's Claims.

Defendants have also asserted two personal immunities, absolute legislative immunity and qualified immunity, neither of which can dispose of Plaintiff's individual capacity claims. *See* Mot. to Dismiss at 12–17.

### A. Defendants' Are Not Entitled to Absolute Legislative Immunity.

Legislative immunity shields state legislators from "civil liability for acts done within the sphere of legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). In broad strokes, the common-law doctrine of legislative immunity shields state legislators from liability for their legislative acts. *See Supreme Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732 (1980). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question," *Burns v. Reed*, 500 U.S. 478, 486

(1991), and Defendants have failed to do so for two main reasons. First, Plaintiff's claims do not seek to hold Defendants liable for any "legislative act"; rather, the challenged conduct here constitute administrative and enforcement actions that are merely "casually or incidentally related to legislative affairs," *United States v. Brewster*, 408 U.S. 501, 528 (1972), and thus fall outside the scope of this immunity's protection. Second, even if Defendants' challenged acts constitute "legislative activity," legislative immunity does not apply to official-capacity claims.

The availability of Defendants' legislative immunity defense "turns on the nature of the act" in question, *see, e.g.*, *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998), such that it applies only where the challenged acts, when "stripped of all considerations of intent and motive," were legislative rather than administrative or executive. *Anders v. Cuevas*, 984 F.3d 1166, 1181 (6th Cir. 2021). The Sixth Circuit looks to two factors: (1) whether a defendant's actions were "legislative in form., *i.e.*, whether they were integral steps in the legislative process"; and (2) whether a defendant's actions were "legislative in substance, *i.e.*, whether the actions bore all the hallmarks of traditional legislation, including whether they reflected . . . discretionary, policymaking decision[s] implicating the budgetary priorities of the government and the services the government provides to its constituents." *Id.* at 1181–82. Thus, legislative immunity can apply to activities such as voting on bills and resolutions, holding and participating in committee hearings, issuing subpoenas, circulating information to other legislators, making state budgetary decisions, voting to remove a legislative member from a state legislature's party caucus, or determining how to distribute a party caucus' resources. *See Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 366 (6th Cir. 2022).

However, the immunity does not apply to activities by legislators or legislative aides "in their enforcement capacities." *Consumers Union*, 446 U.S. at 736; *see also McAfee v.*

12

*Cauthorne*, No. 2:21CV00033, 2022 WL 2118982 at *5 (W.D. Va. June 13, 2022) (holding that defendant municipal legislator was not entitled to a legislative immunity defense for legislative decision to terminate an employee because that act was "administrative in nature"); *Alia v. Michigan Sup. Ct.*, 906 F.2d 1100, 1107 (6th Cir. 1990) (Wellford, J., dissenting) (analyzing *Consumers Union* and concluding "to the extent the individual justices acted in a *rulemaking* capacity, they are entitled to legislative immunity, but to the extent they acted in an enforcement capacity, they are not entitled to claim legislative immunity").

Under this test, Defendants' challenged acts constitute administrative and enforcement, rather than legislative, conduct that are not protected by legislative immunity. This is unquestionably the case for Defendant Letzler, who enforced Plaintiff's removal from committee; Defendant Hicks, who enforced 2023 Special Session Rule 18 to silence Plaintiff; and Defendant Trotter, who enforced the order barring Plaintiff's access to the Capitol. These actors' participation was solely in an enforcement capacity and thus not excused by legislative immunity. *See id.* The answer is no different for Defendant Sexton, who, although obviously empowered with legislative responsibilities as Speaker, is responsible for Plaintiff's injuries from his actions in an administrative capacity to enforce and to silence Plaintiff under 2023 Special Session Rule 18. Indeed, Defendants admit as much, arguing that they "simply enforced" the House rules. Mot. to Dismiss at 13.

Defendants' claim that this enforcement "falls in the heartland of legislative immunity," *id.*, is wrong. Because Defendants violated Plaintiff's rights in the course of administrative and enforcement activities, the conduct is beyond legislative bounds and not protected by this immunity. The challenged conduct falls squarely within the U.S. Supreme Court's warning against extending or using this immunity so as to privilege "illegal or unconstitutional conduct

beyond that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings." *Gravel v. United States*, 408 U.S. 606, 620 (1972) (citing *Kilbourn v. Thompson*, 103 U.S. 168 (1880); *Dombrowski v. Eastland*, 387 U.S. 82 (1967); *Powell v. McCormack*, 395 U.S. 486 (1969)). Accordingly, this Court must not dismiss Plaintiff's individual capacity claims under sovereign immunity.

This Court should also reject Defendants' argument that their asserted legislative immunity defense applies to Plaintiff's official-capacity claims. Defendants' argument on this issue is in direct defiance of an overwhelming body of controlling authority from both the U.S. Supreme Court and the Sixth Circuit have repeatedly holding the opposite: Absolute legislative immunity applies only to individual-capacity claims and does not protect defendants sued in their official capacities. *See Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 677 n.* (1996) ("Because only claims against [defendants] in their official capacities are before us, and because immunity from suit under § 1983 extends to public servants only in their *individual* capacities, the legislative immunity claim is moot." (emphasis in original; internal citation omitted)); *Benison v. Ross*, 765 F.3d 649, 665 (6th Cir. 2014) ("[P]ersonal immunity defenses, such as absolute immunity or qualified immunity, *are not available to government officials defending against suit in their official capacities*." (emphasis added)).[10] Defendants fail to cite a single binding decision for this argument, instead, for example, citing a case without any official capacity claims at all. *See Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 364 (6th Cir. 2022), Dkt. No. 1 (filed Dec. 16, 2020) (seeking money damages and injunctive relief from Ohio House of Representatives Democratic Caucus and Ohio State

---

[10] *See also Lewis v. Clarke*, 581 U.S. 155, 162–63 (2017); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Hall v. Tollett*, 128 F.3d 418, 430 (6th Cir. 1997); *Brandon v. Holt*, 469 U.S. 464, 472–73 (1985); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989).

Representatives in only their *individual* capacities).  Accordingly, Defendants have failed to show how legislative immunity bars any of Plaintiff's claims.

B.    Defendants Are Not Entitled to Qualified Immunity.

"Qualified immunity shields government officials from standing trial for civil liability in their performance of discretionary functions, unless their actions violate clearly established rights."  *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 626 (6th Cir. 2019).  A defendant state official is not entitled to qualified immunity where: (1) the facts alleged constitute a constitutional violation; and (2) the constitutional right was clearly established such that a reasonable official would have known that their conduct constituted a violation.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Both requirements are met here, where each of the alleged violations involved clearly established constitutional rights.  Because Defendants' actions violate Plaintiff's clearly established rights, qualified immunity is not available.[11]

1.    *Plaintiff's Clearly Established First Amendment Rights Were Violated.*

The right of individuals, including legislators in a state legislature, to speak on political or governmental issues is one of the bedrock principles of American constitutional government.  *See* U.S. Const. amend. 1; *see also Bond,* 385 U.S. at 136.  It is beyond dispute that Plaintiff's basic right of free speech, and his right to be free from punishment or retribution for expressing his views on issues of political importance, is a clearly established constitutional principle that every single Defendant did or reasonably should have known.  *Id.*; *see also Mills v. Alabama*, 384 U.S. 214, 218 (1966) (the First Amendment was adopted in part to "protect the free

---

[11] Additionally, qualified immunity is not dispositive because Plaintiffs' official-capacity claims seek prospective relief from Defendants in their official capacities, as to which the *personal* defense of qualified immunity is inapplicable.  *See supra* at Part I.B.

15

discussion of governmental affairs"). This alone should be sufficient to defeat Defendants' qualified immunity claim as to Plaintiff's First Amendment claim.

It is also clearly established that, although the legislatures may generally establish and enforce rules of decorum, they may not rely on those rules to silence or otherwise punish individual legislators for the content of their speech. In the leading case, *Bond*, for example, the United States Supreme Court made clear that "[t]he manifest function of the First Amendment . . . requires that legislators be given the widest latitude to express their views on issues of policy." *Bond,* 385 U.S. at 135-36; *see also Mills*, 384 U.S. at 218 (the First Amendment was adopted in part to "protect the free discussion of governmental affairs"). Defendants, and all government officials, have been on clear notice that the free exercise of political speech is protected in the legislative context for at least a half-century. The Sixth Circuit has also recognized that legislators have a clearly established right to First Amendment expression and that threats of retaliation in response are not entitled to the protection of qualified immunity. *See Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994) (holding that "retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment" and affirming that plaintiff city council member's expression of political view was the exercise of a clearly established First Amendment right and that defendant government officials who threatened plaintiff in response were not entitled to qualified immunity).

This right is clearly established, and based on Plaintiff's allegations, which must be taken as true for purposes of this motion, Defendants have plainly violated this right by seeking to punish and retaliate against Plaintiff for exercising protected speech. *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762 (6th Cir. 2020) (holding that, in a qualified immunity dispute, the court must take "all the facts as true and reading all inferences in the plaintiff's favor."); see, e.g.,

Complaint at ¶¶ 65–87 (targeted enforcement under both sets of new House Rules to silence Plaintiff). Accordingly, qualified immunity does not apply to protect Defendants from Plaintiff's First Amendment claims. At the very least, Plaintiff's exercise of his First Amendment right to free speech and Defendants' retaliatory actions and threats in response thereto, as alleged in the Amended Complaint, along with Defendants' claim to qualified immunity, at this stage present an issue of fact as to which Plaintiff is entitled to discovery.

2.    *Plaintiff's Due Process Clause Rights Were Violated.*

Courts throughout the country, including in this Circuit, have recognized that health and retirement benefits can constitute a protectable property right for Due Process purposes. *See e.g., Durham v. Martin*, 388 F. Supp. 3d 919 (M.D. Tenn. 2019) *aff'd sub nom.*, *Durham v. McWhorter*, 789 F. App'x 533 (6th Cir. 2020); *see also Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 343 (E.D.N.Y. 2009) ("[I]n light of statutory protections afforded to retirees of the State, the Court finds that [Plaintiff] has a constitutionally protected property interest in health insurance benefits."). Defendants misconstrue the narrow property interest that Plaintiff seeks to protect by arguing that the Plaintiff only alleged a protected property interest in legislative office or in committee assignments. Mot. to Dismiss at 21. The ousted legislator in *Durham* pursued claims stemming from a denial of *lifetime* benefits, where the vesting schedule is critical to his eligibility, and the Court found that the legislator "sufficiently alleged that he had a vested property interest in the state health insurance benefit." *Durham*, 388 F. Supp. 3d at 942. Here, Plaintiff pursues claims related to (1) the denial of healthcare during his unconstitutional expulsion and (2) the denial of seniority credit towards the House's retirement plan. *See* Complaint at ¶¶ 178–82. It would be nonsensical for the Plaintiff in *Durham* to be able to bring due process claims for lifetime benefits that he had not yet earned if the Plaintiff here cannot bring claims related to benefits he earned upon his election to the Tennessee Legislature's 113th

General Assembly. Defendants knew, or should have known, that stripping Plaintiff of his benefits and earned credit toward future benefits without adequate due process protections violated his constitutional rights.

3. *Plaintiff's Equal Protection Rights Were Violated.*

While legislative expulsions are exceedingly rare, and discriminatory expulsions are even more so, the law clearly establishes Plaintiff's constitutional right not to be subjected to racial discrimination in the course of his governmental duties, as he was here. Courts typically give legislatures wide latitude, including to govern themselves, but consistently affirm that they must abide by the Fourteenth Amendment, even when exercising their authority in legislative contexts. *See e.g., Baker*, 369 U.S. 186 (holding that the Equal Protection Clause of the Fourteenth Amendment limits the authority of a State Legislature in partisan redistricting); *Snowden v. Hughes*, 321 U.S. 1, 11 (1944) ("Where discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights"). Defendants certainly knew that the racial discrimination that Plaintiff alleges in his complaint violated his constitutional rights, as would any reasonable legislator or legislative staff member.

**III. Plaintiff Has Stated Claims For Which Relief May Be Granted.**

Construing the allegations liberally, assuming all alleged facts to be true, and drawing all reasonable inferences in favor of the Plaintiff, as the Court must at this stage, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007), Plaintiff's claims are legally sufficient.

A. <u>Plaintiff has Sufficiently Pled His First Amendment Claims.</u>

Plaintiff states two categories of claims under the First Amendment: those related to (1) the retaliation against his protected speech and (2) the adoption of vague new House Rules

(hereafter the "2023 Special Session Rules") that chill his protected speech. On each claim, Plaintiff has more than sufficiently pled facts that, entitle him to recover.

### 1. Retaliation

The First Amendment Retaliation claims in Plaintiff's Supplemental and Amended Complaint are sufficient so long as Plaintiff alleges "that 1) he engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)). Plaintiff alleges at least two violations of his First Amendment Rights that meet this standard.

First, Plaintiff alleges that Defendants violated his First Amendment rights by retaliating against him, including by removing him from his committee seats and then expelling him from the House altogether on April 6, 2023, as punishment for his speech on March 30, 2023, urging the House of Representatives to undertake and consider reasonable gun control measures. *See* Complaint at ¶¶ 26, 32, 36–38, 40, 51. Second, Plaintiff alleges that Defendants again violated his First Amendment rights on August 28, 2023, when they targeted and silenced him under the Rules for the remainder of the legislative day in retaliation for raising on-topic points in dissent on two bills before the House and to prevent him from bringing a vote of no confidence against Defendant Sexton. *See id.* at ¶¶ 79–80, 82–85. Defendants thus took adverse action against Plaintiff in response to his having engaged in protected speech conduct.

Defendants' meritless arguments to the contrary, at most, go to questions of proof that are irrelevant at this pleading stage. First, Defendants argue incorrectly that Plaintiff's free speech rights are limited because he spoke in a legislative context. *See* Mot. to Dismiss at 17–19.

While the legislative context may be "a unique setting" requiring unique considerations, *see id.* at 16, legislators unquestionably enjoy broad First Amendment protections. *See Bond*, 385 U.S. at 135–36 ("The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy."); *Kucinich*, 432 F. Supp. at 1112 ("Surely a legislative body rates at least equal to a classroom as to the right to express opinions and ideas"); *Boquist v. Courtney*, 32 F.4th 764, 774–75 (9th Cir. 2022) (elected officials may raise First Amendment retaliation claims stemming from speech made in legislative contexts).

Second, Defendants argue that Plaintiff has failed to "establish the requisite 'causal connection'" because the "discipline" Defendants meted out was a result of Plaintiff's "lack of decorum" not for the "content of his speech." *See* Mot. to Dismiss at 18. Defendants thus helpfully acknowledge that they took adverse actions in response to Plaintiff's speech on each occasion, and only argue that he was not punished as a result of the "content" of what he said. *Id.* This is a factual dispute as to the reason why the adverse action was taken.[12] For purposes of this motion, though, all that matters is that Plaintiff has alleged that the punishments Defendants admit to having undertaken were as a result of his protected speech in demanding that the House undertake a serious gun control discussion, *see, e.g.*, Complaint at ¶¶ 125–139, and in raising meaningful objection to Republican-sponsored bills that he believed did not make the children of

_____

[12] As Plaintiff alleges and will prove at trial, Defendants unquestionably punished him for what he said, not because he violated "decorum." Violations of decorum occur daily in all manner of form and this was only the fourth expulsion proceeding in the 200-year history of the House. Plaintiff instead was expelled for what he said, i.e., protesting Defendant Sexton's refusal to allow any consideration of meaningful ways to protect the children of Tennessee from gun violence. Likewise, he was ruled "out of order" and silenced in August 2023 not because of any violation of decorum but because he dissented and raised objections to bills that did too little to protect the people of Tennessee.

20

Tennessee safer, *see, e.g.*, *id.* at ¶ 132. Taken as true and with all reasonable inferences resolved in Plaintiff's favor, these allegations are more than enough to entitle Plaintiff to relief.

### 2. *2023 Special Session Rules*

Likewise, Plaintiff has sufficiently pled a claim seeking a declaratory judgment that the Rules from the August 2023 Special Session and the 2024 Session Rules are unconstitutional as written and as enforced, and violate Plaintiff's rights under the First Amendment. *See id.* at ¶ 132–34. "[W]here a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.'" *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). "Uncertain meanings" within the New 2024 Rules require Plaintiff to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964). Based on facts as alleged by Plaintiff, Defendants' New 2024 Rules and 2023 Special Session Rules, and in particular Rules 2 and 18 of the New 2024 Rules, plainly chill speech and risk infringing on constitutionally protected speech. For example, Rule 18 gives the Speaker unilateral power to rule members "out of order" for statements deemed off topic but does not provide adequate notice of how such determination is made. *See* Complaint at ¶ 142. And both rules provide for draconian enforcement powers that allow Defendant Sexton to silence Plaintiff and other members for disproportionately long and punitive periods of time for purported violations of "decorum" or for being "out of order." *See id.* at ¶¶ 68–78. Indeed, Defendant Sexton exercised the punitive enforcement power under Rule 18 on August 28, 2023 to silence Plaintiff from speaking and to prevent his bringing his "no confidence" vote to the floor by deeming him "out of order" for making germane statement during the normal course of debate. *Id.* at ¶¶ 79–80, 82–83.

Moreover, although the Rules from the August 2023 Special Session were not reimplemented in full for the 2024 House session, the 2024 New Rules implemented by Defendant Sexton continue to have a chilling effect, including "decorum" and "out of order" rules that allow individual members to be silenced for days at a time, and have already been used by Defendant Sexton to silence Plaintiff when speaking on an germane issue before the House. These facts, if proven, entitle Plaintiff to the declaratory relief that he seeks to prevent Defendant Sexton from continuing to chill and deny Plaintiff and other members' First Amendment rights, and Plaintiff is thus entitled to proceed to discovery on this claim.

      B.      <u>Plaintiff has Sufficiently Pled His Due Process Claims.</u>

"To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Here, Plaintiff alleges a protectable property right in his (1) health benefits during the period of his unconstitutional expulsion and (2) seniority credit for the duration of his entire two-year term. Complaint at ¶ 4. Plaintiff also alleges based on information and belief that he was deprived of these rights when he was expelled from the House in retaliation for his protected speech activities. *Id.* at ¶ 51. Plaintiff is entitled to discovery to determine the extent of the rights and interests of which he was deprived and to prove these at trial.

Finally, Defendants violated Plaintiff's due process rights by refusing to afford him an adequate (and, indeed, the required) process prior to his unprecedented expulsion. For example, the expulsion resolution did not provide adequate notice for hearing. *Id.* at ¶ 45. House Rules

were suspended to allow GOP members to play a deceptively edited video of Plaintiff's protest without prior notice. *Id.* at ¶¶ 47–48. Members of the majority voted to end debate on the expulsion before all members of the minority listed to speak were able to ask their questions. *Id.* at ¶ 48. Plaintiff's allegations, taken as true as the must be at this stage, thus satisfy each element of a procedural due process claim and entitle him to relief if proven at trial. Dismissal under Rule 12(b)(6) is thus inappropriate here.

      B.    <u>Plaintiff has Sufficiently Plead His Equal Protection Claim.</u>

"Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Plaintiffs need not show that "the challenged action rested solely on racially discriminatory purposes" as "[r]arely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern[.]" *Id.*

Plaintiff alleges that Defendants' stated rationale for his disparate treatment, decorum, serves merely as pretext for their discriminatory intent. Allegations that white legislators involved in acts of "comparable seriousness" without facing the retribution endured by Plaintiff is "[e]specially relevant" evidence of pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973). As such, the Complaint shows that Defendants' actions create a rational basis for Plaintiff's equal protection claim. For example, Representative Johnson was the sole white legislator to join Plaintiff in protest, which Defendants consider to be in violation of House decorum rules, and was also the sole legislator to be spared expulsion. Complaint at ¶ 53.[13]

---

[13] Even Plaintiff's Republican colleagues agree that this fact creates a rational basis for Plaintiff's equal protection claim. One colleague told the legislator who cast the deciding vote to spare Rep. Johnson from expulsion, "you brought racism into it." Vivian Jones, *'You hung us out to dry': Leaked audio shows hot tempers inside GOP caucus after expulsion vote*, The Tennessean (Apr. 14, 2023), <u>https://www.tennessean.com/story/news/politics/2023/04/13/you-</u>

Plaintiff was the only individual disciplined for off-topic questions, even though all of his comments were on-topic during the period where the 2023 Special Session Rules applied. *See, e.g., id.* at ¶ 79. Further, Plaintiff was the only individual disciplined by Defendant Sexton for recording on the House floor despite other white legislators doing the same. *Id.* at ¶¶ 98–100. Defendant Sexton routinely ignored the other white legislators engaged in similar conduct as Plaintiff throughout the 2023 and 2024 Sessions, and there are no obvious alternate explanations for this discrepancy. *See, e.g., id.*

Defendants make several mischaracterizations to claim that Plaintiff's disparate treatment is "readily explainable on grounds apart from race." Mot. to Dismiss at 23 (quoting *Tenn. State Conf. of NAACP v. Lee*, No. 3:23-cv-00832, 2024 WL 3896639, at *17 (M.D. Tenn. Aug. 21, 2024)). First, they argue that Plaintiff does not allege that any defendant who censured him on April 27, 2023 spared Representative Freeman who made materially similar statements only moments before. Mot. to Dismiss at 23. However, Defendant Sexton could have censured, or refused to censure, both representatives after Plaintiff spoke given their successive nature and Defendants do not even attempt to provide an alternative basis for Defendant Sexton's decision.

Next, Defendants argue that Representative Johnson was treated differently than Plaintiff during censure proceedings because she did not use a bullhorn to amplify her protest. Mot. to Dismiss at 24. This distinction fails, particularly given the totality of the protest, and cannot readily explain the disparity. The fact that Defendant Sexton himself voted to expel both representatives does not explain the disparity either. In fact, it undercuts Defendants' argument that Representative Johnson's conduct "differ[ed] in several material ways.""

---

hung-us-out-to-dry-leaked-audio-shows-hot-tempers-inside-gop-caucus-after-expulsion-vote/70113356007/.

Finally, Defendants argue that Plaintiff "fails to identify any similarly situated individuals who were treated more favorably during the 2024 legislative session." Mot. to Dismiss at 24. The Complaint appropriately contrasts Plaintiff's treatment with "Republican, non-Black colleagues," which obviously meets the federal pleading standard. FRCP 8(a)(2); *see also Twombly*, 550 U.S., at 555 (complaints must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (citation omitted). Defendants do not cite a single authority even suggesting that this constitutes a "deficienc[y] in [Plaintiff's] factual allegations." Nor could they. Ultimately, "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial[14] and direct evidence of intent as may be available." *Vill. of Arlington Heights*, 429 U.S. at 266. The significant need for discovery to determine discriminatory purpose makes equal protection claims particularly inappropriate for 12(b)(6) dismissal.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss Plaintiff's Supplemental and Amended Complaint. Given the significant constitutional and legal issues raised by Defendants' motion and the gravity of Plaintiff's claims, and in case it might be beneficial to the Court in deciding these issues, Plaintiff respectfully requests that the Court grant oral argument on Defendants' motion.

---

[14] Plaintiff's Amended Complaint alleges circumstantial evidence that supports a plausible inference of discriminatory intent. It, for example, includes reference to a white legislator who engaged in far more significant breaches of decorum than Plaintiff by sexually harassing an intern and attempting to bribe her with cannabis products, which are illegal in the State of Tennessee, but was not expelled from the House. Complaint at ¶ 43.

Respectfully submitted:

 /s/ *R. Gregory Rubio*
Jerry E. Martin (TNBPR No. 20193)
David W. Garrison (TNBPR No. 024968)
Scott P. Tift (TNBPR No. 027592)
Barrett Johnston Martin & Garrison, PLLC
200 31st Ave. N
Nashville, TN 37203
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

R. Gregory Rubio (pro hac vice)
Covington & Burling, LLP
One CityCenter
850 10th St. NW
Washington D.C., 20001
(202) 662-5237
grubio@cov.com

C. William Phillips (pro hac vice)
Covington & Burling LLP
620 8th Avenue
New York, NY 10018
(212) 841-1081
cphillips@cov.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing *Memorandum Of Law In Support Of Plaintiff's Opposition to Defendants' Motion To Dismiss* has been served on the following counsel via the Court's CM/ECF email notification system on this the 30th day of December, 2024:

Whiteney Hermandorfer
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-3491
whitney.hermandorfer@ag.tn.gov

Matthew H. Frederick
Todd Disher
Lehotsky Keller Cohn LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350
matt@lkcfirm.com
todd@lkcfirm.com

Shannon Grammel
Lehotsky Keller Cohn LLP
200 Massachusetts Avenue, NW
Suite 700
Washington, D.C., 20001
(270) 498-5375
shannon@lkcfirm.com

*Attorneys for all Defendants*

/s/ R. Gregory Rubio
R. Gregory Rubio